STEVEN T. GUBNER - Bar No. 156593
JASON B. KOMORSKY - Bar No. 155677
JESSICA L. BAGDANOV - Bar No. 281020
BRUTZKUS GUBNER
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone: (818) 827-9000
Facsimile: (818) 827-9099
Email:       sgubner@bg.law
             jkomorsky@bg.law
             jbagdanov@bg.law

Special Litigation Counsel for
Timothy Yoo, Chapter 7 Trustee

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>VOIP GUARDIAN PARTNERS I, LLC,<br><br>Debtor. | Case No. 2:19-bk-12607-BR<br><br>Chapter 7<br><br>Adv. No. 2:21-ap-01044-BR |
| TIMOTHY YOO, Chapter 7 Trustee,<br><br>Plaintiff,<br><br>v.<br><br>VOIP GUARDIAN LLC, a Delaware limited liability company;<br>RODNEY OMANOFF, an individual;<br>OMANOFF AMERICA LLC, a Delaware limited liability company;<br>OMANOFF AMERICA TELECOM, LLC, a Delaware limited liability company;<br>CONTACTS & CONTRACTS, INC., a Delaware corporation;<br>MUDMONTH, LLC, a Nevada limited liability company;<br>PHILIPSON INTERNATIONAL LLC, a Delaware limited liability company;<br>RICHARD OMANOFF, an individual;<br>OWL AMERICA, INC., a Delaware corporation;<br>MARK PROTO, an individual;<br>JOSEPH RAHMAN aka YOUSSEF A. RAHMAN, an individual;<br>ZOOM TELECOM, INC., a Nevada corporation;<br>GO2TEL.COM, INC., a Florida corporation;<br>JOHN O. PHILIPSON, an individual;<br>ADELA PHILIPSON, an individual; | **FIRST AMENDED COMPLAINT FOR:**<br>**1. BREACH OF FIDUCIARY DUTY;**<br>**2. AIDING AND ABETTING BREACH OF FIDUCIARY DUTY;**<br>**3. AVOIDANCE OF 2-YEAR FRAUDULENT TRANSFERS (ACTUAL INTENT);**<br>**4. AVOIDANCE OF 2-YEAR FRAUDULENT TRANSFERS (CONSTRUCTIVE FRAUD);**<br>**5. AVOIDANCE OF 4-YEAR FRAUDULENT TRANSFERS (ACTUAL INTENT);**<br>**6. AVOIDANCE OF 4-YEAR FRAUDULENT TRANSFERS (CONSTRUCTIVE FRAUD);**<br>**7. AVOIDANCE OF PREFERENTIAL TRANSFERS;**<br>**8. AVOIDANCE OF POSTPETITION TRANSFERS;** |

2614673

| | |
|---|---|
| 1 | DEALDEFENDERS LLC, a Delaware limited liability company; |
| 2 | IKARIM BUSINESS SERVICES LTD., a United Kingdom entity; |
| 3 | I KARIM BUSINESS SERVICES LLC, a Delaware limited liability company, |
| 4 | IKB SERVICES LTD., a United Kingdom entity; IKBS LLC, a Florida limited liability company; |
| 5 | MOHAMMED SHAKEEL MUGHAL, an individual; |
| 6 | NAJD TECHNOLOGIES LIMITED, a United Arab Emirates entity; |
| 7 | INDIGO11 SERVICES LIMITED, a United Arab Emirates entity; |
| 8 | INDIGO 11 SERVICES LLC, a Delaware limited liability company; |
| 9 | NAZMUL HOQUE, an individual; TELACME LIMITED, a Hong Kong entity; |
| 10 | BALAJI MAHADEVAN, an individual; COLIN BERNARD ECCLES, an individual; |
| 11 | LTDTEL SL, an entity organized in Spain; INTER-SWITCH LTD., a Hong Kong entity; |
| 12 | VINEET SINGH NOTWAL, an individual; SHIRLEY SABIA THERESE VAN |
| 13 | KERKHOVE, an individual; ARCO TELECOM LIMITED, a Gibraltar entity; |
| 14 | TEE TELECOMMUNICATIONS INC., a New Jersey corporation; |
| 15 | 2365 AZURE LLC, a Florida limited liability company; |
| 16 | OVERSEAS CHARTERS INC., a Florida corporation; |
| 17 | TAREK KATIT, an individual; CALLVOX, LLC, a New York limited liability |
| 18 | company; PHONETIME INC., a Florida corporation; and |
| 19 | INTELNETWORK INC., a Florida corporation, |
| 20 | Defendants. |

**9. RECOVERY OF AVOIDED TRANSFERS;**

**10. BREACH OF CONTRACT;**

**11. UNJUST ENRICHMENT; and**

**12. CLAIM DISALLOWANCE.**

2614673

Timothy Yoo, solely in his capacity as the duly appointed and acting chapter 7 trustee (the "Trustee") for the bankruptcy estate of VoIP Guardian Partners I, LLC (the "Debtor"), complaining of defendants, hereby alleges as follows:

## NATURE OF ACTION AND JURISDICTION

1.      In accordance with Local Bankruptcy Rule 7008-1, this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 151, 157(b)(1) and (2), and 1334(a), as well as General Order No. 13-05 of the District Court for the Central District of California, on the basis that this action is a core proceeding as defined by 28 U.S.C. §§ 157(b)(2)(A), (B), (C), (F), (H), and (O), and arises in or under the chapter 7 bankruptcy case of In re VoIP Guardian Partners I, LLC, 2:19-bk-12607-BR, currently pending before this Court.  The Trustee consents to entry of final orders or judgment by this Court.

2.      Venue is proper in this Court pursuant to 28 U.S.C. §1409(a).

3.      By this action, the Trustee seeks damages from certain former directors and officers of the Debtor for breach of their fiduciary duty of care and loyalty in their prepetition management of the Debtor's telecom factoring business and avoidance of transfers made by the Debtor (via those directors and officers) to certain defendants, which transfers directly led to the demise of the Debtor and loss of over $200 million. In addition, the Trustee seeks recovery on open invoices owed to the Debtor, on guarantees of contracts for monies owed, and objects to the proof of claim filed by Defendant VoIP Guardian LLC (the "Management Company") in the Debtor's bankruptcy case and seeks disallowance of such claim.

4.      As explained in further detail below, the former officers and directors of the Debtor deliberately or recklessly mismanaged the Debtor's affairs by engaging in a highly technical and complex telecom factoring business with questionable foreign entities.  The Debtor engaged in a seemingly legitimate factoring business, where it purchased receivables owed to Tier 3 (smaller) telecom companies by Tier 1 (larger, multi-national) companies (which transactions are described more fully below). However, the Debtor inexplicably financed the transactions of numerous questionable Tier 3 entities when, at the time, various red flags regarding those companies should have put the directors and officers on notice that they were likely not legitimate entities. In some

2614673

instances, and on information and belief, both the Tier 3 and Tier 1 companies worked together to the detriment of the Debtor, where the Tier 1 stopped paying invoices owed to the Debtor simultaneously as the Debtor sent millions of dollars overseas to fund the Tier 3 through its escrow agent, defendant DealDefenders LLC. In total, and in the course of a mere three-month period, the Debtor lost over $160 million of its investors' funds. Furthermore, on information and belief, directors and officers of the Debtor—including Rodney Omanoff ("Omanoff"), Mark Proto ("Proto"), and Joseph Rahman aka Youssef A. Rahman ("Rahman") in particular—had business relationships with these Tier 1 and 3 entities such that they received monies the Debtor transferred to the Tier 3 entities.  Omanoff (and his related entities) received over $18 million from the Debtor in "management" fees.

5.      Ultimately, on March 11, 2019, the Debtor was forced to file a voluntary chapter 7 petition, commencing Bankruptcy Case No. 2:19-bk-12607-BR. Timothy Yoo was duly appointed as chapter 7 trustee, in which capacity he continues to serve.

6.      The Debtor's Petition, Schedules and Statement of Financial Affairs reflect over $13 million in accounts receivable, almost $200 million in notes receivable, and causes of action totaling approximately $35 million. All such "assets" of the Debtor consist of monies the Debtor transferred to questionable foreign entities as part of its telecom financing business.

7.      Thus, by this action the Trustee seeks, among other things, (a) damages from the Debtor's directors and officers for their wholesale disregard of the Debtor's (and its investors') well-being, breach of their duties of loyalty and care owed to the Debtor and for their apparent self-dealing, (b) recovery of avoidable transfers from various defendants (and groups of defendants), (c) recovery from both the Tier 1 and Tier 3 companies listed below, and (d) disallowance of the Management Company's (defined below) proof of claim asserted in the bankruptcy case.

**PARTIES**

8.      The Trustee brings this action solely in his capacity as the chapter 7 trustee for the Debtor's estate.

9.      VoIP Guardian LLC (the "Management Company") is a limited liability company organized under the laws of the State of Delaware, formed on or about September 28, 2015. The

4

2614673

Management Company is the sole or 100% member of the Debtor and qualifies as an insider of the Debtor.

10.     Rodney Omanoff ("Omanoff") is an individual residing in the Central District of California. Omanoff served as Chief Executive Officer of the Debtor as well as a manager of the Debtor, and is the sole member of Omanoff America LLC.

11.     Omanoff America Telecom, LLC is a limited liability company organized under the State of Delaware, and is a 40% member of the Management Company.

12.     Omanoff America LLC is a limited liability company organized under the State of Delaware on or about December 23, 2010, owns 10.01% of the Management Company and is the manager of the Management Company.

13.     Contacts & Contracts, Inc. is a limited liability company organized under the State of Delaware. On information and belief, Contacts & Contracts, Inc. is owned by Richard Omanoff but controlled by Rodney Omanoff.

14.     Mudmonth, LLC is a limited liability company organized under the State of Nevada and is a 40% member of the Management Company. Mudmonth LLC is owned by Mark Proto.

15.     Philipson International LLC is a limited liability company organized under the State of Delaware and is a 5% member of the Management Company.

16.     Richard Omanoff is Rodney Omanoff's father, and on information and belief, is a 5% member of the Management Company.

17.     Owl America, Inc. is a corporation registered in Delaware. On information and belief, defendant Omanoff is the sole shareholder of Owl America, Inc.

18.     Mark Proto ("Proto") is an individual residing in the Central District of California. On information and belief, Proto served as a director or officer of the Debtor.

19.     Joseph Rahman aka Youssef Rahman ("Rahman") is an individual residing in the State of New Jersey. On information and belief, Rahman served as a director or officer of the Debtor.

///

2614673

20. Zoom Telecom, Inc. ("Zoom-Tel") is a corporation organized under the laws of the State of Nevada on or about June 6, 2013. Defendant Rahman is the President and a director of Zoom Telecom, Inc.

21. Go2Tel.com, Inc. ("Go2Tel") is a corporation organized under the laws of the State of Florida.

22. John O. Philipson ("Philipson") is an individual residing in the Central District of California and served as the managing partner of VoIP Guardian LLC, and sole member of Philipson International LLC.

23. Adela Philipson ("A. Philipson") is an individual who, on information and belief, resides in Florida.

24. DealDefenders LLC ("DealDefenders") is a limited liability company organized under the laws of Delaware on or about May 9, 2014.

25. Ikarim Business Services Ltd. ("Ikarim Ltd") is a private limited company incorporated January 12, 2011 in the United Kingdom.

26. I Karim Business Services LLC ("Ikarim-US") was formed in March 2018 as a Delaware limited liability company, and, on information and belief, is an alter ego of and/or worked in concert with Ikarim Ltd.

27. IKB Services Ltd. ("IKB Ltd") is a private limited company incorporated in the United Kingdom, and, on information and belief, is an alter ego of and/or worked in concert with Ikarim Ltd. and Ikarim-US.

28. IKBS LLC ("IKBS-US") was formed on October 4, 2018 as a Delaware limited liability company, and, on information and belief, is an alter ego of and/or worked in concert with Ikarim Ltd, Ikarim-US, and IKB Ltd.

29. Mohammed Shakeel Mughal ("Shaks") is the principal and 100% member of Ikarim Ltd, and resides in London, United Kingdom. On information and belief, Shaks is an alter ego of and/or worked in concert with Ikarim Ltd, Ikarim-US, IKB Ltd, and IKBS-US.

30. Najd Technologies Limited is an entity domiciled in Dubai, United Arab Emirates, controlled by Muhammed Arsalan and Salman Mansour. On information and belief, Najd is an alter

ego of and/or worked in concert with Ikarim Ltd, Ikarim-US, IKB Ltd, IKBS-US, and Shaks (Najd, Ikarim Ltd, Ikarim-US, IKB Ltd, IKBS LLC, and Shaks together referred to as the "Ikarim-Related Defendants").

31.    Indigo11 Services Limited ("Indigo 11") is an entity domiciled in the United Kingdom.

32.    Indigo 11 Services LLC ("Indigo 11-US") was formed in August 2016 as a Delaware limited liability company, and, on information and belief, is an alter ego of and/or worked in concert with Indigo 11.

33.    Nazmul Hoque ("Naz") is the director and 100% member of Indigo 11, and resides in London, United Kingdom. On information and belief, Naz is an alter ego of and/or worked in concert with Indigo 11 and Indigo 11-US.

34.    Telacme Limited ("Telacme") is an entity domiciled in Hong Kong. On information and belief, Telacme is an alter ego of and/or worked in concert with Indigo 11, Indigo 11-US, and Naz.

35.    Balaji Mahadevan ("Balaji") is the sole shareholder and director of Telacme and, on information and belief, resides in Telegana, India. On information and belief, Balaji is an alter ego of and/or worked in concert with Telacme, Indigo 11, Indigo 11-US, and Naz (Indigo 11, Indigo 11 -US, Naz, Telacme, and Balaji together referred to as the "Indigo 11-Related Defendants").

36.    Colin Bernard Eccles ("Eccles") is an individual, and on information and belief, resides in Ireland. On information and belief, Eccles served as an employee, consultant, and/or person in control of the Debtor.

37.    LTDTEL Consulting, SL ("LTDTEL") is a company organized under the laws of Spain. On information and belief, LTDTEL is owned and/or controlled by Eccles.

38.    Inter-switch Limited ("Inter-switch") is an entity domiciled in Hong Kong.

39.    Vineet Singh Notwal ("Notwal") is an individual and, on information and belief, is a director of Inter-switch Limited who resides in Hong Kong.

40.    Shirley Sabia Therese Van Kerkhove ("Kerkhove") is an individual and, on information belief, is a director of Inter-switch Limited who resides in Hong Kong.

2614673

41.     Arco Telecom Limited ("Arco Telecom") is an entity domiciled in Gibraltar, a British Overseas Territory. On information and belief, defendant Proto is a director/controller of Arco Telecom.

42.     Tee Telecommunications Inc. ("Tee") is a corporation organized under the laws of New Jersey.

43.     2365 Azure LLC ("2365 Azure") is a limited liability company organized under the laws of Florida.

44.     Overseas Charters Inc. ("Overseas Charters") is a corporation organized under the laws of the State of Florida.

45.     Tarek Katit ("Katit") is an individual who, on information and belief, resides in New Jersey, and owns and controls Tee. 2365 Azure, and Overseas Charters.

46.     Callvox, LLC ("Callvox") is a limited liability company organized in the State of New York.

47.     Phonetime Inc. ("Phonetime") is a foreign profit corporation with its headquarters and principal place of business in Florida.

48.     Intelnetwork Inc. ("Intelnetwork") is a corporation organized under the laws of the State of Florida.

## FACTUAL BACKGROUND AND ALLEGATIONS

### A.    Prepetition Operation and Management of the Debtor

49.     The Debtor was formed as a Delaware limited liability company on or about October 9, 2015.  Omanoff, Proto, Rahman, and Phillipson served as directors and/or officers of the Debtor and/or the Management Company (the Debtor's sole member).

50.     Before filing for bankruptcy, the Debtor operated as a telecom factoring company, addressing the working capital needs of Tier 3 telecom carriers using Voice over Internet Protocol (VoIP) technology.  Specifically, the Debtor provided trade finance and factoring services to small and mid-sized wholesale telecom carriers that had been awarded contracts to engage in the routing and termination of international calls and other communication services for large Tier 1 telecom carrier clients.

2614673

51.    Telecom providers generally fall into three Tiers: Tier 1 (major, nationally recognized providers such as Verizon, AT&T, British Telecom, etc.), Tier 2 (mid-level providers) and Tier 3 (relatively small companies that generally provide local services).  When a foreign call is placed or received with a larger telecom carrier, the larger (Tier 1) carrier uses the services of smaller (Tier 3) providers to connect those incoming and outgoing calls. The Tier 1 companies often rely on the smaller Tier 3 providers to connect and facilitate international calls within the Tier 3 provider's local market.  The Tier 3 provider would submit an invoice for payment to the Tier 1 company for all the calls the Tier 3 company facilitated for that provider over a given period of time.  However, because the Tier 1 providers typically pay their invoices on slower terms than is often feasible for the Tier 3 providers to continue operations, the Tier 3 companies seek factoring (account receivable-based lending) arrangements in which the factoring company (here, the Debtor) buys the account receivable, advancing the Tier 3 company a reduced sum and then collecting the full amount of the account receivable (the delta being the Debtor's profit).  The Debtor provided this factoring service to providers in numerous jurisdictions all over the world.

52.    Because the Debtor's primary function was to lend and advance money to its Tier 3 customers, one of the Debtor's most critical assets was investment capital on hand to lend out.  The Debtor's primary investor was Direct Lending Investments ("DLI"), which invested approximately $192 million (most of which over a period of three years from 2015-2018).

53.    DLI itself was an investment vehicle that pooled money from various investors who signed subscription agreements with DLI (and its management) and provided funds for DLI to then re-invest.  Thus, the flow of funds often started with DLI's private investors, who provided funds to DLI; DLI would then invest those funds in the Debtor, who would then advance funds to its Tier 3 factoring clients.

54.    When the system works correctly, the Tier 3 company would assign its rights under a sales contract with a Tier 1 company for the Debtor to collect on the account receivables from the Tier 1 telecom provider, and repay DLI with a profitable return on the investment. The Debtor would submit repayments to DLI on a daily basis.  As long as the Debtor collected sufficient funds from the Tier 1 providers on the account receivables at sufficient margins above what the Debtor paid the Tier

9

1  3 factoring clients, those margins would provide investment profit for the Debtor, its investors (like

2  DLI, its biggest investor), and its investors' investors.  Problems arise, however, when the Debtor

3  fails to collect such funds, which then causes losses to trickle down the cycle of investors.

4      55.    Omanoff was in control of the Debtor's operations, but he was not alone, and

5  defendants Proto, Philipson, Rahman, DealDefenders, and Ellentuck proved to be key players in the

6  Debtor ultimately losing the vast majority of DLI's investment.

7      56.    Prior to 2014, and on information and belief, Omanoff was not involved in the

8  telecom factoring industry. In contrast, Proto and Rahman had significant telecom experience prior

9  to working with Omanoff.  On the one hand, Proto had significant client contacts that he brought to

10  the Debtor. On the other hand, Rahman had highly technical skills that enabled him to measure call

11  traffic to determine the Debtor's daily lending and factoring activity, using his company Zoom-Tel.

12  Both individuals, as well as Rahman's company Zoom-Tel, which company served as the

13  technology component in the operation, managed call traffic, and also vetted the receivables the

14  Debtor purchased, were necessary for the Debtor's success.

15      57.    Furthermore, DealDefenders and its principal Jeff Ellentuck provided the Debtor with

16  the banking framework to factor the Debtor's clients' receivables. DealDefenders, discussed in

17  further detail below, is a financial investment company that served as the Debtor's escrow agent for

18  funds being delivered to the Debtor's clients.

19      **B.    The 2019 DLI Action**

20      58.    On April 1, 2019, two DLI Investors, the Marcia Kosstrin Trust and Professional

21  Home Improvements Inc. Retirement Plan (the "2019 Plaintiffs") filed a putative class action (the

22  "DLI Action") against DLI, Brendan Ross, Bryce Mason, Frank Turner, Quarterspot, Inc. and

23  Rodney Omanoff.  In that lawsuit, the 2019 Plaintiffs alleged that DLI's management personnel and

24  entities (and related parties) misled subscribing DLI investors and breached their fiduciary duties by,

25  among other things, continuing to invest funds with the Debtor even after it became apparent that

26  there were serious problems with the Debtor's operations and that Omanoff was not to be trusted.

27      59.    DLI's investment in the Debtor began in 2015 and increased over time such that by

28  2017, approximately $180 million of DLI's funds were invested in the Debtor, tying up about 25%

2614673

1    of DLI's investment funds into this single investment.  (As noted above, DLI was the Debtor's

2    largest investor).

3      60. Meanwhile, the DLI Action alleged that the Debtor, through the actions of its officers

4    and directors, had invested over 80% of its funds to two Tier 3 borrowers, Telacme Limited (over

5    $101 million) and Najd Technologies Limited (over $58 million).

6      61. According to the DLI Action, by 2017 it should have become apparent to DLI's

7    management that Omanoff was engaged in "deceptive, reckless or grossly negligent" conduct with

8    respect to another company he controlled called Talking Capital, LLC, a completely separate entity

9    from the Debtor, but was engaged in effectively the same business as the Debtor (telecom factoring).

10   This led to a lawsuit filed by Talking Capital against Omanoff, the Debtor and related entities and

11   individuals (the "Talking Capital Action"), which alleged a litany of misconduct including the

12   lending of millions of dollars to a suspect Tier 3 borrower that disappeared under suspicious

13   circumstances (with substantial evidence that the purported borrower was a dummy company used to

14   funnel money out of Talking Capital under the guise of legitimate commerce) and that Omanoff was

15   grossly negligent in his duties as the manager of Talking Capital and its affiliates.

16     62. The DLI Action did not recite the allegations of the Talking Capital Action because

17   they were directly relevant to or had a causal connection to DLI's losses, but rather because the

18   existence of the substantiated allegations of Omanoff's gross misconduct in a materially identical

19   business venture put DLI's management on notice that Omanoff was not trustworthy and was, at a

20   minimum, grossly negligent in vetting and monitoring the investment of funds in its Tier 3

21   borrowers.  Those allegations against Omanoff "should have been flashing red warning signs to any

22   rational fiduciary that had extended credit to another of Omanoff's ventures," such as DLI.

23     63. As further alleged in the DLI Action, notwithstanding these "flashing red warning

24   signs," DLI's management continued to do business with and place their trust (and their investors'

25   money) in Omanoff's hands, even though Omanoff had been sued for gross negligence in making

26   investments in the telecom factoring business (the same business as the Debtor).  Moreover, the DLI

27   management team failed to disclose these red flags to its investors (such as the 2019 Plaintiffs)

28

11

2614673

1  which, if properly disclosed, would have given the 2019 Plaintiffs grounds to exercise their right to

2  withdraw their capital investment in DLI.

3      64.    The results were nothing short of disastrous for DLI's investors.  In December 2018,

4  the Debtor defaulted on payments it owed to DLI (which DLI management failed to disclose to its

5  investors while continuing to paint a rosy picture of profitable performance).  Within a matter of

6  months, most of the Debtor's investments were "likely lost due to misconduct" (which again, the

7  DLI management was alleged to have known, but failed to disclose to its investors).

8      65.    The DLI Action alleges that Omanoff caused the overwhelming majority of the

9  Debtor's loans to be made to Tier 3 companies Najd Technologies Limited and Telacme Limited,

10  which have since been designated as "uncollectable," and that the Debtor and its directors and

11  officers (namely, Omanoff) perpetrated "wholesale fraud."  Even though DLI knew that the Debtor

12  had defaulted in December 2018, DLI continued to invest another $5 million into the Debtor over

13  the following two months, without disclosure to the DLI investors.

14      66.    Ultimately, essentially all of the money invested by DLI into the Debtor was loaned

15  to Tier 3 borrowers that are now alleged to be uncollectible, raising a high suspicion of fraud or, at

16  the very least, extreme negligence by Omanoff, Proto, Rahman, and other directors and officers of

17  the Debtor insofar as they took no reasonable measures to secure their investments given the

18  potential difficulty of collection where these Tier 3 borrowers purportedly conducted business.  As

19  to Omanoff, the DLI Action alleges that he aided and abetted the DLI management in breaching

20  their fiduciary duties to DLI's investors (the 2019 Plaintiffs) by causing $160 million of the $190

21  million of capital received from DLI to go "missing and likely unrecoverable."

22      **C.    The Debtor's Dealings with Najd and Telacme, and Ikarim and Indigo 11**

23      67.    As noted above, two Tier 3 entities, Najd and Telacme, are responsible for the lion's

24  share of the loss of Debtor's funds shortly before it ceased operations. On information and belief, the

25  directors and officers of the Debtor did little to no due diligence on these companies, and the

26  minimal due diligence they did receive supported the conclusion that they were high-risk companies

27  and that the Debtor should proceed with caution in doing business with them.

28

2614673

i.    **Telacme, Indigo 11, Nazmul Hoque, and Balaji Mahadevan**

68.    Telacme was formed on or about April 15, 2015, by Balaji Mahadevan in Hong Kong.

69.    On information and belief, Indigo 11 Services Limited was incorporated in the United Kingdom on or around May 30, 2012.

70.    The telecom business relationship between Indigo 11 Services Limited and Telacme Limited dates back to at least July 2015.

71.    On or about July 21, 2016, defendant Nazmul Hoque (Indigo 11's principal) introduced Omanoff to Balaji Mahadevan for potential factoring deals with Telacme.

72.    On or about August 22, 2016, Telacme and the Debtor entered into a Factoring Agreement ("Telacme Factoring Agreement") and Security Assignment ("Telacme-Indigo Assignment") (together, the "Telacme-Indigo Transaction"). Balaji Mahadevan signed the Telcame Factoring Agreement on behalf of Telacme, and Omanoff signed on behalf of the Debtor. Nazmul Hoque signed the Telacme-Indigo Assignment on behalf of Indigo 11 Services Limited and Indigo 11 Services LLC, and Balaji Mahadevan signed on behalf of Telacme. On information and belief, Balaji Mahadevan and Nazmul Hoque are known associates of Proto and Rahman.

73.    Pursuant to the Telacme Factoring Agreement, the Debtor agreed to purchase Telacme's receivables owed from Tier 1 entities (such as Indigo 11) with an approximate 94.5% advance rate (meaning the Debtor purchased receivables for approximately 94.5% of the face value of the invoice, providing a mere 5% discount).  The small discount itself was a red flag insofar as it provided little return on investment for the sizeable risk undertaken by the Debtor.  On information and belief, that risk was amplified by, among things, the location of Telacme and the failure to have Telacme post security or agree to service in the United States in the event of a dispute.  In other words, the Debtor was exposed to massive losses in the event of a default by Telacme with no reasonable mechanism or method of recourse.

74.    On November 27, 2018—almost two years after beginning to fund Telacme, and after the Debtor's request for additional funds from DLI was turned down—the Debtor recorded a UCC-1 Financing Statement against Telacme with the Washington, D.C. Recorder of Deeds, Instrument No. 2018117326; however, this recordation was, at best window dressing, and was in no way sufficient

to protect the Debtor from likely enforcement risks and conflict of law issues in dealing with a Hong

Kong company such as Telacme.  While the Debtor may have belatedly complied with U.S. secured

transactions law in recording the UCC-1, there is no evidence that the Debtor perfected its rights in

Hong Kong in the event of a default by Telacme.

75.     Under the Telacme-Indigo Assignment, Telacme assigned to the Debtor all rights to

collect under sales contracts entered into between Telacme and Indigo 11 Services Limited and

Indigo 11 Services LLC. However, the Telacme Factoring Agreement provides that, in any event of

default, such as nonpayment by an approved originator (*i.e.*, Indigo 11), the Debtor may collect all

amounts owed from Telacme.  On information and belief, the Debtor did not require Indigo 11 to

post any security or, otherwise, provide a source for collection in the event of a default.

ii.     **Najd, Ikarim, Muhammed Arsalan, and Shakeel Mughal**

76.     Najd, another Tier 3 entity, was formed by Muhammed Arsalan, director, and Salman

Mansour.

77.     On information and belief, Ikarim Business Services Ltd was incorporated in the

United Kingdom on or about January 12, 2011.

78.     The business relationship between Najd and Ikarim, as well as IKB Services Ltd (an

Ikarim-related company), dates back to 2014, prior to the Debtor's formation.

79.     On or about June 23, 2016, Najd and the Debtor entered into a Factoring Agreement

("Najd Factoring Agreement") and Security Assignment ("Najd-Ikarim Assignment") (together, the

"Najd-Ikarim Transaction"). Muhammed Arsalan signed the Najd Factoring Agreement on behalf of

Najd, and Omanoff signed on behalf of the Debtor. Shakeel Mughal (aka "Shaks") signed the Najd-

Ikarim Assignment on behalf of Ikarim, and Muhammed Arsalan signed on behalf of Najd.  On

information and belief, Muhammed Arsalan and Shaks are known associates of at least Proto and

Rahman.

80.     Pursuant to the Najd Factoring Agreement, the Debtor agreed to purchase Najd's

receivables with an approximate 94.5% advance rate.  Again, the small discount was a red flag

insofar as it provided little return on investment for the sizeable risk undertaken by the Debtor.  On

information and belief, this business relationship, like that with Telacme and Indigo 11, left the

Debtor with no mechanism or method to recover in the event of default by these entities, neither of whom, on information and belief, had assets in the United States.

81.    On January 17, 2019—over two years after beginning to fund Najd, at the eleventh hour before the Debtor's bankruptcy filing, and after Najd was in default and in arrears on payments to the Debtor—the Debtor recorded a UCC-1 Financing Statement against Najd with the Washington, D.C. Recorder of Deeds, Instrument No. 2019005747; however, this recordation was simply window dressing and certainly was insufficient to protect the Debtor from likely enforcement risks and conflict of law issues in dealing with a Dubai entity such as Najd. While the Debtor may have belatedly complied with U.S. secured transactions law in recording the UCC-1, there is no evidence that the Debtor also consulted Dubai counsel on the issue to properly protect the Debtor in the event of a default by Najd. A late, after-the-fact recordation to ensure compliance with U.S. law is irrelevant to the question of whether Omanoff and his partners conducted sufficient due diligence on the front end (they did not) before lending to Najd.

82.    Under the Najd-Ikarim Assignment, Najd assigned to the Debtor all rights to collect under sales contracts entered into between Najd and Ikarim Business Services Limited. However, the Najd Factoring Agreement provides that, in any event of default, such as nonpayment by an approved originator (i.e., Ikarim), the Debtor may collect all amounts owed from Najd. On information and belief, the Debtor did not require Ikarim to post any security or, otherwise, provide a source for collection in the event of a default.

83.    In or around June 2015, Omanoff was notified via email from DLI that both IKBS and Indigo 11 were overbilling at the same time and that other discrepancies existed in their respective invoices.

84.    In spring of 2016, Omanoff attempted to obtain trade insurance from Euler Hermes for the Najd/Ikarim deal. No later than July 2016, Omanoff was advised by Euler Hermes that Euler Hermes would not provide insurance for Ikarim based on its financials. Specifically, in July 2016 Keith Woods wrote to Omanoff:

> This is one of those accounts where it looks good from the perspective of their topline when you first look at it, but once you get to the bottom line it's a different story. I am sure somewhere in these numbers is a very nice

> salary that [Mohammed] Shakeel [Mughal] collects, but from our view, this is not someone we can insure. At least on paper, he has no margin for error. Everything that comes in, has to go right back out. Unless we can put the coverage on a difference [*sic*] entity, we will not be able to work with this one based on these financials.

85.    Despite the foregoing, the Debtor proceeded to fund over $62 million to Najd at an approximate 94.5% advance rate for which it did not receive repayment, and funded over $100 million to Telacme that was never returned.

86.    In addition to the foregoing, there were other obvious red flags associated with entering into transactions with both of these entities, Najd and Telacme, including: (a) the location of these entities (Dubai and Hong Kong, respectively), which would make collections difficult, if not impossible, (b) the failure to post any collateral in the event of a default in light of the amounts of money at issue or provide for recourse in the United States, and (c) the location of the calls in areas that were known for high incidence of fraud, such as Burundi, Somalia, Senegal, and Zimbabwe.

87.    On information and belief, the historic call volume did in fact reveal fraud. For example, Najd invoices dating back to 2016 reflect high volume call increases that were far in excess of what could be legitimately expected given the size of the population. For example, in June 2016, Najd sent an invoice to Ikarim for $20,973, reflecting just under 70,000 minutes of transactions from countries Chad, Liberia, Somalia, United States, and Zimbabwe. Three months later, in September 2016, Najd sent an invoice to Ikarim reflecting approximately 23.7 million minutes of terminated calls. This September 2016 invoice reflected approximately 29,451 minutes of calls originating from Albania and approximately 5.2 million minutes of calls originating from Liberia. Just one month later, Najd's invoice to Ikarim for the month of October 2016, seeking payment in the amount of $16,072,144, reflected a total of over *55 million minutes of calls* from countries Albania, Chad, Liberia, Somalia, and Togo; 15.3 million of which originated from Albania—a country with a population of less than 3 million people—and 15.5 million of which originated from Liberia—a country with a population of less than 5 million people.

88.    On information and belief, the suspect increase in call volume coincided with the increase in investment by DLI and was used to induce DLI to increase its investment. These bold and obvious irregularities went seemingly unnoticed by the Debtor's directors and officers, and the

16

2614673

Debtor continued to send millions of dollars to these companies via DealDefenders up until the very end of its operations.

89.    On information and belief, Najd and Telacme were created by Omanoff, Proto, and/or Rahman with the assistance of others, they were not legitimate Tier 3 operating entities, and their purpose was to generate the appearance of profits and a return of investment to DLI in order to secure greater investment by DLI.  In this regard, and on information and belief, Rahman used his company Zoom-Tel to create the appearance of millions of minutes of calls that, in reality, did not exist.

90.    In turn, this greater investment led to alleged profits and a return on investment to DLI in order to secure a yet greater investment, which when DLI could no longer increase its investment in or about November 2018, led to the almost-identical cessation of business by Telacme and Najd and the loss of DLI's investment.

91.    Certain of Najd and Telacme's corresponding Tier 1 entities, Ikarim and Indigo 11, respectively, were similarly suspect. Indeed, from the months of October through December 2018, 100% of the call traffic generated by Indigo 11 and Ikarim terminated in Africa.

92.    On information and belief, not only is the call data generated by both Najd and Telacme questionable, but even the manner in which these purportedly unrelated, separate companies defaulted on their arrangements with the Debtor are highly suspect.  At almost the same point in time, both paid less than was owing on outstanding invoices in one month, then paid nothing on invoices in the next two months, and then sent identical letters claiming that both were forced into voluntary liquidation.

93.    Specifically, on February 8, 2019, Indigo 11 forwarded an email to Omanoff, and on February 9, 2019, Ikarim forwarded an identical email to Omanoff, both relating to the cessation of business by another entity, Inter-switch, which read as follows:

> Dear Client,
>
> It is with deep regret and due to circumstances beyond our control that we have unfortunately had to place the company into voluntary liquidation.

2614673

You will be contacted in due course from the liquidator in regards to this matter.

The liquidator has all your contact information along with outstanding monies owed.

Under these circumstances there is not much else I can say on the matter.

94.    The original e-mail, purportedly sent by Notwal, a Director of Inter-switch, reflects that Telacme and Najd were purportedly both providing termination services to Inter-switch.  On information and belief, Inter-switch was not involved in the VoIP industry and the use of its account may have been solely as a financial conduit.  On information and belief, a prior account linked to Inter-switch and its directors, Notwal and Kerkhove, was shut down due to irregular activity, and the Debtor's principals knew or should have known that there were issues with Inter-switch.

95.    To the extent that Najd and Telacme failed because of Inter-switch, there appear to be no agreements in place that would allow the Debtor to recover from Inter-switch for the Debtor's monies that were paid to it by Najd-Ikarim or Telacme-Indigo 11.   In other words, the Debtor had little real time recourse against this Hong Kong entity, Inter-switch, who, like Najd and Telacme, had not provided a letter of credit or other security that could be readily seized to pay the Debtor's outstanding receivables.

96.    Moreover, records turned over by DealDefenders reflects that the last transfers of monies on behalf of Inter-switch occurred in May 2018.  There is no evidence that either entity, Telacme-Indigo 11 or Najd-Ikarim, failed due to monies purportedly due and owing from but not paid by Inter-switch.  Other than the e-mail quoted above, Omanoff, Proto, Rahman and/or any of the principals of Telacme-Indigo 11 or Najd-Ikarim have provided no documentation to explain the significance of Inter-switch's liquidation or any analysis as to its impact on the Debtor's business.

97.    On or about December 12, 2018, Indigo 11 passed a resolution that the company "be wound up voluntarily," yet in 2017, the High Court of Justice in the United Kingdom rejected a petition by Indigo 11 to close the company based on insolvency. Thus, the Trustee disputes that Indigo 11 was validly wound up and alleges it is still an active entity.

2614673

98.     Even further suspect is the fact that the corresponding Tier 1 companies, Indigo 11 and Ikarim, had business offices at the exact same address as the Debtor: 1221 Ocean Avenue, Suite 507 Santa Monica, CA 90401. Indeed, the Debtor, DealDefenders, Ikarim, and Indigo 11 used the same incorporation company, Harvard Business Services, Inc., to set up their domestic entities.

99.     Additional indicia that the Debtor was defrauded by Telacme and Najd (and, perhaps, one or more of its own officers) was reflective in the standard deviation of daily change of funded traffic that reflected that traffic remained static and never varied, which is inconsistent with normal telephone traffic. There simply was no evidence of daily traffic volatility for these entities notwithstanding that, upon information and belief, other entities with which the Debtor did business had evidence of call volume volatility.

100.    Critically, the cessation of business from Telacme and Najd coincided with DLI's refusal to invest more money, and not only any other identified circumstances. In other words, and as the scheme appears to have played out, DLI made a small investment at first and was rewarded with a nice return. The return prompted an increased investment by DLI and another return, and so on until DLI refused to increase its investment stake. With no further ability to elicit a larger investment from DLI, Telacme, and Najd effectively disappeared. Had DLI continued to increase its investment, it would have allowed the Debtor to evidence profits using the new and additional investment monies from DLI. Without those additional monies, there were not sufficient assets to repay the Debtor because, upon information and belief, those assets had been paid to the Debtor's principals and others who participated in this scheme. As they siphoned off monies, more monies were needed to reflect a "profit;" without those monies the fraud perpetrated by Telacme and Najd was exposed, and those entities, along with the Debtor's principals and agents that assisted them, as well as their Tier 1 counterparts Indigo 11 and Ikarim, halted all activity and payments in almost identical fashion.

101.    On information and belief, at least some, if not all, of the Debtor's principals knew, or with respect to any such principal that did not participate in this scheme, should have known that Telacme and Najd were not legitimate business enterprises.

2614673

102.    In fact, as early as February 2016, Omanoff had actual knowledge that IKBS (an Ikarim-related entity) and Indigo 11 were being investigated for tax fraud by Her Majesty's Revenue and Customs (the UK taxing authority), yet continued to transact with these businesses and their Tier 3 counterparts.

**D.    The Debtor's Other Tier 1 / Tier 3 Business Relationships**

103.    While Ikarim/Najd and Indigo 11/Telacme were responsible for the loss of the vast majority of the Debtor's funds near the end of its operations, they were not alone.

**i.    Interstach GmBH and Wavecrest**

104.    The Debtor did a number of deals with Wavecrest, a Tier 1-level provider organized under the laws of the United Kingdom. However, as early as December 2016, Omanoff knew that Wavecrest raised a number of red flags, such that Euler Hermes would not provide trade insurance for Wavecrest-Debtor deals. Indeed, on or about December 9, 2016, Euler Hermes advised the Debtor that it would not provide any trade credit insurance for Wavecrest. As of March 15, 2017, Wavecrest had still not been approved because the company did not provide updated financial information sufficient for Euler Hermes requirements.

105.    Despite these red flags, Omanoff persisted in doing business with Wavecrest and entered into numerous factoring agreements with foreign Tier 3 entities involving Wavecrest, including both Interstach GmBH and Plus AMA Plus AG, both German entities. These deals, in total, lost over $12 million of the Debtor's (and its investors') money.

**ii.    Hilf Telecom B.V. and BT Nederland**

106.    In or around February 2016, Hilf and BT Nederland entered into a master carrier services agreement, whereby Hilf provided Tier 3 telecom services to BT Nederland and its subsidiary, BT Nederland N.V., a company incorporated in Amsterdam, The Netherlands.

107.    Thereafter, the Debtor provided factor financing to Hilf, just as it did for Najd, Telacme, and Interstach, *supra*.

108.    On information and belief, Omanoff was on notice of various red flags pertaining to Hilf's operations prior to making loans to Hilf.

2614673

109.    On July 12, 2017, the Debtor and British Telecom Communications PLC (aka BT Nederland's parent company), entered into that certain Guarantee Relating to the obligations of BT Nederland N.C. under the Contract and Acknowledgment (the "BT Guarantee"), pursuant to which British Telecommunications PLC acknowledges open invoices owing to the Debtor from BT Nederland/Hilf in the approximate amount of $21,939,447.42.  However, the BT Guarantee alleges that BT Nederland and British Telecom Communications PLC face possible criminal exposure from alleged wrongdoing involving Hilf, and thus takes the position that the invoices cannot be paid.

110.    Indeed, on April 24, 2017, a criminal investigation was initiated regarding Hilf and the Debtor's activities, and as a result, $21,939,447.42 in receivables owed to the Debtor were seized.

111.    Bank records produced by DealDefenders reflect that defendant Tee was the recipient of funds from the Debtor that were involved in the Hilf transaction. To the extent the Hilf transaction was not a legitimate transaction as claimed by the Netherlands government, any transfers to Tee are recoverable as fraudulent transfers of Debtor property.

                    iii.    **LTDTEL and France Telecom de Espana**

112.    On or about April 26, 2016, LTDTEL and the Debtor into a Factoring Agreement ("LTDTEL Factoring Agreement"), and on information and belief a corresponding security assignment related to services to be provided by LTDTEL to France Telecom de Espana. Colin Eccles signed the LTDTEL Factoring Agreement on behalf of LTDTEL, and Omanoff signed on behalf of the Debtor.

113.    Pursuant to the LTDTEL Factoring Agreement, the Debtor agreed to purchase LTDTEL's receivables with an approximate 94.5% advance rate.

114.    On information and belief, all transfers of the Debtor to LTDTEL ultimately benefited Colin Eccles, who worked in concert with LTDTEL in receiving funds of the Debtor, and thus engaged in self-dealing with regard to the LTDTEL transactions to the Debtor's detriment.

115.    As noted above, Colin Eccles served as an employee and/or consultant for the Debtor.

116.    Thus, by this complaint the Trustee seeks to hold Colin Eccles and LTDTEL jointly and severally liable for all funds transferred to Colin Eccles and LTDTEL. **Exhibits 15 and 16.**

2614673

**E.**    **Insiders of the Debtor and Others Connected to the Debtor Obtaining Benefits via Fraudulent Transfers of Debtor Funds**

117.    Bank records turned over by the Debtor, the Management Company, and DealDefenders reflect millions of dollars being transferred between related entities.

118.    In many instances, the avoidable transfers in this Complaint were made from DealDefenders accounts as opposed to bank accounts in the name of the Debtor. However, in those instances, the Trustee does not allege that DealDefenders was an initial transferee of the funds; rather, DealDefenders was merely a conduit or custodian of the funds to be transferred to the true initial transferee.

119.    **Omanoff** owns and controls and worked in concert with the following entities: Omanoff America Telecom, LLC, Omanoff America, LLC, Contacts & Contracts, Inc., and Owl America, Inc., as well as his father, Richard Omanoff.

120.    In addition, bank records reflect approximately $113,344.25 in Debtor funds being paid for the benefit of Omanoff to maintain real property located at 1221 Ocean Avenue, Unit 507, in Santa Monica, California (the "1221 Ocean Avenue Property").  While the Debtor's bankruptcy petition lists the 1221 Ocean Avenue Property, on information and belief the Trustee asserts that these payments benefited Omanoff, considering the fact that approximately $50,000 was paid from Debtor funds for the 1221 Ocean Avenue Property post-petition.

121.    Thus, by this complaint the Trustee seeks to hold Omanoff jointly and severally liable for all transfers from the Debtor to Omanoff, Omanoff America Telecom, LLC, Omanoff America, LLC, Contacts & Contracts, Inc., Owl America, Inc., the 1221 Ocean Avenue Property, and Richard Omanoff transfers.  **Exhibits 2, 3, 4, 5, 6, and 7.**

122.    Similarly, defendant **Philipson** owns and controls and worked in concert with Philipson International, LLC, and all monies paid to Philipson International, LLC ultimately benefited Philipson.

123.    Thus, by this complaint the Trustee seeks to hold Philipson jointly and severally liable for all transfers from the Debtor to Philipson and Philipson International LLC.  **Exhibit 8, 9 and 10.**

22

2614673

124.    On information and belief, defendant **Proto** owns and controls and worked in concert with Arco Telecom, and all monies paid to Arco Telecom ultimately benefited Proto. At a minimum, Proto earns commission from Arco Telecom.

125.    Mudmonth, LLC is a member of the Management Company, and is a subsequent transferee of funds transferred by the Debtor to the Management Company. In turn, and on information and belief, defendant Proto owns and controls Mudmonth LLC.

126.    Furthermore, bank records produced by DealDefenders reflect that Proto even received Debtor funds post-petition, in the approximate amount of $676,000.

127.    Thus, by this complaint the Trustee seeks to hold Proto jointly and severally liable for all transfers from the Debtor to Proto, Arco Telecom, and Mudmonth LLC.  **Exhibits 11, 12, and 13.**

128.    Similarly, defendant **Rahman** owns and controls and worked in concert with Zoom-Tel, and all monies paid to Zoom-Tel ultimately benefited Rahman.

129.    Bank records produced by DealDefenders reflect that defendant Go2Tel received significant transfers from the Debtor directly for the benefit of Zoom-Tel.  **Exhibit 23.**

130.    Thus, by this complaint the Trustee seeks to hold Rahman jointly and severally liable for all transfers from the Debtor to Zoom-Tel and from the Debtor to Go2Tel.  **Exhibits 14 and 23.**

131.    On information and belief, Tee received significant sums of money from the Debtor (via DealDefenders) relating to transactions with Arco Telecom, Proto's company. **Exhibit 18.** However, the true relationship of Tee and Arco is unclear from the Debtor's records.

132.    Tee is owned and controlled by defendant **Katit,** who is also the sole member and manager of 2365 Azure, a Florida limited liability company. On information and belief, Tee operates out of a residential address in New Jersey with no office building, yet posted annual revenue in 2016 in the amount of approximately $20 million.

133.    Bank records turned over by DealDefenders reflect that transfers of Debtor funds to Tee, or for Tee's benefit, continued even after the Debtor's Petition Date.

134.    Additionally, on or about November 30, 2016, Katit formed 2365 Azure as a Florida limited liability company. On information and belief, Katit is an associate of defendant Rahman.

2614673

135.    On information and belief, bank records produced by DealDefenders reflect that, on December 12, 2016, 2365 Azure LLC received $695,000 from the Debtor (via DealDefenders). **Exhibit 19.** On December 15, 2016, 2365 Azure LLC purchased real property located at 2365 Azure Circle, West Palm Beach, FL 33410 (the "Azure Property") for $4,100,000.

136.    Furthermore, and on information and belief, bank records produced by DealDefenders reflect that on December 12, 2016, Assured Title Agency LLC, a Florida limited liability company and title agency, received $3,803,661.62 from the Debtor (via DealDefenders bank accounts), which funds were used to complete payment for the Azure Property and any related closing costs and fees.

137.    On information and belief, the total sum of $4,498,661.62 of Debtor's funds, transferred through DealDefenders accounts, was used to purchase the Azure Property for cash. Thus, by this complaint the Trustee seeks to avoid and recover the monies used to purchase the Azure Property for the benefit of the estate, or alternatively place a constructive trust over the entirety of Azure Property.

138.    On August 24, 2015, Katit formed Overseas Charters Inc. as a Florida corporation with its principal address in Wilmington, Delaware.  On information and belief, Katit is the president of and is a director and officer of Overseas Charters and controls the company.

139.    Bank records produced by DealDefenders reflect that in 2016, Overseas Charters received $1,300,000 of Debtor funds. *See* **Exhibit 22.**

140.    By this complaint the Trustee seeks to hold Katit jointly and severally liable for all transfers from the Debtor to Katit, Tee, 2365 Azure, and Overseas Charters.  **Exhibits 17, 18, 19, and 22.**

141.    **DealDefenders** itself is the recipient of transfers from the Management Company. On information and belief, DealDefenders earned an escrow fee for transactions with the Debtor, which, due to the volume of activity and monies involved, those fees earned by DealDefenders totaled approximately $14,133,475.74. **Exhibit 20.**

142.    On information and belief, the Trustee may avoid those transfers to DealDefenders as fraudulent transfers.

2614673

143.    Defendant **Nazmul Hoque** is the recipient of transfers from the Debtor, which transfers, on information and belief, relate to the Debtor's business transactions with Indigo 11. **Exhibit 21.**

144.    On information and belief, the Trustee may avoid those transfers to Naz as fraudulent transfers.

145.    On information and belief, Proto and Katit have other business connections through which the Debtor's assets were dissipated. Bank records produced by DealDefenders reflect that Defendants Phonetime, Callvox, and Intelnetwork received high volume of transfers from the Debtor within four years of the Petition Date, all for the benefit of Tee (Katit's company) and/or Arco (Proto's company).  Callvox received funds of the Debtor post-petition, according to DealDefenders' records.  See **Exhibits 24, 25, and 26.**

F.    **The Debtor's Management Company and Omanoff-Related Entities**

146.    As noted above, the Debtor purportedly made money by purchasing accounts receivable from Tier 3 companies, advancing a reduced sum to those companies for those receivables, and collecting the full amount of the account receivable from the Tier 1 company.  The Debtor borrowed money from DLI, its main investor, and used those funds to make these loans. When the Debtor received full payment, DLI would be returned its principal plus interest (approximately 2.5% per month) on a daily basis.

147.    The Debtor's sole member, defendant VoIP Guardian LLC was the "management" company for the Debtor. VoIP Guardian LLC's members are as follows:

| Member | Member's Interest % |
| --- | --- |
| Omanoff America Telecom LLC | 40% |
| Mudmonth, LLC | 40% |
| Philipson International LLC | 5% |
| Brendan Ross → Richard Omanoff | 4.99% |
| Omanoff America LLC | 10.01% |

148.    On information and belief, Brendan Ross has stated that he returned his 4.99% interest to Omanoff for no consideration, and on information and belief, Richard Omanoff, Rodney Omanoff's father, is now a member of the Management Company.

2614673

149. The Management Company's "manager" is Omanoff America LLC.

150. The Management Company earned an approximate 4.5% "factor fee" on any profit the Debtor earned. Specifically, anything in excess of the principal and interest paid to DLI would be paid to the Management Company. Considering the vast amount of funds traveling through these entities, the Management Company quickly earned millions of dollars on account of its factor fee.

151. The profits "distributed" to the Debtor's management company and, in turn, defendants sued herein, however, were illusory, as they were predicated on transactions with entities that were not conducting legitimate business, were not generating profits, and were simply returning a portion of the monies provided to them by the Debtor.  In other words, as alleged herein, the Debtor was insolvent from inception, never earned any profits, and the monies provided to the Debtor's management company was merely the product of the scheme to defraud the Debtor and its creditors.

152. The Trustee seeks to avoid all transfers made from Debtor to the Management Company, in the approximate amount of $59,364,318.61 over a four-year period.  *See* **Exhibit 1.**

153. Furthermore, the Debtor seeks to hold Omanoff and Philipson, who at all times exercised control over the Debtor's management company, jointly and severally liable for fraudulent transfers from the Debtor and/or others on behalf of the Debtor to the Debtor's management company in the amount of $59,364,318.61 in transfers from December 2, 2015 through the petition date, of which $50,323,513.98 of that amount reflects transfers in the last two years. **Exhibit 1.**

154. Omanoff, Philipson, Proto, Rahman, DealDefenders, and Naz and their related entities directly benefitted from the monies distributed to the Debtor's Management Company, as subsequent transferees, which monies are subject to claw back insofar as the Debtor was not profitable and the monies paid, therefore, were not profits. *See* **Exhibits 2 through 14; 20, 21.**

155. All of the monies received by these individuals and entities were fraudulent transfers insofar as they reflected subsequent transfers from Debtor's Management Company, which was funded with phantom profits and were paid by the Debtor at the time that the Debtor was insolvent.

///

2614673

### G.    The Individuals Who Participated in this Scheme Are Not Protected by Any Fiduciary or Corporate Shield and are the Alter Egos of their Respective Entities

156.    Given the manner in which Tier 3 and Tier 1 entities interacted, certain individuals and companies worked in concert to defraud and/or otherwise harm the Debtor.  On information and belief, these entities and their control persons acted in concert (and, on information and belief, may have acted in concert with Proto, Rahman and/or Omanoff, as well) to create the fiction of legitimate businesses when, in fact, these entities were sham companies that profited off manufactured call volumes.  Because the individuals who operated these entities knew that the entities were defrauding the Debtor and, at all relevant times, acted on behalf of those entities to defraud the Debtor, the individuals are not protected by any corporate or fiduciary shield, and are equally liable for and chargeable with the conduct of the entities they controlled.

157.    As alleged herein, entities such as Telacme, Indigo 11, Najd, and Ikarim (with Shaks and Naz in control and, on information and belief, acting in concert with Rahman, Proto, and/or Omanoff) were being operated as purported telecom companies when, in fact, they were used as instrumentalities to create fictional call volume designed to reflect millions of dollars in business and future receivables that were then sold to the Debtor, as a factor, for a disproportionately small discount.

158.    As alleged herein and on information and belief, those entities, working with other entities and individuals, created and provided false call data by churning the same money received from the Debtor back to the Debtor, and ultimately failed to pay Debtor when DLI refused to increase its investment in the Debtor's business.

159.    As of late 2018, the inability of the Debtor to obtain more money from DLI made it no longer advantageous for these entities and individuals to maintain the charade of posing as profitable telecom businesses.  Thus, immediately upon being advised of DLI's decision not to increase its investment and, in turn, Debtor's ability to increase its factoring position (*i.e.*, increase its purchase of greater amounts of future receivables), the entities and persons who purportedly ran the Tier 3 telecom businesses immediately ceased operations and seemingly disappeared overnight.

27

2614673

160.    The timing of the cessation of payments to the Debtor with DLI's decision reflects that these Tier 1 and Tier 3 entities were created, maintained, and operated for the purpose of creating the illusion of legitimacy when, in fact, these entities were effectively shell companies that generated fictional call volume purchase by the Debtor.  Because substantially all of the Debtor's monies were distributed to those involved in this scheme, the inability to generate greater investment made it impossible to maintain this fiction.

161.    As alleged herein, at all times relevant, the individuals (as identified in the following Table A) knew that their entities were engaged in defrauding the Debtor, knew the call volumes generated by their entities were manufactured and fictitious, and knew that their entities were receiving Debtor's monies on false pretenses.

162.    Because these entities were engaged in defrauding the Debtor, the individuals that operated those business are not entitled to the benefits of any corporate or fiduciary shield and should be deemed the alter ego of those entities.

163.    Accordingly, with respect to claims of fraudulent transfer and aiding and abetting breach of fiduciary duty, each defendant cluster identified below in Table A should be treated as jointly and severally liable for the harm caused to the Debtor for the amounts reflected therein:

**TABLE A: Individuals and Their Affiliated Entities**

| <u>Individual</u>: | <u>Working in Concert With</u>: |
| --- | --- |
| RODNEY OMANOFF<br>[Exhibits 1-7] | • VoIP Guardian LLC<br>• Omanoff America Telecom, LLC<br>• Omanoff America, LLC<br>• Contacts & Contracts, Inc.<br>• Owl America, Inc.<br>• Richard Omanoff |
| JOHN O. PHILIPSON<br>[Exhibits 8-10] | • Philipson International, LLC<br>• Adela Philipson |
| MARK PROTO<br>[Exhibits 11-13] | • Mudmonth, LLC<br>• Arco Telecom Ltd[1] |

[1] While it appears Proto and/or Katit may have affiliation with Callvox, Phonetime, and Intelnetwork, investigation is ongoing and to the extent discovery reveals Proto and/or Katit own or control these entities, Plaintiff reserves the right to hold Katit and/or Proto jointly and severally liable for such transfers according to proof at trial.

| JOSEPH RAHMAN<br>[Exhibits 14, 23] | • Zoom-Tel, Inc.<br>• Go2Tel Inc. |
| COLIN ECCLES<br>[Exhibits 15-16] | • LTDTEL |
| TAREK KATIT<br>[EXHIBITS 17-19, 22] | • Tee Telecommunications Inc.<br>• 2365 Azure LLC<br>• Overseas Charters Inc. |

**FIRST CLAIM FOR RELIEF**

**Breach of Fiduciary Duty**

**(As Against Omanoff, Proto, Rahman, Philipson)**

164.    Plaintiff realleges the allegations contained in each preceding paragraph of the Complaint as though set forth fully herein.

165.    At all times relevant, Omanoff, Proto, Rahman, and Philipson (individually and as the managing partner of the Management Company), and each of them, owed fiduciary duties of care and loyalty to the Debtor and owed a duty not to engage in self-dealing conduct that could harm the Debtor, and also a duty of care to act with minimal competency to ensure that the Debtor was a properly run entity under the law, and a duty of loyalty to avoid placing his own interest ahead of those of the Debtor and its creditors.

166.    Additionally, because the Debtor was at all relevant times insolvent, Omanoff, Proto, Rahman, and Philipson, and each of them, owed the same fiduciary duties to the creditors of the Debtor.  As alleged herein, Omanoff, Proto, Rahman, and Philipson and each of them, breached their fiduciary duties as both directors and officers of the Debtor.

167.    The fiduciary duty of loyalty and good faith required that each of these defendants put their interests of the Debtor and its creditors above their own personal interests and desires and to avoid self-dealing, personal gain, or a cognizable conflict of interest.  The duties of loyalty and good faith further required that these defendants refrain from intentionally acting with a purpose other than that of advancing the best interests of the Debtor and its creditors and from intentionally failing to act in the face of a known duty to act, thereby consciously disregarding their responsibilities.

29

2614673

168.    The duties of loyalty and good faith further required that each of these defendants exercise a level of diligence when approving the Debtor's business transactions such that they did not act grossly negligent or consciously disregard practical reality.

169.    Assuming (without conceding) that Omanoff, Proto, Rahman, and Philipson were not in fact drivers of the scheme to convince DLI to repeatedly increase its investment with knowledge that the Tier 3 providers were not legitimate, various acts and omissions by these defendants give rise to claims for breach of fiduciary duties, including without limitation:

   a.  The decision to lend money to Tier 3 companies like Najd and Telacme without conducting sufficient due diligence into the *bona fides* of those companies;

   b.  The willingness to lend millions of dollars to foreign entities (such as Wavecrest) without the benefit of trade credit insurance;

   c.  The failure to obtain sufficient recourse in the United States in the event of default from those companies;

   d.  The failure to recognize and heed early red flag warnings on these companies, such as call volume volatility reflected on invoices and cautionary advice from insurance brokers;

   e.  The failure to recognize that the call volume was far in excess of what could be supported by the jurisdictions in which the Najd and Telacme did business;

   f.  The failure to cut off funds to Najd and Telacme when they began to slow pay invoices;

   g.  The failure to investigate the role of Inter-switch in Najd and Telacme's business; and

   h.  The failure to maintain any backstop of funds available in the event of client default, instead the defendants engaged in self-dealing in paying significant management fees to the Management Company, which, in turn, paid out millions of dollars to Omanoff-related entities for no consideration.

170.    In all, DLI investors invested a total of approximately $192 million in the Debtor (principal).  Approximately $21 million has been seized by the Dutch government, but the rest is

2614673

lost. Indeed, as a direct and proximate result of Omanoff's, Proto's, Rahman's, and Philipson's

breaches of the fiduciary duty of care and loyalty, the Debtor quickly found itself on increasingly

precarious financial footing, including having lost approximately $160 million invested in the

Debtor by DLI.  This caused damages to the Debtor by diverting, dissipating and unduly risking the

company's assets that may otherwise have been available for creditors.

171.    These breaches of the fiduciary duty of care and loyalty were the underlying, direct,

and proximate cause of damage caused to the Debtor's estate, in an amount according to proof at

trial, but presently estimated to be in excess of $170,000,000.

## SECOND CLAIM FOR RELIEF

### Aiding and Abetting Breach of Fiduciary Duty

### (As Against Omanoff, Proto, Rahman, Philipson, Zoom-Tel)

172.    Plaintiff realleges the allegations contained in each preceding paragraph of the

Complaint as though set forth fully herein.

173.    Omanoff is sued under this claim in his capacity as the sole member and managing

member of Omanoff America LLC. Omanoff America LLC is the manager of the Debtor's parent

company, VoIP Guardian LLC.

174.    To the extent they did not owe direct duties of care and loyalty to the Debtor, Proto,

Rahman, Zoom-Tel, Philipson, and each of them, provided material assistance and aided Omanoff in

breaching his fiduciary duties by, among other things:

    a.   Ignoring red flags associated with the Tier 3 and Tier 1 entities with whom the

        Debtor conducted business;

    b.   Creating situations where the aiders and abettors were on both sides of the

        transaction having interests in or representing both the Debtor and/or the Tier I

        and Tier 3 partners, including providing Tier 3 partners to transact business with

        the Debtor and owning interests in some of these Tier 3 partners;

    c.   On information and belief, Rahman and Zoom-Tel knowingly and intentionally

        helped, participated in, and provided substantial assistance to Omanoff in

        breaching his fiduciary duties to the Debtor by providing inflated call data and

1    information and invoices for payment to the Tier 3 companies, including Najd and

2    Telacme.

3    175.    As a direct and proximate result of these defendants' aiding and abetting of Omanoff,

4    the Debtor's estate and its creditors individually and en masse, have been harmed in an amount to be

5    proved at trial, but presently estimated to be in excess of $170,000,000.

6    **THIRD CLAIM FOR RELIEF**

7    **Avoidance of 2-Year Fraudulent Transfers (Actual Fraud)**

8    **(As Against VoIP Guardian LLC, Omanoff, Omanoff America Telecom LLC,**

9    **Omanoff America, LLC Contact & Contracts Inc., Richard Omanoff, Philipson,**

10    **Philipson International LLC, A. Philipson, Proto, Mudmonth, Arco, Zoom-Tel,**

11    **Eccles, LTDTEL, Tee, DealDefenders, Nazmul Hoque, Callvox, Intelnetwork,**

12    **Go2Tel, Najd, Telacme Inter-switch, Kerkhove, and Notwal)**

13    **[11 U.S.C. §§ 548(a)(1)(A) and 550]**

14    176.    Plaintiff realleges the allegations contained in each preceding paragraph of the

15    Complaint as though set forth fully herein.

16    177.    Upon information and belief, during the two-year period immediately preceding the

17    Petition Date, the Debtor made transfers of property to VoIP Guardian LLC, Omanoff, Omanoff

18    America Telecom LLC, Omanoff America, LLC Contact & Contracts Inc., Richard Omanoff,

19    Philipson, Philipson International LLC, A. Philipson, Proto, Mudmonth, Arco, Zoom-Tel, Eccles,

20    LTDTEL, Tee, DealDefenders, Nazmul Hoque, Callvox, Intelnetwork, and Go2Tel as set forth in

21    **Exhibits 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 18, 20, 21, 23, 25, and 26** attached hereto

22    and incorporated by reference (collectively, the "2-Year Transfers") to or for the benefit of each of

23    them, on the dates and in the amounts set forth therein with the actual intent to delay, hinder or

24    defraud the Debtor's creditors.  Each such transfer was made or incurred with actual intent to hinder,

25    delay, or defraud any entity to which the Debtor was or became, on or after the date that such

26    transfer was made, indebted.[2]

27    _____

28    [2] To the extent any of these transfers are deemed "subsequent transfers" after transfers from the
Debtor to the Management Company, the Trustee seeks recovery from these defendants as
subsequent transferees, or initial transferees, according to proof at trial.  11 U.S.C. § 550.

2614673

178.    In addition, in or around October 2018, the Debtor made transfers to Najd in the amount of no less than $32,226,014.16; in or around November 2018, the Debtor made transfers to Najd in the amount of no less than $34,006,558.16; and in or around December 2018, the Debtor made transfers to Najd in the amount of no less than $21,111,552.31 (collectively, the "Najd Transfers").

179.    On information and belief, the Debtor made the Najd Transfers, and each of them, with actual intent to hinder, delay, or defraud the Debtor's creditors (*i.e.,* DLI).

180.    Accordingly, the Trustee may avoid the Najd Transfers in the total amount of **$85,570,470.96.**

181.    Additionally, in or around October 2018, the Debtor made transfers to Telacme in the amount of no less than $58,952,030.07; in or in or around November 2018, the Debtor made transfers to Telacme in the amount of no less than $58,931,278.81; and in or around December 2018, the Debtor made transfers to Telacme in the amount of no less than $38,381,446.30 (collectively, the "Telacme Transfers").

182.    On information and belief, the Debtor made the Telacme Transfers, and each of them, with actual intent to hinder, delay, or defraud the Debtor's creditors (*i.e.,* DLI).

183.    Accordingly, the Trustee may avoid the Telacme Transfers in the total amount of **$156,264,755.18.**

184.    On information and belief, defendants Inter-switch, Kerkhove, and Notwal are subsequent transferees of the Najd Transfers and Telacme Transfers, the exact amounts of which according to proof at trial.

185.    Accordingly, the 2-Year Transfers, Najd Transfers, and Telacme Transfers are avoidable pursuant to 11 U.S.C. §§ 548(a)(1)(A) and 550.

///
///

2614673

## **FOURTH CLAIM FOR RELIEF**

**Avoidance of 2-Year Fraudulent Transfers (Constructive Fraud)**

**(As Against VoIP Guardian LLC, Omanoff, Omanoff America Telecom LLC,**

**Omanoff America, LLC Contact & Contracts Inc., Richard Omanoff, Philipson,**

**Philipson International LLC, A. Philipson, Proto, Mudmonth, Arco, Zoom-Tel, Eccles,**

**LTDTEL, Tee, DealDefenders, Nazmul Hoque, Callvox, Intelnetwork, Go2Tel, Najd,**

**Telacme, Inter-switch, Kerkhove, and Notwal)**

**[11 U.S.C. §§ 548(a)(1)(B) and 550]**

186.    Plaintiff realleges the allegations contained in each preceding paragraph of the Complaint as though set forth fully herein.

187.    Upon information and belief, during the two-year period immediately preceding the Petition Date, the Debtor made the 2-Year Transfers to or for the benefit of VoIP Guardian LLC, Omanoff, Omanoff America Telecom LLC, Omanoff America, LLC Contact & Contracts Inc., Richard Omanoff, Philipson, Philipson International LLC, A. Philipson, Proto, Mudmonth, Arco, Zoom-Tel, Eccles, LTDTEL, Tee, DealDefenders, Nazmul Hoque, Callvox, Intelnetwork, and Go2Tel as set forth in **Exhibits 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 18, 20, 21, 23, 25, and 26,** without the Debtor having received reasonably equivalent value in exchange for such transfers, and the Debtor (a) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; (b) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; (c) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or (d) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.[3]

188.    In addition, in or around October 2018, the Debtor made transfers to Najd in the amount of no less than $32,226,014.16; in or around November 2018, the Debtor made transfers to

---

[3] To the extent any of these transfers are deemed "subsequent transfers" after transfers from the Debtor to the Management Company, the Trustee seeks recovery from these defendants as subsequent transferees, or initial transferees, according to proof at trial. 11 U.S.C. § 550.

2614673

Najd in the amount of no less than $34,006,558.16; and in or around December 2018, the Debtor

made transfers to Najd in the amount of no less than $21,111,552.31 (collectively, the "Najd

Transfers").

189.    On information and belief, the Debtor made the Najd Transfers, and each of them,

without the Debtor having received reasonably equivalent value in exchange for such transfers, and

the Debtor (a) was insolvent on the date that such transfer was made or such obligation was incurred,

or became insolvent as a result of such transfer or obligation; (b) was engaged in business or a

transaction, or was about to engage in business or a transaction, for which any property remaining

with the debtor was an unreasonably small capital; (c) intended to incur, or believed that the debtor

would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or (d)

made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit

of an insider, under an employment contract and not in the ordinary course of business.

190.    Accordingly, the Trustee may avoid the Najd Transfers in the total amount of

**$85,570,470.96.**

191.    Additionally, in or around October 2018, the Debtor made transfers to Telacme in the

amount of no less than $58,952,030.07; in or in or around November 2018, the Debtor made

transfers to Telacme in the amount of no less than $58,931,278.81; and in or around December 2018,

the Debtor made transfers to Telacme in the amount of no less than $38,381,446.30 (collectively, the

"Telacme Transfers").

192.    On information and belief, the Debtor made the Telacme Transfers, and each of them,

without the Debtor having received reasonably equivalent value in exchange for such transfers, and

the Debtor (a) was insolvent on the date that such transfer was made or such obligation was incurred,

or became insolvent as a result of such transfer or obligation; (b) was engaged in business or a

transaction, or was about to engage in business or a transaction, for which any property remaining

with the debtor was an unreasonably small capital; (c) intended to incur, or believed that the debtor

would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or (d)

made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit

of an insider, under an employment contract and not in the ordinary course of business.

2614673

193.    Accordingly, the Trustee may avoid the Telacme Transfers in the total amount of **$156,264,755.18.**

194.    On information and belief, defendants Inter-switch, Kerkhove, and Notwal are subsequent transferees of the Najd Transfers and Telacme Transfers, the exact amounts of which according to proof at trial.

195.    Accordingly, the 2-Year Transfers, Najd Transfers, and Telacme Transfers are avoidable pursuant to 11 U.S.C. §§ 548(a)(1)(B) and 550.

### FIFTH CLAIM FOR RELIEF

**Avoidance of 4-Year Fraudulent Transfers (Actual Intent)**

**(As Against VoIP Guardian LLC, Omanoff, Omanoff America Telecom LLC,**

**Omanoff America, LLC Contact & Contracts Inc., Richard Omanoff, Philipson,**

**Philipson International LLC, A. Philipson, Proto, Mudmonth, Arco, Zoom-Tel,**

**Eccles, LTDTEL, Katit, Tee, 2365 Azure, Overseas Charters, DealDefenders,**

**Nazmul Hoque, Go2Tel, Phonetime, Callvox, and Intelnetwork)**

**[11 U.S.C. § 544(b)(1) and 550; Cal. Civ. Code §§ 3439.04(a)(1) and 3439.07]**

196.    Plaintiff realleges the allegations contained in each preceding paragraph of the Complaint as though set forth fully herein.

197.    Upon information and belief, during the four-year period immediately preceding the Petition Date, the Debtor made transfers of property to or for the benefit of VoIP Guardian LLC, Omanoff, Omanoff America Telecom LLC, Omanoff America, LLC Contact & Contracts Inc., Richard Omanoff, Philipson, Philipson International LLC, A. Philipson, Proto, Mudmonth, Arco, Zoom-Tel, Eccles, LTDTEL, Tarek Katit, Tee, 2365 Azure, Overseas Charters, DealDefenders, Nazmul Hoque, Go2Tel, Phonetime, Callvox, and Intelnetwork as set forth in **Exhibits 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, and 26** attached hereto and incorporated by reference (collectively, the "4-Year Transfers") to or for the benefit of each of such defendants on the dates and in the amounts set forth therein.  Each of the 4-Year Transfers was made

2614673

or incurred with actual intent to hinder, delay, or defraud any entity to which the Debtor was or

became, on or after the date that such transfer was made, indebted.[4]

198.    Accordingly, the 4-Year Transfers are avoidable pursuant to 11 U.S.C. § 544, Cal.

Civ. Code § 3439.04(a)(2).

### SIXTH CLAIM FOR RELIEF

**Avoidance of 4-Year Fraudulent Transfers (Constructive Fraud)**

**(As Against VoIP Guardian LLC, Omanoff, Omanoff America Telecom LLC,**

**Omanoff America, LLC Contact & Contracts Inc., Richard Omanoff, Philipson,**

**Philipson International LLC, A. Philipson, Proto, Mudmonth, Arco, Zoom-Tel,**

**Eccles, LTDTEL, Tarek Katit, Tee, 2365 Azure, Overseas Charters, DealDefenders,**

**Nazmul Hoque, Go2Tel, Phonetime, Callvox, and Intelnetwork)**

**[11 U.S.C. §§ 544(b)(1) and 550; Cal. Civ. Code §§ 3439.04(a)(2), 3439.05 and 3439.07]**

199.    Plaintiff realleges and incorporates herein by reference each and every one of the

foregoing paragraphs, from paragraph number 1 to this instant paragraph, as if set forth herein in full.

200.    Upon information and belief, each of the 4-Year Transfers set forth in **1, 2, 3, 4, 5, 6,**

**7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, and 26** was made to such

defendants, as applicable, and, upon information and belief to the Subsequent Transferee Defendants

without the Debtor receiving a reasonably equivalent value in exchange for such transfers; and the

Debtor was insolvent at that time, or the Debtor became insolvent as a result of such transfers.[5]

201.    Each of these transfers was made without the Debtor having received reasonably

equivalent value in exchange for such transfers, and the Debtor (a) was insolvent on the date that

such transfer was made or such obligation was incurred, or became insolvent as a result of such

transfer or obligation; (b) was engaged in business or a transaction, or was about to engage in

business or a transaction, for which any property remaining with the debtor was an unreasonably

---

[4] To the extent any of these transfers are deemed "subsequent transfers" after transfers from the
Debtor to the Management Company, the Trustee seeks recovery from these defendants as
subsequent transferees, or initial transferees, according to proof at trial.  11 U.S.C. § 550.

[5] To the extent any of these transfers are deemed "subsequent transfers" after transfers from the
Debtor to the Management Company, the Trustee seeks recovery from these defendants as
subsequent transferees, or initial transferees, according to proof at trial.  11 U.S.C. § 550.

2614673

1    small capital; (c) intended to incur, or believed that the debtor would incur, debts that would be

2    beyond the debtor's ability to pay as such debts matured; or (d) made such transfer to or for the

3    benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an

4    employment contract and not in the ordinary course of business.

5    202.    Accordingly, the 4-Year Transfers are avoidable pursuant to 11 U.S.C. § 544, Cal.

6    Civ. Code § 3439.05 and 3439.07.

7    **SEVENTH CLAIM FOR RELIEF**

8    **Avoidance of Preferential Transfers**

9    **(As Against VoIP Guardian LLC, Omanoff, Omanoff America Telecom LLC, Omanoff**

10    **America, LLC Contact & Contracts Inc., Philipson, Philipson International LLC, A.**

11    **Philipson, Proto, Mudmonth, Arco, Zoom-Tel, Eccles, and LTDTEL)**

12    **[11 U.S.C. § 547]**

13    203.    Plaintiff realleges the allegations contained in each preceding paragraph of the

14    Complaint as though set forth fully herein.

15    204.    Upon information and belief, the Debtor made transfers of property to VoIP Guardian

16    LLC, Omanoff, Omanoff America Telecom LLC, Omanoff America, LLC Contact & Contracts Inc.,

17    Philipson, Philipson International LLC, A. Philipson, Proto, Mudmonth, Arco, Zoom-Tel, Eccles,

18    and LTDTEL as set forth in **Exhibits 1, 2, 3, 4, 5, 6, 8,9, 10, 11, 12, 13, 14, 15, and 16** (collectively,

19    the "1-Year Insider Transfers").

20    205.    On information and belief, each of the defendants VoIP Guardian LLC, Omanoff,

21    Omanoff America Telecom LLC, Omanoff America, LLC Contact & Contracts Inc., Philipson,

22    Philipson International LLC, A. Philipson, Proto, Mudmonth, Arco, Zoom-Tel, Eccles, and

23    LTDTEL qualifies an "insider" of the Debtor as that term is used in 11 U.S.C. §§ 101 and 547.

24    206.    Upon information and belief, as a result of the 1-Year Insider Transfers, such

25    defendants each received more than he/she/it would have received as a creditor in the chapter 7

26    liquidation had the 1-Year Insider Transfers not been made.

27    207.    At all relevant times, the Debtor was insolvent.

28

38

1    208.    Accordingly, the 1-Year Insider Transfers are avoidable pursuant to 11 U.S.C.

2  § 547(b).

3                          **EIGHTH CLAIM FOR RELIEF**

4                      **Avoidance of Post-Petition Transfers**

5          **(As Against Omanoff, A. Philipson, Proto, Tee, and Callvox)**

6                              **[11 U.S.C. § 549]**

7    209.    Plaintiff realleges the allegations contained in each preceding paragraph of the

8  Complaint as though set forth fully herein.

9    210.    Bank records produced by DealDefenders reflect that the following entities and

10  individuals received funds belonging to the Debtor postpetition: Omanoff, A. Philipson, Proto, Tee,

11  and Callvox (the "Postpetition Transfers"). *See* **Exhibits 2, 10, 11, 18, and 25.**

12    211.    None of the Postpetition Transfers was authorized by the Trustee or the Bankruptcy

13  Court.

14    212.    Accordingly, the Trustee may avoid and recover the Postpetition Transfers, and each

15  of them, from the defendants listed above, pursuant to 11 U.S.C. § 549.

16                          **NINTH CLAIM FOR RELIEF**

17                      **Recovery of Avoided Transfers**

18          **(As Against VoIP Guardian LLC, Omanoff, Omanoff America Telecom LLC,**

19          **Omanoff America, LLC Contact & Contracts Inc., Richard Omanoff, Philipson,**

20          **Philipson International LLC, A. Philipson, Proto, Mudmonth, Arco, Zoom-Tel, Eccles,**

21          **LTDTEL, Katit, Tee, 2365 Azure, Overseas Charters, DealDefenders, Nazmul Hoque, Najd,**

22          **Telacme, Go2Tel, Phonetime, Callvox, Intelnetwork, Inter-switch, Kerkhove, and Notwal)**

23    213.    Plaintiff realleges the allegations contained in each preceding paragraph of the

24  Complaint as though set forth fully herein.

25    214.    By reason of the foregoing, the Trustee is entitled to recover for the benefit of the

26  estate the value of the 1-Year Transfers, 2-Year Transfers, 4-Year Transfers, Najd Transfers, and

27  Telacme Transfers, plus interest thereon at the maximum legal rate from and after the date of each of

28  such transfers, in sums according to proof but which the Trustee estimates to be the total sums listed

2614673

on **Exhibits 1 through 22,** respectively, Telacme Transfers of $156,264,755.18, and Najd Transfers of $85,570,470.96 from the defendants pursuant to 11 U.S.C. §§ 544, 550(a)(1) and/or Cal. Civ. Code § 3439.07.

### TENTH CLAIM FOR RELIEF

#### Breach of Contract

#### (As Against Ikarim-Related Defendants and Indigo 11-Related Defendants)

215.    Plaintiff realleges the allegations contained in each preceding paragraph of the Complaint as though set forth fully herein.

216.    The Debtor is the assignee under sales contracts entered into between various Tier 3 and Tier 1 entities. However, the Tier 3 entities also guaranteed performance, such that the Debtor could collect from either the Tier 1 or Tier 3 in the event of non-payment on certain invoices owed to the Debtor.

217.    The Debtor is owed the following amounts on account of contracts and/or guarantees entered into with the following obligors and personal guarantors/others, on a joint and several basis:

| Tier 1 Obligor | Tier 3 Obligor | Others Liable | Accounts Receivable | Notes Receivable | Total Demand on all Obligors |
|---|---|---|---|---|---|
| Ikarim Business Services Ltd. | Najd Technologies Limited | Ikarim-US; IKBS; IKBS-US; Shaks | $3,854,492.13 | $58,004,470.96 | $61,858,963.09[6] |
| Indigo 11 | Telacme Limited | Indigo 11-US; Nazmul Hoque | $7,035,715.03 | $101,165,115.18 | $108,200,830.21[7] |

218.    The Debtor has performed all obligations under the sales contracts and the corresponding factoring agreements.

219.    Defendants have breached their obligations under the sales contracts assigned to the Debtor by failing to pay the remaining balances due to Debtor based on the relevant invoices, to the Trustee's damage in the sums alleged above or otherwise according to proof.

---

[6] This claim is an alternative claim to the Trustee's claim for avoidance and recovery of the Najd Transfers detailed in the Third and Fourth claims for relief. The contract claim allows Najd to receive credit for sums paid back to the Debtor; the fraudulent transfer claims do not.

[7] This claim is an alternative claim to the Trustee's claim for avoidance and recovery of the Telacme Transfers detailed in the Third and Fourth claims for relief. The contract claim allows Telacme to receive credit for sums paid back to the Debtor; the fraudulent transfer claims do not.

2614673

**ELEVENTH CLAIM FOR RELIEF**

**Unjust Enrichment**

**(As Against Ikarim-Related Defendants and Indigo 11-Related Defendants)**

220.    Plaintiff realleges the allegations contained in each preceding paragraph of the Complaint as though set forth fully herein.

221.    On information and belief, the Debtor conferred a benefit on the following defendants by entering into factoring agreements with Tier 3 carriers, which provided necessary financing to allow those Tier 3 carriers to enter into sales contracts with Tier 1 carriers such that Tier 1 carriers would be able to transfer call traffic to the Tier 3 carriers:

| Tier 1 Obligor | Tier 3 Obligor | Others Liable | Accounts Receivable | Notes Receivable | Total Demand on all Obligors |
|---|---|---|---|---|---|
| Ikarim Business Services Ltd. | Najd Technologies Limited | Ikarim-US; IKBS; IKBS-US; Shaks | $3,854,492.13 | $58,004,470.96 | $61,858,963.09[8] |
| Indigo 11 | Telacme Limited | Indigo 11-US; Nazmul Hoque | $7,035,715.03 | $101,165,115.18 | $108,200,830.21[9] |

222.    Defendants have accepted or retained the benefits conferred upon them by the Debtor.

223.    Defendants' receipt and use of the traffic call services provided by the Tier 3 carriers is inequitable and unjust without paying the Debtor what is owed on account of those services.

224.    Accordingly, the defendants should pay the above sums to the Debtor for the benefits unjustly conferred to those defendants.

///

///

---

[8] This claim is an alternative claim to the Trustee's claim for avoidance and recovery of the Najd Transfers detailed in the Third and Fourth claims for relief. The contract claim allows Najd to receive credit for sums paid back to the Debtor; the fraudulent transfer claims do not.

[9] This claim is an alternative claim to the Trustee's claim for avoidance and recovery of the Telacme Transfers detailed in the Third and Fourth claims for relief. The contract claim allows Telacme to receive credit for sums paid back to the Debtor; the fraudulent transfer claims do not.

2614673

**TWELFTH CLAIM FOR RELIEF**

**Claim Disallowance**

**(As Against VoIP Guardian LLC)**

**[11 U.S.C. § 502]**

225.    Plaintiff realleges the allegations contained in each preceding paragraph of the Complaint as though set forth fully herein.

226.    On June 27, 2019, defendant VoIP Guardian LLC filed Proof of Claim No. 1 in the Debtor's bankruptcy estate, asserting a claim in the amount of $9,401,725.06 (the "VoIP Claim").

227.    Defendant VoIP Guardian LLC is the recipient of transfers from the Debtor totaling just under $60 million. **Exhibit 1.**

228.    Pursuant to Section 502 of the Bankruptcy Code, the Trustee objects to the VoIP Claim, and such claim must be disallowed until such time as such VoIP Guardian LLC pays to the Trustee an amount equal to the aggregate amount of all transfers made to it, plus interest thereon and costs.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for a judgment hereon ordering the following relief:

**On the First Claim for Relief**:

1.    Compensatory damages from Omanoff, Proto, Rahman, and Philipson, jointly and severally, the exact amount of which to be proved at trial and presently alleged to be no less than $170 million;

2.    Disgorgement of salaries from Omanoff in amounts according to proof at trial;

**On the Second Claim for Relief:**

1.    Compensatory damages from Omanoff (in his capacity as manager of Omanoff America LLC), Proto, Rahman, Philipson, and Zoom-Tel jointly and severally, the exact amount of which to be proved at trial and presently alleged to be no less than $170 million;

**On the Third and Fourth Claims for Relief**:

1.    Avoidance of the 2-Year Transfers set forth on **Exhibits 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 18, 20, 21, 23, 25, and 26** presently estimated in the amounts set forth

therein, and any subsequent transfers, the exact amounts according to proof at trial;

**On the Fifth and Sixth Claims for Relief**:

    1.    Avoidance of the 4-Year Transfers as set forth on **Exhibits 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, and 26** presently estimated in the amounts set forth therein, and any subsequent transfers, the exact amounts according to proof at trial;

**On the Seventh Claim for Relief:**

    1.    Avoidance of the 1-Year Transfers as set forth on **Exhibits 1, 2, 3, 4, 5, 6, 8, 9, 10, 11, 12, 13, 14, 15, and 16,** presently estimated in the amounts set forth therein, the exact amounts according to proof at trial;

**On the Eighth Claim for Relief**:

    1.    Avoidance of the Postpetition Transfers as set forth on **Exhibits 2, 10, 11, 18, and 25** presently estimated in the amounts set forth therein, the exact amounts according to proof at trial;

**On the Ninth Claim for Relief:**

    1.    Recovery of the avoided transfers (**Exhibit 1 through 26**) from the Defendants;

    2.    A constructive trust over the Azure Property for the benefit of the bankruptcy estate;

**On the Tenth Claim for Relief:**

    1.    Damages for breach of contract against the parties and amounts set forth in the chart, paragraph 217, *supra*, the exact amounts according to proof at trial;

**On the Eleventh Claim for Relief:**

    1.    Recovery of the benefits conferred as set forth in paragraph 221, *supra*, for the benefit of the estate;

**On the Twelfth Claim for Relief**:

    1.    Disallowance of the VoIP Claim;

**As to All Claims for Relief**:

    1.    Pre-judgment interest and post-judgment interest;

2614673

1          2.      Punitive and exemplary damages for all claims for which such damages may

2    be awarded under applicable law;

3          3.      Reasonable attorneys' fees and costs permitted under applicable law; and

4          4.      Such other and further relief as is just and proper.

5

6    DATED:  March 31, 2021                    BRUTZKUS GUBNER

7

8                                              By: /s/ Steven T. Gubner
                                               Steven T. Gubner
9                                              Jason B. Komorsky
                                               Jessica L. Bagdanov
10                                             Special Litigation Counsel for
                                               Timothy Yoo, Chapter 7 Trustee
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2614673

**Transfers to VoIP Guardian LLC**
**(Management Company)**

| Date | Bank Account: VG_FR_x6458 | Bank Account: VG_FR_x9399 | Grand Total |
|---|---|---|---|
| 12/2/2015 | $ (12,993.34) | $ | (12,993.34) |
| 12/29/2015 | (25,770.18) | | (25,770.18) |
| 1/9/2016 | (22,153.79) | | (22,153.79) |
| 2/6/2016 | (808,200.46) | | (808,200.46) |
| 2/10/2016 | (75,874.80) | | (75,874.80) |
| 3/7/2016 | (977,721.73) | | (977,721.73) |
| 3/21/2016 | (24,963.46) | | (24,963.46) |
| 6/16/2016 | (23,560.09) | | (23,560.09) |
| 7/21/2016 | (28,080.05) | | (28,080.05) |
| 7/26/2016 | | (1,595.88) | (1,595.88) |
| 8/23/2016 | (14,359.91) | | (14,359.91) |
| 9/16/2016 | (198,058.67) | | (198,058.67) |
| 11/3/2016 | (442,451.65) | | (442,451.65) |
| 12/7/2016 | (481,469.42) | | (481,469.42) |
| 12/9/2016 | (10,563.26) | | (10,563.26) |
| 12/14/2016 | (2,217,248.07) | | (2,217,248.07) |
| 1/4/2017 | (515,041.93) | | (515,041.93) |
| 1/10/2017 | (1,070,689.69) | | (1,070,689.69) |
| 1/13/2017 | (66,972.02) | | (66,972.02) |
| 1/17/2017 | | (3,907.20) | (3,907.20) |
| 2/7/2017 | (1,676,542.50) | | (1,676,542.50) |
| 2/9/2017 | (228,053.56) | | (228,053.56) |
| 2/13/2017 | (42,849.36) | | (42,849.36) |
| 2/14/2017 | (24,141.84) | | (24,141.84) |
| 3/6/2017 | (47,541.77) | | (47,541.77) |
| 3/13/2017 | (85,490.90) | | (85,490.90) |
| 3/14/2017 | (1,129,849.38) | | (1,129,849.38) |
| 3/22/2017 | (63,184.26) | | (63,184.26) |
| 4/17/2017 | (55,599.12) | | (55,599.12) |
| 4/18/2017 | (49,550.85) | (6,671.58) | (56,222.43) |
| 4/19/2017 | (1,261,314.79) | | (1,261,314.79) |
| 5/3/2017 | (81,006.74) | | (81,006.74) |
| 5/12/2017 | (89,319.68) | | (89,319.68) |
| 5/18/2017 | (1,351,540.42) | | (1,351,540.42) |
| 5/30/2017 | (70,150.44) | | (70,150.44) |
| 6/2/2017 | (102,350.67) | | (102,350.67) |
| 6/12/2017 | (128,269.57) | | (128,269.57) |
| 6/14/2017 | (1,422,760.26) | (1,422,760.26) | (2,845,520.52) |
| 7/10/2017 | (108,178.67) | | (108,178.67) |
| 7/11/2017 | (931,923.27) | | (931,923.27) |
| 7/13/2017 | (446,115.94) | | (446,115.94) |
| 7/17/2017 | (89,554.53) | | (89,554.53) |
| 7/28/2017 | (34,867.61) | | (34,867.61) |
| 8/2/2017 | (106,205.68) | | (106,205.68) |
| 8/14/2017 | (853,833.71) | | (853,833.71) |
| 8/15/2017 | (874,454.81) | | (874,454.81) |
| 8/29/2017 | (24,324.90) | | (24,324.90) |
| 9/5/2017 | (125,778.11) | | (125,778.11) |
| 9/8/2017 | (45,949.33) | | (45,949.33) |
| 9/11/2017 | (48,056.38) | | (48,056.38) |
| 9/13/2017 | (700,497.83) | | (700,497.83) |
| 9/14/2017 | (757,485.65) | | (757,485.65) |
| 9/18/2017 | (272,910.52) | | (272,910.52) |

**EXHIBIT 1**                    **45**

| Date | Bank Account: VG_FR_x6458 | Bank Account: VG_FR_x9399 | Grand Total |
|---|---|---|---|
| 9/29/2017 | (137,895.82) | | (137,895.82) |
| 10/16/2017 | (278,886.03) | | (278,886.03) |
| 10/17/2017 | (1,636,139.69) | | (1,636,139.69) |
| 11/1/2017 | (182,709.10) | | (182,709.10) |
| 11/10/2017 | (48,004.95) | | (48,004.95) |
| 11/13/2017 | (50,262.76) | | (50,262.76) |
| 11/15/2017 | (840,510.29) | | (840,510.29) |
| 11/16/2017 | (215,642.77) | | (215,642.77) |
| 11/17/2017 | (772,519.46) | | (772,519.46) |
| 11/22/2017 | | (20,786.04) | (20,786.04) |
| 12/1/2017 | (220,743.23) | | (220,743.23) |
| 12/5/2017 | (8,774.75) | | (8,774.75) |
| 12/11/2017 | (372,805.08) | | (372,805.08) |
| 12/13/2017 | (883,573.33) | | (883,573.33) |
| 12/18/2017 | (812,848.25) | | (812,848.25) |
| 1/2/2018 | (273,156.75) | | (273,156.75) |
| 1/8/2018 | (371,051.94) | | (371,051.94) |
| 1/9/2018 | (40,841.77) | | (40,841.77) |
| 1/22/2018 | (1,902,221.38) | | (1,902,221.38) |
| 2/1/2018 | (274,080.55) | | (274,080.55) |
| 2/6/2018 | (365,749.52) | | (365,749.52) |
| 2/9/2018 | (10,978.88) | | (10,978.88) |
| 2/13/2018 | (11,786.76) | | (11,786.76) |
| 2/20/2018 | (1,913,512.49) | | (1,913,512.49) |
| 3/1/2018 | (251,178.15) | | (251,178.15) |
| 3/5/2018 | (309,009.08) | | (309,009.08) |
| 3/20/2018 | (966,515.28) | | (966,515.28) |
| 3/21/2018 | (1,011,286.77) | (5,125.51) | (1,016,412.28) |
| 3/29/2018 | (257,713.16) | | (257,713.16) |
| 4/6/2018 | (357,335.69) | | (357,335.69) |
| 4/10/2018 | (17,631.03) | | (17,631.03) |
| 4/11/2018 | (17,611.90) | | (17,611.90) |
| 4/20/2018 | (1,390,370.90) | | (1,390,370.90) |
| 4/25/2018 | (748,064.23) | | (748,064.23) |
| 4/30/2018 | (267,866.97) | | (267,866.97) |
| 5/1/2018 | (4,963.68) | | (4,963.68) |
| 5/4/2018 | (374,634.74) | | (374,634.74) |
| 5/10/2018 | (9,742.29) | | (9,742.29) |
| 5/14/2018 | (8,602.40) | | (8,602.40) |
| 5/24/2018 | (1,526,236.46) | | (1,526,236.46) |
| 5/25/2018 | (705,245.26) | | (705,245.26) |
| 5/31/2018 | (259,413.28) | | (259,413.28) |
| 6/4/2018 | (406,722.88) | | (406,722.88) |
| 6/12/2018 | (7,480.08) | | (7,480.08) |
| 6/18/2018 | (5,762.73) | | (5,762.73) |
| 6/25/2018 | (1,436,596.70) | | (1,436,596.70) |
| 6/29/2018 | (259,969.72) | | (259,969.72) |
| 7/2/2018 | (633,358.88) | | (633,358.88) |
| 7/6/2018 | (1,772.58) | | (1,772.58) |
| 7/10/2018 | (151,522.94) | | (151,522.94) |
| 7/13/2018 | (14,333.64) | | (14,333.64) |
| 7/26/2018 | (2,030,450.59) | | (2,030,450.59) |
| 8/1/2018 | (278,170.87) | | (278,170.87) |
| 8/7/2018 | (171,957.86) | | (171,957.86) |
| 8/13/2018 | (8,461.79) | | (8,461.79) |
| 8/15/2018 | (13,056.11) | | (13,056.11) |
| 8/22/2018 | (5,662.04) | | (5,662.04) |

3/10/2021; 9:52 AM; 2

| Date | Bank Account: VG_FR_x6458 | Bank Account: VG_FR_x9399 | Grand Total |
|---|---|---|---|
| 8/27/2018 | (2,068,873.77) | | (2,068,873.77) |
| 8/31/2018 | (295,794.43) | (3,052.72) | (298,847.15) |
| 9/7/2018 | (105,025.37) | | (105,025.37) |
| 9/11/2018 | (9,294.30) | | (9,294.30) |
| 9/17/2018 | (12,448.88) | | (12,448.88) |
| 9/21/2018 | (1,703,449.69) | | (1,703,449.69) |
| 9/24/2018 | (859,072.89) | | (859,072.89) |
| 9/28/2018 | (241,255.45) | | (241,255.45) |
| 10/3/2018 | (115,577.40) | | (115,577.40) |
| 10/10/2018 | (8,693.72) | | (8,693.72) |
| 10/12/2018 | (12,138.17) | | (12,138.17) |
| 10/22/2018 | (1,788,843.26) | | (1,788,843.26) |
| 10/23/2018 | (902,187.63) | | (902,187.63) |
| 10/31/2018 | (319,699.51) | | (319,699.51) |
| 11/2/2018 | (95,948.10) | | (95,948.10) |
| 11/21/2018 | (1,890,770.88) | | (1,890,770.88) |
| 11/26/2018 | (948,021.40) | | (948,021.40) |
| 11/30/2018 | (130,395.11) | | (130,395.11) |
| 12/7/2018 | (64,858.56) | | (64,858.56) |
| 12/14/2018 | (157,201.58) | | (157,201.58) |
| 12/24/2018 | (12,934.91) | | (12,934.91) |
| 1/8/2019 | (36,960.61) | | (36,960.61) |
| 1/11/2019 | (224,022.63) | | (224,022.63) |
| 2/1/2019 | | (17,729.37) | (17,729.37) |
| **Grand Total** | **$ (57,882,690.05)** | **$(1,481,628.56)** | **$(59,364,318.61)** |

| | | | |
|---|---|---|---|
| **1-Year Total:** | **$ (25,351,981.70)** | **$ (25,907.60)** | **$(25,377,889.30)** |
| **2-Year Total:** | **$ (48,847,388.50)** | **$(1,476,125.48)** | **$(50,323,513.98)** |
| **4-Year Total:** | **$ (57,882,690.05)** | **$(1,481,628.56)** | **$(59,364,318.61)** |

**Transfers to: Rodney Omanoff**
**& Transfers re: 1221 Ocean Ave. Property FBO Omanoff**

| Date | 1221 OCEAN AVENUE<br>Bank Account:<br>VG_FR_x6441 | RODNEY A OMANOFF<br>Bank Account:<br>VG_FR_x6441 | Grand Total |
|---|---|---|---|
| 05/04/16 | $ - | $ (3,810.35) | $ (3,810.35) |
| 05/24/16 | - | (2,358.94) | (2,358.94) |
| 06/28/16 | - | (1,060.34) | (1,060.34) |
| 09/06/16 | - | (11,230.24) | (11,230.24) |
| 02/14/17 | - | (3,560.02) | (3,560.02) |
| 03/02/17 | - | (1,703.08) | (1,703.08) |
| 04/18/17 | - | (3,245.95) | (3,245.95) |
| 04/25/17 | - | (1,444.11) | (1,444.11) |
| 06/15/17 | - | (1,600.61) | (1,600.61) |
| 06/26/17 | - | (1,463.22) | (1,463.22) |
| 07/05/17 | - | (2,880.12) | (2,880.12) |
| 08/29/17 | - | (4,583.33) | (4,583.33) |
| 09/22/17 | - | (1,229.81) | (1,229.81) |
| 10/20/17 | - | (7,760.33) | (7,760.33) |
| 10/25/17 | - | (1,054.42) | (1,054.42) |
| 12/06/17 | - | (1,135.03) | (1,135.03) |
| 12/15/17 | - | (1,387.55) | (1,387.55) |
| 12/29/17 | - | (7,102.27) | (7,102.27) |
| 01/02/18 | - | (2,216.41) | (2,216.41) |
| 01/23/18 | - | (1,497.35) | (1,497.35) |
| 02/06/18 | - | (1,179.06) | (1,179.06) |
| 02/15/18 | - | (5,413.65) | (5,413.65) |
| 02/21/18 | - | (4,510.33) | (4,510.33) |
| 02/27/18 | - | (1,315.14) | (1,315.14) |
| 03/22/18 | - | (4,388.26) | (4,388.26) |
| 04/19/18 | - | (3,545.78) | (3,545.78) |
| 04/25/18 | - | (3,749.73) | (3,749.73) |
| 05/10/18 | - | (2,484.12) | (2,484.12) |
| 05/29/18 | - | (3,378.72) | (3,378.72) |
| 07/05/18 | - | (2,340.03) | (2,340.03) |
| 07/17/18 | - | (7,359.33) | (7,359.33) |
| 07/30/18 | (28,832.00) | - | (28,832.00) |
| 07/31/18 | - | (3,396.96) | (3,396.96) |
| 08/27/18 | - | (4,620.34) | (4,620.34) |
| 09/06/18 | (3,955.95) | - | (3,955.95) |
| 09/14/18 | - | (2,434.59) | (2,434.59) |
| 09/20/18 | - | (6,550.60) | (6,550.60) |
| 10/09/18 | (11,124.00) | - | (11,124.00) |
| 10/24/18 | - | (2,216.05) | (2,216.05) |
| 11/01/18 | - | (4,515.67) | (4,515.67) |
| 11/05/18 | (13,905.00) | - | (13,905.00) |
| 12/05/18 | (13,905.00) | - | (13,905.00) |
| 12/14/18 | - | (1,088.86) | (1,088.86) |
| 12/27/18 | - | (1,020.03) | (1,020.03) |
| 01/04/19 | (13,812.30) | - | (13,812.30) |
| 01/11/19 | - | (5,734.34) | (5,734.34) |
| 02/06/19 | (13,905.00) | - | (13,905.00) |
| 03/06/19 | (13,905.00) | - | (13,905.00) |
| 03/27/19 | - | (2,561.51) | (2,561.51) |
| 04/04/19 | (13,905.00) | - | (13,905.00) |
| 04/17/19 | - | (1,128.85) | (1,128.85) |
| 05/06/19 | (13,905.00) | - | (13,905.00) |

**EXHIBIT 2**                    **48**

| Date | Bank Account: VG_FR_x6441 | Bank Account: VG_FR_x6441 | Grand Total |
|---|---|---|---|
| 05/28/19 | - | (1,640.96) | (1,640.96) |
| 06/06/19 | (13,480.00) | - | (13,480.00) |
| 06/11/19 | - | (1,150.78) | (1,150.78) |
| 07/03/19 | - | (2,162.34) | (2,162.34) |
| 07/10/19 | (8,708.32) | - | (8,708.32) |
| 07/15/19 | - | (1,256.06) | (1,256.06) |
| 07/20/19 | - | (1,032.85) | (1,032.85) |
| 09/11/19 | - | (4,600.60) | (4,600.60) |
| 01/07/20 | - | (2,946.17) | (2,946.17) |
| 06/29/20 | - | (2,955.62) | (2,955.62) |
| **Grand Total** | $ (163,342.57) | $ (155,000.81) | $ (318,343.38) |
| | | | |
| **90-Day Total:** | $ (41,622.30) | $ (7,843.23) | $ (49,465.53) |
| **1-Year Total:** | $ (113,344.25) | $ (58,823.41) | $ (172,167.66) |
| **2-Year Total:** | $ (113,344.25) | $ (109,842.10) | $ (223,186.35) |
| **4-Year Total:** | $ (113,344.25) | $ (133,565.07) | $ (246,909.32) |
| **Post-Petition Total:** | $ (49,998.32) | $ (21,435.74) | $ (71,434.06) |

**Transfers to: Omanoff America Telecom, LLC**

| Date | Bank Account: VG_FR_x6441 | Grand Total |
|---|---|---|
| 2/10/2016 | $ (84,000.00) | $ (84,000.00) |
| 3/22/2016 | (120,000.00) | (120,000.00) |
| 9/20/2016 | (60,000.00) | (60,000.00) |
| 11/4/2016 | (110,000.00) | (110,000.00) |
| 12/09/16 | (120,000.00) | (120,000.00) |
| 12/14/2016 | (160,000.00) | (160,000.00) |
| 1/13/2017 | (360,000.00) | (360,000.00) |
| 2/14/2017 | (400,000.00) | (400,000.00) |
| 3/21/2017 | (240,000.00) | (240,000.00) |
| 4/21/2017 | (320,000.00) | (320,000.00) |
| 06/01/17 | (360,000.00) | (360,000.00) |
| 6/19/2017 | (400,000.00) | (400,000.00) |
| 07/18/17 | (400,000.00) | (400,000.00) |
| 08/17/17 | (480,000.00) | (480,000.00) |
| 9/20/2017 | (440,000.00) | (440,000.00) |
| 10/18/2017 | (480,000.00) | (480,000.00) |
| 1/2/2018 | (560,000.00) | (560,000.00) |
| 1/3/2018 | (520,000.00) | (520,000.00) |
| 1/24/2018 | (640,000.00) | (640,000.00) |
| 2/21/2018 | (600,000.00) | (600,000.00) |
| 3/23/2018 | (640,000.00) | (640,000.00) |
| 04/25/18 | (760,000.00) | (760,000.00) |
| 5/29/2018 | (720,000.00) | (720,000.00) |
| 7/3/2018 | (800,000.00) | (800,000.00) |
| 7/31/2018 | (594,648.16) | (594,648.16) |
| 8/28/2018 | (563,333.34) | (563,333.34) |
| 9/25/2018 | (563,333.34) | (563,333.34) |
| 10/2/2018 | (17,500.00) | (17,500.00) |
| 10/25/2018 | (695,000.00) | (695,000.00) |
| 11/28/2018 | (815,000.00) | (815,000.00) |
| **Grand Total** | **$ (13,022,814.84)** | **$ (13,022,814.84)** |

| | | |
|---|---|---|
| **90-Day Total:** | $ - | $ - |
| **1-Year Total:** | $ (6,168,814.84) | $ (6,168,814.84) |
| **2-Year Total:** | $ (11,608,814.84) | $ (11,608,814.84) |
| **4-Year Total:** | $ (13,022,814.84) | $ (13,022,814.84) |

**EXHIBIT 3**

3/10/2021; 10:01 AM; 1

**Transfers to: Omanoff America, LLC**

| Date | Bank Account: VG_FR_x6441 | Grand Total |
|---|---|---|
| 2/10/2016 | $ (31,500.00) | $ (31,500.00) |
| 3/22/2016 | (30,300.00) | (30,300.00) |
| 3/23/2016 | (14,970.00) | (14,970.00) |
| 8/23/2016 | (1,500.00) | (1,500.00) |
| 9/26/2016 | (16,697.71) | (16,697.71) |
| 10/12/2016 | (3,186.72) | (3,186.72) |
| 10/17/2016 | (8,111.71) | (8,111.71) |
| 11/15/2016 | (31,025.68) | (31,025.68) |
| 12/6/2016 | (1,528.73) | (1,528.73) |
| 12/15/16 | (70,700.00) | (70,700.00) |
| 12/27/2016 | (3,845.71) | (3,845.71) |
| 1/24/2017 | (92,510.83) | (92,510.83) |
| 2/22/2017 | (100,100.00) | (100,100.00) |
| 3/22/2017 | (60,060.00) | (60,060.00) |
| 4/21/2017 | (80,080.00) | (80,080.00) |
| 06/01/17 | (90,090.00) | (90,090.00) |
| 6/19/2017 | (100,100.00) | (100,100.00) |
| 07/18/17 | (100,100.00) | (100,100.00) |
| 8/16/2017 | (120,120.00) | (120,120.00) |
| 9/20/2017 | (110,110.00) | (110,110.00) |
| 10/18/2017 | (120,120.00) | (120,120.00) |
| 1/2/2018 | (270,270.00) | (270,270.00) |
| 1/24/2018 | (160,160.00) | (160,160.00) |
| 2/21/2018 | (150,150.00) | (150,150.00) |
| 3/23/2018 | (160,160.00) | (160,160.00) |
| 04/25/18 | (190,190.00) | (190,190.00) |
| 5/29/2018 | (180,180.00) | (180,180.00) |
| 7/3/2018 | (200,200.00) | (200,200.00) |
| 7/31/2018 | (170,170.00) | (170,170.00) |
| 8/28/2018 | (160,160.00) | (160,160.00) |
| 9/25/2018 | (170,170.00) | (170,170.00) |
| 10/25/2018 | (200,200.00) | (200,200.00) |
| 11/28/2018 | (230,230.00) | (230,230.00) |
| **Grand Total** | **$ (3,428,997.09)** | **$ (3,428,997.09)** |

| | | |
|---|---|---|
| **90-Day Total:** | **$ -** | **$ -** |
| **1-Year Total:** | **$ (1,661,660.00)** | **$ (1,661,660.00)** |
| **2-Year Total:** | **$ (3,023,020.00)** | **$ (3,023,020.00)** |
| **4-Year Total:** | **$ (3,428,997.09)** | **$ (3,428,997.09)** |

**EXHIBIT 4**

3/10/2021; 10:02 AM; 1

**Transfers to: Contacts & Contracts, Inc.**

| Date | Bank Account: VG_FR_x6441 | Grand Total |
|---|---|---|
| 9/20/2016 | $ (7,485.00) | $ (7,485.00) |
| 11/4/2016 | (13,722.50) | (13,722.50) |
| 12/09/16 | (14,970.00) | (14,970.00) |
| 12/15/16 | (19,960.00) | (19,960.00) |
| 1/13/2017 | (44,910.00) | (44,910.00) |
| 2/15/2017 | (49,900.00) | (49,900.00) |
| 3/21/2017 | (29,940.00) | (29,940.00) |
| 4/21/2017 | (39,920.00) | (39,920.00) |
| 06/01/17 | (44,910.00) | (44,910.00) |
| 6/19/2017 | (49,900.00) | (49,900.00) |
| 07/18/17 | (49,900.00) | (49,900.00) |
| 8/16/2017 | (59,880.00) | (59,880.00) |
| 9/20/2017 | (54,890.00) | (54,890.00) |
| 10/18/2017 | (59,880.00) | (59,880.00) |
| 1/2/2018 | (134,730.00) | (134,730.00) |
| 1/24/2018 | (79,840.00) | (79,840.00) |
| 2/21/2018 | (74,850.00) | (74,850.00) |
| 3/23/2018 | (79,840.00) | (79,840.00) |
| 04/25/18 | (94,810.00) | (94,810.00) |
| 5/29/2018 | (89,820.00) | (89,820.00) |
| 7/3/2018 | (99,800.00) | (99,800.00) |
| 7/31/2018 | (84,830.00) | (84,830.00) |
| 8/28/2018 | (79,840.00) | (79,840.00) |
| 9/14/2018 | (30,000.00) | (30,000.00) |
| 9/25/2018 | (84,830.00) | (84,830.00) |
| 10/25/2018 | (99,800.00) | (99,800.00) |
| 11/28/2018 | (114,770.00) | (114,770.00) |
| **Grand Total** | **$ (1,687,927.50)** | **$ (1,687,927.50)** |

| | | |
|---|---|---|
| **90-Day Total:** | **$ -** | **$ -** |
| **1-Year Total:** | **$ (858,340.00)** | **$ (858,340.00)** |
| **2-Year Total:** | **$ (1,536,980.00)** | **$ (1,536,980.00)** |
| **4-Year Total:** | **$ (1,687,927.50)** | **$ (1,687,927.50)** |

**EXHIBIT 5**

3/10/2021; 10:01 AM; 1

**Transfers to: Owl America**

| | Bank Account: | |
| Date | DD_BoA_x5992 | Grand Total |
|---|---|---|
| 02/22/17 | $ (19,920.00) | $ (19,920.00) |
| 04/05/17 | (30,880.00) | (30,880.00) |
| 07/20/17 | (26,770.00) | (26,770.00) |
| 08/02/17 | (16,370.00) | (16,370.00) |
| 09/05/17 | (14,660.00) | (14,660.00) |
| 10/02/17 | (13,960.00) | (13,960.00) |
| 11/01/17 | (15,870.00) | (15,870.00) |
| 11/03/17 | (29,940.00) | (29,940.00) |
| 12/05/17 | (13,810.00) | (13,810.00) |
| 01/04/18 | (44,300.00) | (44,300.00) |
| 02/01/18 | (14,120.00) | (14,120.00) |
| 02/15/18 | (49,920.00) | (49,920.00) |
| 03/05/18 | (12,845.00) | (12,845.00) |
| 03/09/18 | (64,900.00) | (64,900.00) |
| 04/02/18 | (14,300.00) | (14,300.00) |
| 04/26/18 | (66,400.00) | (66,400.00) |
| 05/01/18 | (81,860.00) | (81,860.00) |
| 06/04/18 | (81,204.31) | (81,204.31) |
| 07/05/18 | (79,100.00) | (79,100.00) |
| 08/01/18 | (81,050.59) | (81,050.59) |
| **Grand Total** | **$ (772,179.90)** | **$ (772,179.90)** |

| | | | |
|---|---|---|---|
| **90-Day Total:** | **$** | **-** | **$** | **-** |
| **1-Year Total:** | **$** | **(403,914.90)** | **$ (403,914.90)** |
| **2-Year Total:** | **$** | **(752,259.90)** | **$ (752,259.90)** |
| **4-Year Total:** | **$** | **(772,179.90)** | **$ (772,179.90)** |

**EXHIBIT 6**                    **53**        3/10/2021; 9:56 AM; 1

**Transfers to: Richard Omanoff**

| Date | Bank Account: VG_FR_x6441 | Grand Total |
|---|---|---|
| 10/23/2017 | $ (27,500.00) | $ (27,500.00) |
| **Grand Total** | **$ (27,500.00)** | **$ (27,500.00)** |

| | | |
|---|---|---|
| **90-Day Total:** | $ - | $ - |
| **1-Year Total:** | $ - | $ - |
| **2-Year Total:** | $ (27,500.00) | $ (27,500.00) |
| **4-Year Total:** | $ (27,500.00) | $ (27,500.00) |

**EXHIBIT 7**                **54**        3/10/2021; 10:00 AM; 1

**Transfers to: John O. Philipson**

| Date | Bank Account: VG_FR_x6441 | Grand Total |
|---|---|---|
| 11/9/2016 | $ (2,140.36) | $ (2,140.36) |
| 6/22/2017 | (1,037.86) | (1,037.86) |
| 7/19/2017 | (3,000.00) | (3,000.00) |
| 10/30/2017 | (1,924.92) | (1,924.92) |
| 7/3/2018 | (1,200.92) | (1,200.92) |
| 8/17/2018 | (1,042.78) | (1,042.78) |
| 12/24/2018 | (1,650.00) | (1,650.00) |
| **Grand Total** | **$ (11,996.84)** | **$ (11,996.84)** |

| | | |
|---|---|---|
| **90-Day Total:** | **$ (1,650.00)** | **$ (1,650.00)** |
| **1-Year Total:** | **$ (3,893.70)** | **$ (3,893.70)** |
| **2-Year Total:** | **$ (9,856.48)** | **$ (9,856.48)** |
| **4-Year Total:** | **$ (11,996.84)** | **$ (11,996.84)** |

**EXHIBIT 8**

55

3/10/2021; 9:59 AM; 1

**Transfers to: Philipson International LLC**

| Date | Bank Account: VG_FR_x6441 | Grand Total |
|---|---|---|
| 2/16/2016 | $ (10,500.00) | $ (10,500.00) |
| 4/5/2016 | (15,000.00) | (15,000.00) |
| 9/27/2016 | (7,500.00) | (7,500.00) |
| 11/4/2016 | (13,750.00) | (13,750.00) |
| 12/12/2016 | (15,000.00) | (15,000.00) |
| 12/16/2016 | (20,000.00) | (20,000.00) |
| 12/29/2016 | (3,125.24) | (3,125.24) |
| 1/13/2017 | (45,000.00) | (45,000.00) |
| 2/15/2017 | (50,000.00) | (50,000.00) |
| 3/28/2017 | (30,000.00) | (30,000.00) |
| 4/21/2017 | (40,000.00) | (40,000.00) |
| 6/9/2017 | (45,000.00) | (45,000.00) |
| 6/19/2017 | (50,000.00) | (50,000.00) |
| 7/19/2017 | (50,000.00) | (50,000.00) |
| 8/17/2017 | (60,000.00) | (60,000.00) |
| 9/21/2017 | (55,000.00) | (55,000.00) |
| 10/19/2017 | (60,000.00) | (60,000.00) |
| 1/4/2018 | (135,000.00) | (135,000.00) |
| 1/25/2018 | (80,000.00) | (80,000.00) |
| 2/23/2018 | (75,000.00) | (75,000.00) |
| 3/23/2018 | (80,000.00) | (80,000.00) |
| 4/26/2018 | (95,000.00) | (95,000.00) |
| 5/30/2018 | (90,000.00) | (90,000.00) |
| 7/3/2018 | (100,000.00) | (100,000.00) |
| 8/15/2018 | (85,000.00) | (85,000.00) |
| 8/29/2018 | (80,000.00) | (80,000.00) |
| 10/2/2018 | (32,500.00) | (32,500.00) |
| 10/26/2018 | (82,500.00) | (82,500.00) |
| 11/29/2018 | (97,500.00) | (97,500.00) |
| **Grand Total** | **$ (1,602,375.24)** | **$ (1,602,375.24)** |

| | | |
|---|---|---|
| **90-Day Total:** | **$ -** | **$ -** |
| **1-Year Total:** | **$ (742,500.00)** | **$ (742,500.00)** |
| **2-Year Total:** | **$ (1,422,500.00)** | **$ (1,422,500.00)** |
| **4-Year Total:** | **$ (1,602,375.24)** | **$ (1,602,375.24)** |

**EXHIBIT 9**                    **56**          3/10/2021; 9:58 AM; 1

**Transfers to: Adela Phillipson**

| Date | Bank Account: VG_FR_x6441 | Grand Total |
|---|---|---|
| 9/21/2017 | $ (4,000.00) | $ (4,000.00) |
| 10/18/2017 | (4,000.00) | (4,000.00) |
| 12/15/2017 | (4,000.00) | (4,000.00) |
| 12/19/2017 | (4,000.00) | (4,000.00) |
| 1/24/2018 | (4,000.00) | (4,000.00) |
| 2/23/2018 | (4,000.00) | (4,000.00) |
| 3/22/2018 | (4,000.00) | (4,000.00) |
| 4/26/2018 | (4,000.00) | (4,000.00) |
| 5/29/2018 | (4,000.00) | (4,000.00) |
| 7/3/2018 | (4,000.00) | (4,000.00) |
| 8/17/2018 | (4,000.00) | (4,000.00) |
| 8/28/2018 | (4,000.00) | (4,000.00) |
| 10/1/2018 | (4,000.00) | (4,000.00) |
| 10/26/2018 | (4,000.00) | (4,000.00) |
| 11/29/2018 | (4,000.00) | (4,000.00) |
| 1/15/2019 | (4,000.00) | (4,000.00) |
| 2/2/2019 | (4,000.00) | (4,000.00) |
| 2/27/2019 | (4,000.00) | (4,000.00) |
| 4/2/2019 | (4,000.00) | (4,000.00) |
| 5/6/2019 | (4,000.00) | (4,000.00) |
| 6/3/2019 | (4,000.00) | (4,000.00) |
| 7/5/2019 | (4,000.00) | (4,000.00) |
| 8/22/2019 | (4,000.00) | (4,000.00) |
| 9/3/2019 | (4,000.00) | (4,000.00) |
| 10/3/2019 | (4,000.00) | (4,000.00) |
| 11/12/2019 | (4,000.00) | (4,000.00) |
| 12/11/2019 | (4,000.00) | (4,000.00) |
| 1/23/2020 | (4,000.00) | (4,000.00) |
| 2/13/2020 | (4,000.00) | (4,000.00) |
| 3/10/2020 | (4,000.00) | (4,000.00) |
| 4/8/2020 | (4,340.71) | (4,340.71) |
| 5/21/2020 | (4,000.00) | (4,000.00) |
| **Grand Total** | **$ (128,340.71)** | **$ (128,340.71)** |

| | | |
|---|---|---|
| 90-Day Total: | $ (12,000.00) | $ (12,000.00) |
| 1-Year Total: | $ (48,000.00) | $ (48,000.00) |
| 2-Year Total: | $ (72,000.00) | $ (72,000.00) |
| 4-Year Total: | $ (72,000.00) | $ (72,000.00) |
| Post-Petition Total: | $ (56,340.71) | $ (56,340.71) |

**EXHIBIT 10**    **57**    3/10/2021; 9:59 AM; 1

Transfers to: Mark Proto

| Date | Bank Account: DD_BoA_x5992 | Bank Account: DD_Citi_x2588 | Grand Total |
|---|---|---|---|
| 2/26/2016 | $ (100,000.00) | $ - | $ (100,000.00) |
| 3/29/2016 | (299,970.00) | - | (299,970.00) |
| 4/22/2016 | (30,000.00) | - | (30,000.00) |
| 4/25/2016 | (30,000.00) | - | (30,000.00) |
| 5/17/2016 | (30,000.00) | - | (30,000.00) |
| 6/2/2016 | (30,000.00) | - | (30,000.00) |
| 6/20/2016 | (60,000.00) | - | (60,000.00) |
| 6/28/2016 | (100,000.00) | - | (100,000.00) |
| 7/8/2016 | (60,000.00) | - | (60,000.00) |
| 7/29/2016 | (500,000.00) | - | (500,000.00) |
| 8/1/2016 | (600,000.00) | - | (600,000.00) |
| 8/3/2016 | (400,000.00) | - | (400,000.00) |
| 12/22/2016 | (499,970.00) | - | (499,970.00) |
| 1/31/2017 | (69,970.00) | - | (69,970.00) |
| 4/13/2017 | (129,970.00) | - | (129,970.00) |
| 7/10/2017 | (100,000.00) | - | (100,000.00) |
| 7/31/2017 | (199,970.00) | - | (199,970.00) |
| 10/6/2017 | (74,970.00) | - | (74,970.00) |
| 11/8/2017 | (88,970.00) | - | (88,970.00) |
| 12/11/2017 | (30,000.00) | - | (30,000.00) |
| 12/26/2017 | (60,000.00) | - | (60,000.00) |
| 1/5/2018 | (50,000.00) | - | (50,000.00) |
| 1/25/2018 | (50,000.00) | - | (50,000.00) |
| 2/15/2018 | (100,000.00) | - | (100,000.00) |
| 3/6/2018 | (30,000.00) | - | (30,000.00) |
| 4/5/2018 | (25,000.00) | - | (25,000.00) |
| 4/16/2018 | (60,000.00) | - | (60,000.00) |
| 4/30/2018 | (50,000.00) | - | (50,000.00) |
| 6/28/2018 | (30,000.00) | - | (30,000.00) |
| 4/8/2019 | - | (32,000.00) | (32,000.00) |
| 4/19/2019 | - | (15,000.00) | (15,000.00) |
| 8/7/2019 | - | (20,000.00) | (20,000.00) |
| 8/28/2019 | - | (200,000.00) | (200,000.00) |
| 9/16/2019 | - | (10,000.00) | (10,000.00) |
| 9/15/2020 | - | (399,970.00) | (399,970.00) |
| Grand Total | $ (3,888,790.00) | $ (676,970.00) | $ (4,565,760.00) |

| | | | |
|---|---|---|---|
| 90-Day Total: | $ - | $ - | $ - |
| 1-Year Total: | $ (165,000.00) | $ - | $ (165,000.00) |
| 2-Year Total: | $ (1,078,880.00) | $ - | $ (1,078,880.00) |
| 4-Year Total: | $ (3,888,790.00) | $ - | $ (3,888,790.00) |
| Post-Petition Total: | $ - | $ (676,970.00) | $ (676,970.00) |

**EXHIBIT 11**

**58**

**Transfers to: MudMonth LLC**

| Date | Bank Account: DD_BoA_x5992 | Bank Account: VG_FR_x6441 | Grand Total |
|---|---|---|---|
| 2/2/2016 | $ (1,500,000.00) | $ - | $ (1,500,000.00) |
| 2/18/2016 | - | (84,000.00) | (84,000.00) |
| 6/7/2016 | - | (120,000.00) | (120,000.00) |
| 10/25/2016 | - | (60,000.00) | (60,000.00) |
| 1/9/2017 | - | (390,000.00) | (390,000.00) |
| 1/30/2017 | - | (360,000.00) | (360,000.00) |
| 2/24/2017 | - | (400,000.00) | (400,000.00) |
| 5/11/2017 | - | (240,000.00) | (240,000.00) |
| 6/12/2017 | - | (320,000.00) | (320,000.00) |
| 7/5/2017 | - | (360,000.00) | (360,000.00) |
| 8/10/2017 | - | (400,000.00) | (400,000.00) |
| 8/23/2017 | - | (400,000.00) | (400,000.00) |
| 9/27/2017 | - | (480,000.00) | (480,000.00) |
| 11/16/2017 | - | (440,000.00) | (440,000.00) |
| 1/3/2018 | - | (1,000,000.00) | (1,000,000.00) |
| 2/7/2018 | - | (560,000.00) | (560,000.00) |
| 3/21/2018 | - | (640,000.00) | (640,000.00) |
| 4/25/2018 | - | (600,000.00) | (600,000.00) |
| 5/31/2018 | - | (640,000.00) | (640,000.00) |
| 7/6/2018 | - | (760,000.00) | (760,000.00) |
| 8/10/2018 | - | (720,000.00) | (720,000.00) |
| 10/10/2018 | - | (509,296.32) | (509,296.32) |
| 10/15/2018 | - | (800,000.00) | (800,000.00) |
| 10/26/2018 | - | (928,333.36) | (928,333.36) |
| **Grand Total** | **$ (1,500,000.00)** | **$ (11,211,629.68)** | **$ (12,711,629.68)** |

| | | | |
|---|---|---|---|
| **90-Day Total:** | $ - | $ - | $ - |
| **1-Year Total:** | $ - | $ (5,597,629.68) | $ (5,597,629.68) |
| **2-Year Total:** | $ - | $ (9,797,629.68) | $ (9,797,629.68) |
| **4-Year Total:** | $ (1,500,000.00) | $ (11,211,629.68) | $ (12,711,629.68) |

**EXHIBIT 12**          **59**          3/10/2021; 9:57 AM; 1

**Transfers to: Arco Telecom**

| Date | Bank Account: DD_BoA_x5992 | Grand Total |
|---|---|---|
| 11/18/2016 | $ (749,970.00) | $ (749,970.00) |
| 11/22/2016 | (2,199,910.00) | (2,199,910.00) |
| 11/23/2016 | (799,970.00) | (799,970.00) |
| 11/29/2016 | (1,649,940.00) | (1,649,940.00) |
| 11/30/2016 | (549,970.00) | (549,970.00) |
| 12/2/2016 | (849,970.00) | (849,970.00) |
| 12/28/2016 | (958,970.00) | (958,970.00) |
| 1/10/2017 | (750,000.00) | (750,000.00) |
| 3/15/2017 | (949,970.00) | (949,970.00) |
| 9/26/2017 | (1,065,000.00) | (1,065,000.00) |
| 11/8/2017 | (499,970.00) | (499,970.00) |
| 11/9/2017 | (749,970.00) | (749,970.00) |
| 11/10/2017 | (1,299,970.00) | (1,299,970.00) |
| 11/13/2017 | (699,970.00) | (699,970.00) |
| 11/15/2017 | (749,970.00) | (749,970.00) |
| 11/22/2017 | (750,000.00) | (750,000.00) |
| 12/27/2017 | (725,000.00) | (725,000.00) |
| 2/7/2018 | (100,000.00) | (100,000.00) |
| 2/12/2018 | (474,970.00) | (474,970.00) |
| 2/13/2018 | (799,970.00) | (799,970.00) |
| 2/14/2018 | (700,000.00) | (700,000.00) |
| 2/20/2018 | (874,970.00) | (874,970.00) |
| 4/2/2018 | (129,970.00) | (129,970.00) |
| 5/4/2018 | (40,000.00) | (40,000.00) |
| 5/18/2018 | (112,000.00) | (112,000.00) |
| 6/6/2018 | (42,970.00) | (42,970.00) |
| 6/18/2018 | (100,000.00) | (100,000.00) |
| 6/26/2018 | (300,000.00) | (300,000.00) |
| 7/19/2018 | (300,000.00) | (300,000.00) |
| 8/6/2018 | (20,000.00) | (20,000.00) |
| **Grand Total** | **$ (19,993,370.00)** | **$ (19,993,370.00)** |

| | | |
|---|---|---|
| **90-Day Total:** | $ - | $ - |
| **1-Year Total:** | $ (1,044,940.00) | $ (1,044,940.00) |
| **2-Year Total:** | $ (11,484,670.00) | $ (11,484,670.00) |
| **4-Year Total:** | $ (19,993,370.00) | $ (19,993,370.00) |

**EXHIBIT 13**

3/10/2021; 9:57 AM; 1

**Transfers to: Zoom Telecom**

| Date | Bank Account: DD_BoA_x5992 | Bank Account: DD_FR_x2496 | Bank Account: VG_FR_x6441 | Grand Total |
|---|---|---|---|---|
| 02/04/16 | $ (5,000.00) | $ - | $ - | $ (5,000.00) |
| 02/11/16 | (5,000.00) | - | - | (5,000.00) |
| 02/18/16 | (214,970.00) | - | - | (214,970.00) |
| 02/25/16 | (5,000.00) | - | - | (5,000.00) |
| 03/03/16 | (5,000.00) | - | - | (5,000.00) |
| 03/10/16 | (5,000.00) | - | - | (5,000.00) |
| 03/17/16 | (5,000.00) | - | - | (5,000.00) |
| 03/24/16 | (5,000.00) | - | - | (5,000.00) |
| 03/31/16 | (5,000.00) | - | - | (5,000.00) |
| 04/07/16 | (5,000.00) | - | - | (5,000.00) |
| 04/14/16 | (5,000.00) | - | - | (5,000.00) |
| 04/21/16 | (5,000.00) | - | - | (5,000.00) |
| 04/28/16 | (5,000.00) | - | - | (5,000.00) |
| 05/03/16 | - | - | (1,000.00) | (1,000.00) |
| 05/05/16 | (5,000.00) | - | - | (5,000.00) |
| 05/12/16 | (5,000.00) | - | - | (5,000.00) |
| 05/19/16 | (5,000.00) | - | - | (5,000.00) |
| 05/26/16 | (5,000.00) | - | - | (5,000.00) |
| 06/02/16 | (60,000.00) | - | - | (60,000.00) |
| 06/03/16 | (5,000.00) | - | - | (5,000.00) |
| 06/09/16 | (5,000.00) | - | - | (5,000.00) |
| 06/16/16 | (5,000.00) | - | - | (5,000.00) |
| 06/23/16 | (5,000.00) | - | - | (5,000.00) |
| 06/30/16 | (5,000.00) | - | - | (5,000.00) |
| 07/07/16 | (5,000.00) | - | - | (5,000.00) |
| 07/14/16 | (5,000.00) | - | - | (5,000.00) |
| 07/21/16 | (5,000.00) | - | - | (5,000.00) |
| 07/26/16 | (250,000.00) | - | - | (250,000.00) |
| 07/28/16 | (5,000.00) | - | - | (5,000.00) |
| 08/04/16 | (5,000.00) | - | - | (5,000.00) |
| 08/11/16 | (5,000.00) | - | - | (5,000.00) |
| 08/18/16 | (5,000.00) | - | - | (5,000.00) |
| 08/25/16 | (5,000.00) | - | - | (5,000.00) |
| 09/01/16 | (5,000.00) | - | - | (5,000.00) |
| 09/06/16 | - | - | (1,000.00) | (1,000.00) |
| 09/08/16 | (5,000.00) | - | - | (5,000.00) |
| 09/13/16 | (99,970.00) | - | - | (99,970.00) |
| 09/15/16 | (5,000.00) | - | - | (5,000.00) |
| 09/21/16 | (100,000.00) | - | - | (100,000.00) |
| 09/22/16 | (5,000.00) | - | - | (5,000.00) |
| 09/27/16 | (60,000.00) | - | - | (60,000.00) |
| 09/29/16 | (5,000.00) | - | - | (5,000.00) |
| 10/05/16 | - | - | (9,500.00) | (9,500.00) |
| 10/06/16 | (5,000.00) | - | - | (5,000.00) |
| 10/13/16 | (5,000.00) | - | - | (5,000.00) |
| 10/14/16 | (72,500.00) | - | - | (72,500.00) |
| 10/20/16 | (4,970.00) | - | - | (4,970.00) |
| 10/27/16 | (5,000.00) | - | - | (5,000.00) |
| 10/28/16 | (20,000.00) | - | - | (20,000.00) |
| 11/02/16 | (20,000.00) | - | - | (20,000.00) |
| 11/03/16 | (5,000.00) | - | - | (5,000.00) |
| 11/07/16 | (99,970.00) | - | - | (99,970.00) |
| 11/10/16 | (5,000.00) | - | - | (5,000.00) |

**EXHIBIT 14**

3/10/2021; 10:00 AM; 1

| Date | Bank Account: DD_BoA_x5992 | Bank Account: DD_FR_x2496 | Bank Account: VG_FR_x6441 | Grand Total |
|---|---|---|---|---|
| 11/14/16 | (55,000.00) | - | - | (55,000.00) |
| 11/17/16 | (5,000.00) | - | - | (5,000.00) |
| 11/23/16 | (4,970.00) | - | - | (4,970.00) |
| 12/01/16 | (5,000.00) | - | - | (5,000.00) |
| 12/08/16 | (14,940.00) | - | - | (14,940.00) |
| 12/09/16 | (59,970.00) | - | - | (59,970.00) |
| 12/15/16 | (4,970.00) | - | - | (4,970.00) |
| 12/19/16 | (219,970.00) | - | (4,500.00) | (224,470.00) |
| 12/20/16 | - | - | (8,000.00) | (8,000.00) |
| 12/22/16 | (5,000.00) | - | - | (5,000.00) |
| 12/29/16 | (4,970.00) | - | - | (4,970.00) |
| 01/05/17 | (5,000.00) | - | - | (5,000.00) |
| 01/12/17 | (4,970.00) | - | - | (4,970.00) |
| 01/17/17 | (129,970.00) | - | - | (129,970.00) |
| 01/19/17 | (5,000.00) | - | - | (5,000.00) |
| 01/23/17 | (5,000.00) | - | - | (5,000.00) |
| 02/02/17 | (5,000.00) | - | - | (5,000.00) |
| 02/07/17 | (99,970.00) | - | - | (99,970.00) |
| 02/08/17 | - | - | (8,000.00) | (8,000.00) |
| 02/09/17 | (5,000.00) | - | - | (5,000.00) |
| 02/16/17 | (5,000.00) | - | - | (5,000.00) |
| 02/23/17 | (5,000.00) | - | - | (5,000.00) |
| 02/24/17 | (49,970.00) | - | - | (49,970.00) |
| 03/02/17 | (5,000.00) | - | - | (5,000.00) |
| 03/09/17 | (5,000.00) | - | - | (5,000.00) |
| 03/15/17 | (49,970.00) | - | - | (49,970.00) |
| 03/16/17 | (4,970.00) | - | - | (4,970.00) |
| 03/23/17 | (4,970.00) | - | - | (4,970.00) |
| 03/27/17 | (49,970.00) | - | - | (49,970.00) |
| 03/29/17 | - | - | (3,000.00) | (3,000.00) |
| 03/30/17 | (4,970.00) | - | - | (4,970.00) |
| 04/04/17 | (54,970.00) | - | - | (54,970.00) |
| 04/06/17 | (4,970.00) | - | - | (4,970.00) |
| 04/07/17 | (99,970.00) | - | - | (99,970.00) |
| 04/13/17 | (4,970.00) | - | - | (4,970.00) |
| 04/20/17 | (4,970.00) | - | - | (4,970.00) |
| 04/27/17 | (4,970.00) | - | - | (4,970.00) |
| 05/02/17 | - | - | (2,500.00) | (2,500.00) |
| 05/03/17 | (505,000.00) | - | - | (505,000.00) |
| 05/11/17 | (4,970.00) | - | - | (4,970.00) |
| 05/18/17 | (5,000.00) | - | - | (5,000.00) |
| 05/25/17 | (5,000.00) | - | - | (5,000.00) |
| 06/01/17 | (4,970.00) | - | - | (4,970.00) |
| 06/08/17 | (5,000.00) | - | - | (5,000.00) |
| 06/12/17 | - | - | (2,000.00) | (2,000.00) |
| 06/15/17 | (5,000.00) | - | - | (5,000.00) |
| 06/22/17 | (5,000.00) | - | - | (5,000.00) |
| 06/29/17 | (5,000.00) | - | - | (5,000.00) |
| 07/13/17 | (4,970.00) | - | - | (4,970.00) |
| 07/18/17 | (99,970.00) | - | - | (99,970.00) |
| 07/20/17 | (5,000.00) | - | - | (5,000.00) |
| 07/27/17 | (5,000.00) | - | - | (5,000.00) |
| 08/03/17 | (205,000.00) | - | - | (205,000.00) |
| 08/07/17 | - | - | (10,000.00) | (10,000.00) |
| 08/17/17 | (5,000.00) | - | - | (5,000.00) |
| 08/24/17 | (5,000.00) | - | - | (5,000.00) |

| Date | Bank Account: DD_BoA_x5992 | Bank Account: DD_FR_x2496 | Bank Account: VG_FR_x6441 | Grand Total |
|---|---|---|---|---|
| 08/31/17 | (5,000.00) | - | - | (5,000.00) |
| 09/07/17 | (5,000.00) | - | - | (5,000.00) |
| 09/14/17 | (4,970.00) | - | - | (4,970.00) |
| 09/21/17 | (5,000.00) | - | - | (5,000.00) |
| 09/27/17 | (200,000.00) | - | - | (200,000.00) |
| 09/28/17 | (5,000.00) | - | - | (5,000.00) |
| 10/05/17 | (5,000.00) | - | - | (5,000.00) |
| 10/12/17 | (5,000.00) | - | - | (5,000.00) |
| 10/19/17 | (5,000.00) | - | - | (5,000.00) |
| 10/26/17 | (5,000.00) | - | - | (5,000.00) |
| 10/31/17 | - | - | (7,000.00) | (7,000.00) |
| 11/02/17 | (4,970.00) | - | - | (4,970.00) |
| 11/09/17 | (5,000.00) | - | - | (5,000.00) |
| 11/16/17 | (5,000.00) | - | - | (5,000.00) |
| 11/20/17 | - | - | (3,000.00) | (3,000.00) |
| 11/21/17 | - | - | (3,000.00) | (3,000.00) |
| 11/22/17 | (5,000.00) | - | - | (5,000.00) |
| 11/30/17 | (4,970.00) | - | - | (4,970.00) |
| 12/07/17 | (4,970.00) | - | - | (4,970.00) |
| 12/14/17 | (5,000.00) | - | - | (5,000.00) |
| 12/20/17 | (50,000.00) | - | - | (50,000.00) |
| 12/21/17 | (5,000.00) | - | - | (5,000.00) |
| 12/28/17 | (4,970.00) | - | - | (4,970.00) |
| 01/04/18 | (540,000.00) | - | - | (540,000.00) |
| 01/11/18 | (5,000.00) | - | - | (5,000.00) |
| 01/18/18 | (4,970.00) | - | - | (4,970.00) |
| 01/25/18 | (5,000.00) | - | - | (5,000.00) |
| 01/26/18 | - | - | (6,000.00) | (6,000.00) |
| 02/01/18 | (5,000.00) | - | - | (5,000.00) |
| 02/02/18 | (59,970.00) | - | - | (59,970.00) |
| 02/08/18 | (4,970.00) | - | - | (4,970.00) |
| 02/15/18 | (4,970.00) | - | - | (4,970.00) |
| 02/20/18 | - | - | (3,500.00) | (3,500.00) |
| 02/22/18 | (4,970.00) | - | - | (4,970.00) |
| 03/01/18 | (4,970.00) | - | - | (4,970.00) |
| 03/08/18 | (4,970.00) | - | - | (4,970.00) |
| 03/15/18 | (4,970.00) | - | - | (4,970.00) |
| 03/19/18 | (99,970.00) | - | - | (99,970.00) |
| 03/22/18 | (5,000.00) | - | - | (5,000.00) |
| 04/06/18 | (5,000.00) | - | - | (5,000.00) |
| 04/10/18 | (100,000.00) | - | - | (100,000.00) |
| 04/12/18 | (4,970.00) | - | - | (4,970.00) |
| 04/16/18 | - | - | (3,000.00) | (3,000.00) |
| 04/19/18 | (4,970.00) | - | - | (4,970.00) |
| 04/25/18 | (70,000.00) | - | - | (70,000.00) |
| 04/26/18 | (5,000.00) | - | - | (5,000.00) |
| 05/03/18 | (4,970.00) | - | - | (4,970.00) |
| 05/07/18 | (50,000.00) | - | - | (50,000.00) |
| 05/10/18 | (4,970.00) | - | - | (4,970.00) |
| 05/15/18 | - | (112,500.00) | - | (112,500.00) |
| 05/17/18 | (5,000.00) | - | - | (5,000.00) |
| 05/24/18 | (5,000.00) | - | - | (5,000.00) |
| 05/31/18 | (5,000.00) | - | - | (5,000.00) |
| 06/07/18 | (5,000.00) | - | - | (5,000.00) |
| 06/14/18 | (4,970.00) | - | - | (4,970.00) |
| 06/21/18 | (4,970.00) | - | - | (4,970.00) |

3/10/2021; 10:00 AM; 3

| Date | Bank Account: DD_BoA_x5992 | Bank Account: DD_FR_x2496 | Bank Account: VG_FR_x6441 | Grand Total |
|---|---|---|---|---|
| 06/25/18 | (150,000.00) | - | - | (150,000.00) |
| 06/28/18 | (4,970.00) | - | - | (4,970.00) |
| 07/05/18 | (4,970.00) | - | - | (4,970.00) |
| 07/10/18 | - | - | (9,500.00) | (9,500.00) |
| 07/12/18 | (4,970.00) | - | - | (4,970.00) |
| 07/19/18 | (5,000.00) | - | - | (5,000.00) |
| 07/20/18 | (300,000.00) | - | - | (300,000.00) |
| 07/26/18 | (4,970.00) | - | - | (4,970.00) |
| 07/30/18 | (50,000.00) | - | - | (50,000.00) |
| 08/02/18 | (4,970.00) | - | - | (4,970.00) |
| 08/10/18 | (4,970.00) | - | - | (4,970.00) |
| 08/16/18 | (4,970.00) | - | - | (4,970.00) |
| 08/22/18 | (100,000.00) | - | - | (100,000.00) |
| 08/23/18 | (4,970.00) | - | - | (4,970.00) |
| 08/30/18 | (5,000.00) | - | - | (5,000.00) |
| 09/05/18 | - | - | (21,500.00) | (21,500.00) |
| 11/13/18 | - | - | (8,500.00) | (8,500.00) |
| **Grand Total** | **$ (5,095,760.00)** | **$ (112,500.00)** | **$ (114,500.00)** | **$ (5,322,760.00)** |

| | | | | |
|---|---|---|---|---|
| **1-Year Total:** | **$ (1,039,520.00)** | **$ (112,500.00)** | **$ (42,500.00)** | **$ (1,194,520.00)** |
| **2-Year Total:** | **$ (3,188,710.00)** | **$ (112,500.00)** | **$ (82,500.00)** | **$ (3,383,710.00)** |
| **4-Year Total:** | **$ (5,095,760.00)** | **$ (112,500.00)** | **$ (114,500.00)** | **$ (5,322,760.00)** |

**Transfers to: Colin Eccles**

| Date | Bank Account: DD_BoA_x5992 | Bank Account: EUR_DD_FR_x2066 | Grand Total |
|---|---|---|---|
| 2/5/2016 | $ (19,420.00) | $ - | $ (19,420.00) |
| 2/29/2016 | (14,370.00) | - | (14,370.00) |
| 3/4/2016 | (39,865.50) | - | (39,865.50) |
| 3/7/2016 | (4,970.00) | - | (4,970.00) |
| 4/8/2016 | (13,770.00) | - | (13,770.00) |
| 9/9/2016 | (3,800.00) | - | (3,800.00) |
| 10/18/2016 | (14,950.00) | - | (14,950.00) |
| 12/5/2016 | (2,470.00) | - | (2,470.00) |
| 12/7/2016 | (2,470.00) | - | (2,470.00) |
| 12/14/2016 | (6,370.00) | - | (6,370.00) |
| 12/27/2016 | (13,217.00) | - | (13,217.00) |
| 1/4/2017 | (11,113.00) | - | (11,113.00) |
| 2/3/2017 | (1,420.00) | - | (1,420.00) |
| 2/13/2017 | (15,298.00) | - | (15,298.00) |
| 2/16/2017 | (1,600.00) | - | (1,600.00) |
| 3/9/2017 | (1,780.00) | - | (1,780.00) |
| 3/21/2017 | (1,360.00) | - | (1,360.00) |
| 4/3/2017 | (1,257.65) | - | (1,257.65) |
| 4/21/2017 | (1,162.00) | - | (1,162.00) |
| 4/24/2017 | (3,487.28) | - | (3,487.28) |
| 5/4/2017 | (5,822.30) | - | (5,822.30) |
| 5/15/2017 | (6,010.00) | - | (6,010.00) |
| 5/25/2017 | (7,450.00) | - | (7,450.00) |
| 6/2/2017 | (3,170.00) | - | (3,170.00) |
| 6/14/2017 | (3,023.00) | - | (3,023.00) |
| 6/29/2017 | (3,670.00) | - | (3,670.00) |
| 7/10/2017 | (2,806.75) | - | (2,806.75) |
| 7/18/2017 | (2,940.50) | - | (2,940.50) |
| 8/7/2017 | (1,346.00) | - | (1,346.00) |
| 8/24/2017 | (3,320.00) | - | (3,320.00) |
| 9/8/2017 | (4,800.00) | - | (4,800.00) |
| 10/2/2017 | (1,723.00) | - | (1,723.00) |
| 10/17/2017 | (3,655.00) | - | (3,655.00) |
| 11/6/2017 | (1,820.00) | - | (1,820.00) |
| 11/14/2017 | (10,580.00) | - | (10,580.00) |
| 12/4/2017 | (5,351.00) | - | (5,351.00) |
| 12/20/2017 | (35,816.00) | - | (35,816.00) |
| 1/4/2018 | (5,215.00) | - | (5,215.00) |
| 1/8/2018 | (16,011.00) | - | (16,011.00) |
| 1/11/2018 | (5,890.00) | - | (5,890.00) |
| 1/23/2018 | (2,038.00) | - | (2,038.00) |
| 2/7/2018 | (3,970.00) | - | (3,970.00) |
| 2/15/2018 | (21,261.00) | - | (21,261.00) |
| 6/22/2018 | - | (1,677.49) | (1,677.49) |
| **Grand Total** | $ (331,838.98) | $ (1,677.49) | $ (333,516.47) |

| | | | |
|---|---|---|---|
| **90-Day Total:** | $ - | $ - | $ - |
| **1-Year Total:** | $ - | $ (1,677.49) | $ (1,677.49) |
| **2-Year Total:** | $ (164,955.48) | $ (1,677.49) | $ (166,632.97) |
| **4-Year Total:** | $ (331,838.98) | $ (1,677.49) | $ (333,516.47) |

**EXHIBIT 15**     **65**     3/10/2021; 9:56 AM; 1

**Transfers to: LTD Tel**

| Date | Bank Account: DD_BoA_x5992 | Bank Account: VG_FR_x6466 | Grand Total |
|---|---|---|---|
| 02/02/16 | $ (19,970.00) | $ - | $ (19,970.00) |
| 03/21/16 | (7,570.00) | - | (7,570.00) |
| 06/06/16 | (5,970.00) | - | (5,970.00) |
| 08/08/16 | (10,670.00) | - | (10,670.00) |
| 09/29/16 | (4,000.00) | - | (4,000.00) |
| 10/19/16 | (4,770.00) | - | (4,770.00) |
| 11/23/16 | (5,970.00) | - | (5,970.00) |
| 12/05/16 | (8,570.00) | - | (8,570.00) |
| 12/22/16 | (8,170.00) | - | (8,170.00) |
| 01/19/17 | (7,570.00) | - | (7,570.00) |
| 02/03/17 | (7,241.36) | - | (7,241.36) |
| 02/16/17 | (6,903.71) | - | (6,903.71) |
| 02/17/17 | (6,903.71) | - | (6,903.71) |
| 03/09/17 | (7,536.84) | - | (7,536.84) |
| 03/21/17 | (7,338.88) | - | (7,338.88) |
| 04/03/17 | (5,033.64) | - | (5,033.64) |
| 04/21/17 | (6,291.00) | - | (6,291.00) |
| 04/24/17 | (411.63) | - | (411.63) |
| 05/10/17 | (11,140.00) | - | (11,140.00) |
| 05/22/17 | (7,777.00) | - | (7,777.00) |
| 06/14/17 | (10,390.00) | - | (10,390.00) |
| 07/10/17 | (9,492.58) | - | (9,492.58) |
| 07/18/17 | (11,657.75) | - | (11,657.75) |
| 08/07/17 | (5,642.00) | - | (5,642.00) |
| 08/24/17 | (9,820.00) | - | (9,820.00) |
| 09/08/17 | (8,000.00) | - | (8,000.00) |
| 10/02/17 | (8,234.35) | - | (8,234.35) |
| 10/17/17 | (10,042.00) | - | (10,042.00) |
| 11/06/17 | (10,460.50) | - | (10,460.50) |
| 11/09/17 | - | (75,000.00) | (75,000.00) |
| 12/11/17 | (6,270.00) | - | (6,270.00) |
| 02/20/18 | (8,170.00) | - | (8,170.00) |
| 04/23/18 | (8,670.00) | - | (8,670.00) |
| 06/11/18 | (7,970.00) | - | (7,970.00) |
| 07/09/18 | (7,228.00) | - | (7,228.00) |
| 07/12/18 | (4,180.00) | - | (4,180.00) |
| 08/29/18 | (3,170.00) | - | (3,170.00) |
| **Grand Total** | **$ (279,204.95)** | **$ (75,000.00)** | **$ (354,204.95)** |

| | | | |
|---|---|---|---|
| **90-Day Total:** | $ - | $ - | $ - |
| **1-Year Total:** | $ (31,218.00) | $ - | $ (31,218.00) |
| **2-Year Total:** | $ (167,389.33) | $ (75,000.00) | $ (242,389.33) |
| **4-Year Total:** | $ (279,204.95) | $ (75,000.00) | $ (354,204.95) |

**EXHIBIT 16**                    **66**          3/10/2021; 9:54 AM; 1

**Transfers to: Tarek Katit**

| Date | Bank Account: DD_BoA_x5992 | | Grand Total | |
|---|---|---|---|---|
| 8/4/2016 | $ | (1,200.00) | $ | (1,200.00) |
| 8/5/2016 | | (3,000.00) | | (3,000.00) |
| 8/12/2016 | | (3,000.00) | | (3,000.00) |
| **Grand Total** | **$** | **(7,200.00)** | **$** | **(7,200.00)** |

| | | | | |
|---|---|---|---|---|
| **90-Day Total:** | **$** | **-** | **$** | **-** |
| **1-Year Total:** | **$** | **-** | **$** | **-** |
| **2-Year Total:** | **$** | **-** | **$** | **-** |
| **4-Year Total:** | **$** | **(7,200.00)** | **$** | **(7,200.00)** |

**EXHIBIT 17**          **67**          3/10/2021; 9:54 AM; 1

**Transfers to: Tee Telecommunications**

| Date | Bank Account: DD_BoA_x5992 | Bank Account No: DD_Citi_x2588 | Grand Total |
|---|---|---|---|
| 02/02/16 | $ (750,000.00) | $ - | $ (750,000.00) |
| 04/07/16 | (200,000.00) | - | (200,000.00) |
| 04/12/16 | (100,000.00) | - | (100,000.00) |
| 04/14/16 | (150,000.00) | - | (150,000.00) |
| 04/19/16 | (40,000.00) | - | (40,000.00) |
| 04/21/16 | (140,000.00) | - | (140,000.00) |
| 04/26/16 | (120,000.00) | - | (120,000.00) |
| 05/03/16 | (10,000.00) | - | (10,000.00) |
| 05/09/16 | (70,000.00) | - | (70,000.00) |
| 05/11/16 | (30,000.00) | - | (30,000.00) |
| 05/12/16 | (70,000.00) | - | (70,000.00) |
| 05/16/16 | (60,000.00) | - | (60,000.00) |
| 05/17/16 | (60,000.00) | - | (60,000.00) |
| 05/18/16 | (60,000.00) | - | (60,000.00) |
| 05/19/16 | (180,000.00) | - | (180,000.00) |
| 05/23/16 | (80,000.00) | - | (80,000.00) |
| 05/26/16 | (160,000.00) | - | (160,000.00) |
| 06/02/16 | (125,000.00) | - | (125,000.00) |
| 06/06/16 | (90,000.00) | - | (90,000.00) |
| 06/09/16 | (120,000.00) | - | (120,000.00) |
| 06/13/16 | (30,000.00) | - | (30,000.00) |
| 06/16/16 | (120,000.00) | - | (120,000.00) |
| 06/20/16 | (110,000.00) | - | (110,000.00) |
| 06/23/16 | (95,000.00) | - | (95,000.00) |
| 06/27/16 | (50,000.00) | - | (50,000.00) |
| 07/05/16 | (60,000.00) | - | (60,000.00) |
| 07/07/16 | (60,000.00) | - | (60,000.00) |
| 07/11/16 | (100,000.00) | - | (100,000.00) |
| 07/14/16 | (100,000.00) | - | (100,000.00) |
| 07/18/16 | (75,000.00) | - | (75,000.00) |
| 07/21/16 | (200,000.00) | - | (200,000.00) |
| 07/22/16 | (150,000.00) | - | (150,000.00) |
| 07/25/16 | (240,000.00) | - | (240,000.00) |
| 07/26/16 | (50,000.00) | - | (50,000.00) |
| 07/28/16 | (470,000.00) | - | (470,000.00) |
| 07/29/16 | (470,000.00) | - | (470,000.00) |
| 08/01/16 | (470,000.00) | - | (470,000.00) |
| 08/02/16 | (420,000.00) | - | (420,000.00) |
| 08/03/16 | (90,000.00) | - | (90,000.00) |
| 08/08/16 | (194,970.00) | - | (194,970.00) |
| 08/10/16 | (260,000.00) | - | (260,000.00) |
| 08/11/16 | (240,000.00) | - | (240,000.00) |
| 08/12/16 | (9,970.00) | - | (9,970.00) |
| 08/15/16 | (90,000.00) | - | (90,000.00) |
| 08/16/16 | (200,000.00) | - | (200,000.00) |
| 08/17/16 | (105,000.00) | - | (105,000.00) |
| 08/18/16 | (105,000.00) | - | (105,000.00) |
| 08/19/16 | (75,000.00) | - | (75,000.00) |
| 08/22/16 | (37,500.00) | - | (37,500.00) |
| 08/25/16 | (150,000.00) | - | (150,000.00) |
| 08/29/16 | (365,000.00) | - | (365,000.00) |
| 08/30/16 | (2,970.00) | - | (2,970.00) |
| 09/01/16 | (120,000.00) | - | (120,000.00) |
| 09/06/16 | (115,000.00) | - | (115,000.00) |

**EXHIBIT 18**

3/10/2021; 9:55 AM; 1

| Date | DD_BoA_x5992 | DD_Citi_x2588 | Grand Total |
|---|---|---|---|
| 09/08/16 | (135,000.00) | - | (135,000.00) |
| 09/09/16 | (450,000.00) | - | (450,000.00) |
| 09/12/16 | (1,055,000.00) | - | (1,055,000.00) |
| 09/13/16 | (9,500.00) | - | (9,500.00) |
| 09/14/16 | (560,000.00) | - | (560,000.00) |
| 09/15/16 | (115,000.00) | - | (115,000.00) |
| 09/16/16 | (400,000.00) | - | (400,000.00) |
| 09/19/16 | (375,000.00) | - | (375,000.00) |
| 09/20/16 | (360,000.00) | - | (360,000.00) |
| 09/22/16 | (175,000.00) | - | (175,000.00) |
| 09/26/16 | (115,000.00) | - | (115,000.00) |
| 09/27/16 | (75,000.00) | - | (75,000.00) |
| 09/29/16 | (305,000.00) | - | (305,000.00) |
| 10/04/16 | (50,500.00) | - | (50,500.00) |
| 10/05/16 | (15,970.00) | - | (15,970.00) |
| 10/06/16 | (95,000.00) | - | (95,000.00) |
| 10/07/16 | (25,000.00) | - | (25,000.00) |
| 10/11/16 | (70,000.00) | - | (70,000.00) |
| 10/12/16 | (9,970.00) | - | (9,970.00) |
| 10/13/16 | (9,970.00) | - | (9,970.00) |
| 10/17/16 | (7,000.00) | - | (7,000.00) |
| 10/20/16 | (13,220.00) | - | (13,220.00) |
| 10/24/16 | (8,220.00) | - | (8,220.00) |
| 10/27/16 | (11,890.00) | - | (11,890.00) |
| 11/01/16 | (5,750.00) | - | (5,750.00) |
| 11/03/16 | (16,300.00) | - | (16,300.00) |
| 11/04/16 | (5,000.00) | - | (5,000.00) |
| 11/07/16 | (9,000.00) | - | (9,000.00) |
| 11/09/16 | (40,000.00) | - | (40,000.00) |
| 11/10/16 | (14,950.00) | - | (14,950.00) |
| 11/14/16 | (9,500.00) | - | (9,500.00) |
| 11/15/16 | (4,500.00) | - | (4,500.00) |
| 11/16/16 | (75,000.00) | - | (75,000.00) |
| 11/17/16 | (219,000.00) | - | (219,000.00) |
| 11/18/16 | (270,000.00) | - | (270,000.00) |
| 11/21/16 | (128,470.00) | - | (128,470.00) |
| 11/23/16 | (374,000.00) | - | (374,000.00) |
| 11/28/16 | (80,000.00) | - | (80,000.00) |
| 12/01/16 | (144,000.00) | - | (144,000.00) |
| 12/05/16 | (142,970.00) | - | (142,970.00) |
| 12/08/16 | (225,970.00) | - | (225,970.00) |
| 12/12/16 | (134,970.00) | - | (134,970.00) |
| 12/13/16 | (39,970.00) | - | (39,970.00) |
| 12/15/16 | (204,970.00) | - | (204,970.00) |
| 12/16/16 | (3,970.00) | - | (3,970.00) |
| 12/19/16 | (150,940.00) | - | (150,940.00) |
| 12/21/16 | (19,970.00) | - | (19,970.00) |
| 12/22/16 | (285,970.00) | - | (285,970.00) |
| 12/29/16 | (85,970.00) | - | (85,970.00) |
| 01/03/17 | (137,970.00) | - | (137,970.00) |
| 01/05/17 | (160,000.00) | - | (160,000.00) |
| 01/09/17 | (664,940.00) | - | (664,940.00) |
| 01/12/17 | (684,970.00) | - | (684,970.00) |
| 01/17/17 | (739,970.00) | - | (739,970.00) |
| 01/27/17 | (9,970.00) | - | (9,970.00) |
| 01/30/17 | (12,570.00) | - | (12,570.00) |
| 02/06/17 | (19,500.00) | - | (19,500.00) |

| Date | DD_BoA_x5992 | DD_Citi_x2588 | Grand Total |
|------|-------------:|:-------------:|------------:|
| 02/14/17 | (9,970.00) | - | (9,970.00) |
| 02/16/17 | (10,370.00) | - | (10,370.00) |
| 02/21/17 | (209,970.00) | - | (209,970.00) |
| 02/23/17 | (2,700.00) | - | (2,700.00) |
| 02/27/17 | (3,500.00) | - | (3,500.00) |
| 03/02/17 | (2,970.00) | - | (2,970.00) |
| 03/13/17 | (5,000.00) | - | (5,000.00) |
| 03/16/17 | (1,970.00) | - | (1,970.00) |
| 03/23/17 | (184,970.00) | - | (184,970.00) |
| 03/24/17 | (79,970.00) | - | (79,970.00) |
| 03/27/17 | (254,800.00) | - | (254,800.00) |
| 03/28/17 | (200,000.00) | - | (200,000.00) |
| 03/29/17 | (299,970.00) | - | (299,970.00) |
| 03/31/17 | (209,970.00) | - | (209,970.00) |
| 04/06/17 | (29,970.00) | - | (29,970.00) |
| 04/10/17 | (8,970.00) | - | (8,970.00) |
| 04/20/17 | (450,000.00) | - | (450,000.00) |
| 04/24/17 | (9,970.00) | - | (9,970.00) |
| 05/02/17 | (330,000.00) | - | (330,000.00) |
| 05/03/17 | (2,500,000.00) | - | (2,500,000.00) |
| 05/04/17 | (4,970.00) | - | (4,970.00) |
| 05/11/17 | (500,000.00) | - | (500,000.00) |
| 05/15/17 | (79,970.00) | - | (79,970.00) |
| 05/18/17 | (250,000.00) | - | (250,000.00) |
| 05/22/17 | (179,970.00) | - | (179,970.00) |
| 05/25/17 | (244,970.00) | - | (244,970.00) |
| 05/30/17 | (4,970.00) | - | (4,970.00) |
| 06/05/17 | (470,000.00) | - | (470,000.00) |
| 06/12/17 | (265,000.00) | - | (265,000.00) |
| 06/22/17 | (8,970.00) | - | (8,970.00) |
| 07/03/17 | (44,970.00) | - | (44,970.00) |
| 07/10/17 | (205,000.00) | - | (205,000.00) |
| 07/20/17 | (3,000.00) | - | (3,000.00) |
| 07/24/17 | (7,000.00) | - | (7,000.00) |
| 07/27/17 | (4,600.00) | - | (4,600.00) |
| 07/28/17 | (760,000.00) | - | (760,000.00) |
| 08/01/17 | (8,970.00) | - | (8,970.00) |
| 08/14/17 | (90,000.00) | - | (90,000.00) |
| 08/21/17 | (89,970.00) | - | (89,970.00) |
| 08/25/17 | (55,000.00) | - | (55,000.00) |
| 08/28/17 | (70,000.00) | - | (70,000.00) |
| 09/05/17 | (25,000.00) | - | (25,000.00) |
| 09/11/17 | (20,000.00) | - | (20,000.00) |
| 09/14/17 | (240,000.00) | - | (240,000.00) |
| 09/18/17 | (190,000.00) | - | (190,000.00) |
| 09/21/17 | (269,970.00) | - | (269,970.00) |
| 09/25/17 | (200,000.00) | - | (200,000.00) |
| 09/27/17 | (600,000.00) | - | (600,000.00) |
| 09/28/17 | (130,000.00) | - | (130,000.00) |
| 10/16/17 | (170,000.00) | - | (170,000.00) |
| 10/19/17 | (135,000.00) | - | (135,000.00) |
| 10/23/17 | (160,000.00) | - | (160,000.00) |
| 10/26/17 | (105,000.00) | - | (105,000.00) |
| 10/30/17 | (105,000.00) | - | (105,000.00) |
| 11/06/17 | (65,000.00) | - | (65,000.00) |
| 11/22/17 | (200,000.00) | - | (200,000.00) |
| 11/29/17 | (29,970.00) | - | (29,970.00) |

**70**

| Date | DD_BoA_x5992 | DD_Citi_x2588 | Grand Total |
|---|---|---|---|
| 12/11/17 | (124,970.00) | - | (124,970.00) |
| 12/18/17 | (25,000.00) | - | (25,000.00) |
| 12/27/17 | (249,970.00) | - | (249,970.00) |
| 01/02/18 | (5,970.00) | - | (5,970.00) |
| 01/09/18 | (99,970.00) | - | (99,970.00) |
| 03/01/18 | (49,970.00) | - | (49,970.00) |
| 03/14/18 | (59,970.00) | - | (59,970.00) |
| 03/26/18 | (50,000.00) | - | (50,000.00) |
| 04/04/18 | (49,970.00) | - | (49,970.00) |
| 04/10/18 | (50,000.00) | - | (50,000.00) |
| 04/16/18 | (99,970.00) | - | (99,970.00) |
| 04/23/18 | (69,970.00) | - | (69,970.00) |
| 04/30/18 | (105,000.00) | - | (105,000.00) |
| 05/04/18 | (499,970.00) | - | (499,970.00) |
| 05/07/18 | (499,970.00) | - | (499,970.00) |
| 05/09/18 | (449,970.00) | - | (449,970.00) |
| 05/10/18 | (249,970.00) | - | (249,970.00) |
| 05/11/18 | (192,970.00) | - | (192,970.00) |
| 05/14/18 | (298,970.00) | - | (298,970.00) |
| 05/17/18 | (349,685.26) | - | (349,685.26) |
| 05/29/18 | (100,000.00) | - | (100,000.00) |
| 06/04/18 | (249,970.00) | - | (249,970.00) |
| 06/08/18 | (100,000.00) | - | (100,000.00) |
| 06/11/18 | (149,970.00) | - | (149,970.00) |
| 06/14/18 | (124,970.00) | - | (124,970.00) |
| 06/18/18 | (249,970.00) | - | (249,970.00) |
| 07/12/18 | (299,970.00) | - | (299,970.00) |
| 07/23/18 | (500,000.00) | - | (500,000.00) |
| 07/30/18 | (500,000.00) | - | (500,000.00) |
| 08/22/18 | (400,000.00) | - | (400,000.00) |
| 04/12/19 | - | (90,635.43) | (90,635.43) |
| 04/15/19 | - | (96,228.18) | (96,228.18) |
| 05/31/19 | - | (24,945.51) | (24,945.51) |
| 06/11/19 | - | (29,470.00) | (29,470.00) |
| 08/12/19 | - | (4,720.00) | (4,720.00) |
| 10/24/19 | - | (4,955.02) | (4,955.02) |
| 12/13/19 | - | (9,870.00) | (9,870.00) |
| 12/19/19 | - | (8,970.00) | (8,970.00) |
| 12/26/19 | - | (7,970.00) | (7,970.00) |
| 12/30/19 | - | (7,470.00) | (7,470.00) |
| 01/06/20 | - | (19,970.00) | (19,970.00) |
| 01/13/20 | - | (7,357.00) | (7,357.00) |
| 01/21/20 | - | (8,962.00) | (8,962.00) |
| 01/23/20 | - | (18,920.00) | (18,920.00) |
| 02/18/20 | - | (4,466.00) | (4,466.00) |
| 03/16/20 | - | (4,466.00) | (4,466.00) |
| 04/13/20 | - | (4,870.00) | (4,870.00) |
| 05/04/20 | - | (4,470.00) | (4,470.00) |
| 05/11/20 | - | (4,920.00) | (4,920.00) |
| 05/18/20 | - | (4,920.00) | (4,920.00) |
| 05/21/20 | - | (49,742.13) | (49,742.13) |

3/10/2021; 9:55 AM; 4

| Date | DD_BoA_x5992 | DD_Citi_x2588 | Grand Total |
|---|---|---|---|
| 05/22/20 | - | (67,000.12) | (67,000.12) |
| 05/27/20 | - | (48,302.91) | (48,302.91) |
| 06/05/20 | - | (9,609.00) | (9,609.00) |
| 06/17/20 | - | (36,191.76) | (36,191.76) |
| 06/19/20 | - | (52,204.00) | (52,204.00) |
| 07/20/20 | - | (48,844.00) | (48,844.00) |
| Grand Total | $ (34,667,075.26) | $ (680,449.06) | $ (35,347,524.32) |

| | | | |
|---|---|---|---|
| 90-Day Total: | $ - | $ - | $ - |
| 1-Year Total: | $ (5,701,235.26) | $ - | $ (5,701,235.26) |
| 2-Year Total: | $ (16,814,915.26) | $ - | $ (16,814,915.26) |
| 4-Year Total: | $ (34,667,075.26) | $ - | $ (34,667,075.26) |
| Post-Petition Total: | $ - | $ (680,449.06) | $ (680,449.06) |

3/10/2021; 9:55 AM; 5

**Transfers to: 2365 Azure LLC**

| Date | Bank Account: DD_BoA_x5992 | Grand Total |
|---|---|---|
| 12/12/16 | $ (695,000.00) | $ (695,000.00) |
| **Grand Total** | **$ (695,000.00)** | **$ (695,000.00)** |

| | | | | |
|---|---|---|---|---|
| **90-Day Total:** | **$** | **-** | **$** | **-** |
| **1-Year Total:** | **$** | **-** | **$** | **-** |
| **2-Year Total:** | **$** | **-** | **$** | **-** |
| **4-Year Total:** | **$** | **(695,000.00)** | **$** | **(695,000.00)** |

**EXHIBIT 19**                     **73**        3/10/2021; 9:55 AM; 1

**Transfers from VoIP Guardian LLC**
**(Management Company) to DealDefenders**

| Date | Bank Account: VG_FR_x6441 |
|---|---|
| 2/8/2016 | $ (179,832.87) |
| 04/07/16 | (41,322.52) |
| 06/20/16 | (12,473.90) |
| 09/19/16 | (12,560.32) |
| 11/04/16 | (85,636.52) |
| 11/14/16 | (16,797.19) |
| 12/09/16 | (38,972.02) |
| 12/12/16 | (112,769.42) |
| 12/14/16 | (45,626.13) |
| 01/04/17 | (284,635.37) |
| 01/10/17 | (155,257.62) |
| 01/17/17 | (23,158.00) |
| 02/07/17 | (672,584.66) |
| 02/13/17 | (45,986.35) |
| 02/15/17 | (21,905.28) |
| 03/15/17 | (340,350.84) |
| 03/24/17 | (12,768.15) |
| 04/20/17 | (31,447.30) |
| 04/25/17 | (289,706.33) |
| 05/19/17 | (398,512.57) |
| 05/31/17 | (10,472.33) |
| 06/16/17 | (425,942.34) |
| 07/18/17 | (460,974.95) |
| 08/16/17 | (483,130.24) |
| 08/17/17 | (67,891.11) |
| 09/11/17 | (52,935.19) |
| 09/18/17 | (557,294.32) |
| 10/19/17 | (678,668.85) |
| 11/17/17 | (624,138.44) |
| 12/19/17 | (677,862.94) |
| 01/23/18 | (736,571.50) |
| 02/21/18 | (716,318.59) |
| 03/22/18 | (706,954.71) |
| 04/26/18 | (711,321.93) |
| 05/30/18 | (767,587.97) |
| 07/03/18 | (464,740.05) |
| 07/27/18 | (423,125.87) |
| 08/29/18 | (562,281.28) |
| 09/26/18 | (745,414.05) |
| 10/31/18 | (742,609.61) |
| 12/04/18 | (694,936.11) |
| **Grand Total** | **$ (14,133,475.74)** |

| | |
|---|---|
| **90-Day Total:** | **$ -** |
| **1-Year Total:** | **$ (5,818,971.58)** |
| **2-Year Total:** | **$ (12,383,957.57)** |
| **4-Year Total:** | **$ (14,133,475.74)** |

**EXHIBIT 20**       **74**

**Transfers to: Nazmul Hoque**

| Date | Bank Account: VG_FR_x6441 | Grand Total |
|---|---|---|
| 07/18/17 | $ (73,779.36) | $ (73,779.36) |
| 08/16/17 | (52,350.79) | (52,350.79) |
| 09/18/17 | (55,235.83) | (55,235.83) |
| 10/19/17 | (63,090.17) | (63,090.17) |
| 11/17/17 | (66,282.39) | (66,282.39) |
| 12/19/17 | (69,778.89) | (69,778.89) |
| 01/23/18 | (78,100.87) | (78,100.87) |
| 02/21/18 | (83,522.00) | (83,522.00) |
| 03/22/18 | (88,462.00) | (88,462.00) |
| 04/26/18 | (106,842.47) | (106,842.47) |
| 05/30/18 | (112,349.41) | (112,349.41) |
| 07/03/18 | (132,556.11) | (132,556.11) |
| 07/27/18 | (93,223.22) | (93,223.22) |
| 08/29/18 | (115,713.08) | (115,713.08) |
| 09/26/18 | (132,332.32) | (132,332.32) |
| 10/31/18 | (139,017.79) | (139,017.79) |
| 12/04/18 | (146,153.17) | (146,153.17) |
| **Grand Total** | **$ (1,608,789.87)** | **$ (1,608,789.87)** |

| | | |
|---|---|---|
| **90-Day Total:** | **$ -** | **$ -** |
| **1-Year Total:** | **$ (1,066,649.57)** | **$ (1,066,649.57)** |
| **2-Year Total:** | **$ (1,608,789.87)** | **$ (1,608,789.87)** |
| **4-Year Total:** | **$ (1,608,789.87)** | **$ (1,608,789.87)** |

**EXHIBIT 21**

75

**Transfers to: Overseas Charters Inc.**

| Date | Bank Account: DD_BoA_x5992 | Grand Total |
|---|---|---|
| 02/02/16 | (750,000.00) | (750,000.00) |
| 09/13/16 | (550,000.00) | (550,000.00) |
| **Grand Total** | **$ (1,300,000.00)** | **$ (1,300,000.00)** |

| | | |
|---|---|---|
| **90-Day Total:** | $ - | $ - |
| **1-Year Total:** | $ - | $ - |
| **2-Year Total:** | $ - | $ - |
| **4-Year Total:** | $ (1,300,000.00) | $ (1,300,000.00) |

**EXHIBIT 22**

3/24/2021; 5:31 PM; 2

**Transfers to: Go2Tel**

| Date | Bank Account: DD_BoA_x5992 | Grand Total |
|---|---|---|
| 04/20/16 | (53,035.64) | (53,035.64) |
| 08/24/16 | (20,000.00) | (20,000.00) |
| 08/26/16 | (60,000.00) | (60,000.00) |
| 08/29/16 | (15,000.00) | (15,000.00) |
| 10/11/16 | (15,000.00) | (15,000.00) |
| 10/13/16 | (102,000.00) | (102,000.00) |
| 10/17/16 | (85,000.00) | (85,000.00) |
| 10/20/16 | (115,000.00) | (115,000.00) |
| 10/24/16 | (75,000.00) | (75,000.00) |
| 10/27/16 | (80,000.00) | (80,000.00) |
| 11/01/16 | (50,000.00) | (50,000.00) |
| 11/02/16 | (40,000.00) | (40,000.00) |
| 11/03/16 | (170,000.00) | (170,000.00) |
| 11/07/16 | (150,000.00) | (150,000.00) |
| 11/10/16 | (170,000.00) | (170,000.00) |
| 11/14/16 | (100,000.00) | (100,000.00) |
| 11/17/16 | (180,000.00) | (180,000.00) |
| 12/01/16 | (59,970.00) | (59,970.00) |
| 12/05/16 | (120,000.00) | (120,000.00) |
| 12/12/16 | (100,000.00) | (100,000.00) |
| 12/13/16 | (24,970.00) | (24,970.00) |
| 12/15/16 | (39,970.00) | (39,970.00) |
| 12/19/16 | (60,000.00) | (60,000.00) |
| 12/22/16 | (135,000.00) | (135,000.00) |
| 12/29/16 | (30,000.00) | (30,000.00) |
| 01/03/17 | (50,000.00) | (50,000.00) |
| 01/05/17 | (70,000.00) | (70,000.00) |
| 01/09/17 | (70,000.00) | (70,000.00) |
| 01/12/17 | (80,000.00) | (80,000.00) |
| 01/17/17 | (70,000.00) | (70,000.00) |
| 01/19/17 | (90,000.00) | (90,000.00) |
| 01/23/17 | (65,000.00) | (65,000.00) |
| 01/26/17 | (80,000.00) | (80,000.00) |
| 02/02/17 | (100,000.00) | (100,000.00) |
| 02/06/17 | (70,000.00) | (70,000.00) |
| 02/09/17 | (90,000.00) | (90,000.00) |
| 02/13/17 | (65,000.00) | (65,000.00) |
| 02/16/17 | (90,000.00) | (90,000.00) |
| 02/21/17 | (70,000.00) | (70,000.00) |
| 02/23/17 | (90,000.00) | (90,000.00) |
| 03/02/17 | (100,000.00) | (100,000.00) |
| 03/06/17 | (100,000.00) | (100,000.00) |
| 03/09/17 | (100,000.00) | (100,000.00) |
| 03/13/17 | (30,000.00) | (30,000.00) |
| 03/16/17 | (80,000.00) | (80,000.00) |
| 03/20/17 | (90,000.00) | (90,000.00) |
| 03/23/17 | (80,000.00) | (80,000.00) |
| 03/27/17 | (60,000.00) | (60,000.00) |
| 03/30/17 | (20,000.00) | (20,000.00) |
| 04/03/17 | (110,000.00) | (110,000.00) |
| 04/06/17 | (140,000.00) | (140,000.00) |
| 04/10/17 | (100,000.00) | (100,000.00) |
| 04/11/17 | (215,000.00) | (215,000.00) |
| 04/17/17 | (165,000.00) | (165,000.00) |

## EXHIBIT 23

| Date | Bank Account<br>DD_BoA_x5992 | Grand Total |
|------|---------------|-------------|
| 04/20/17 | (300,000.00) | (300,000.00) |
| 04/24/17 | (195,000.00) | (195,000.00) |
| 04/27/17 | (260,000.00) | (260,000.00) |
| 05/02/17 | (140,000.00) | (140,000.00) |
| 05/04/17 | (140,000.00) | (140,000.00) |
| 05/08/17 | (90,000.00) | (90,000.00) |
| 05/18/17 | (35,000.00) | (35,000.00) |
| 05/22/17 | (105,000.00) | (105,000.00) |
| 05/25/17 | (150,000.00) | (150,000.00) |
| 05/30/17 | (330,000.00) | (330,000.00) |
| 06/05/17 | (100,000.00) | (100,000.00) |
| 06/08/17 | (200,000.00) | (200,000.00) |
| 06/12/17 | (120,000.00) | (120,000.00) |
| 06/15/17 | (140,000.00) | (140,000.00) |
| 06/22/17 | (250,000.00) | (250,000.00) |
| 06/26/17 | (250,000.00) | (250,000.00) |
| 07/03/17 | (85,000.00) | (85,000.00) |
| 07/10/17 | (100,000.00) | (100,000.00) |
| 07/13/17 | (100,000.00) | (100,000.00) |
| 07/17/17 | (220,000.00) | (220,000.00) |
| 07/20/17 | (220,000.00) | (220,000.00) |
| 07/24/17 | (200,000.00) | (200,000.00) |
| 07/27/17 | (170,000.00) | (170,000.00) |
| 07/31/17 | (100,000.00) | (100,000.00) |
| 08/03/17 | (60,000.00) | (60,000.00) |
| 08/07/17 | (40,000.00) | (40,000.00) |
| 08/17/17 | (85,000.00) | (85,000.00) |
| 08/21/17 | (65,000.00) | (65,000.00) |
| 08/24/17 | (75,000.00) | (75,000.00) |
| 08/28/17 | (60,000.00) | (60,000.00) |
| 08/31/17 | (20,000.00) | (20,000.00) |
| 09/05/17 | (120,000.00) | (120,000.00) |
| 09/07/17 | (160,000.00) | (160,000.00) |
| 09/11/17 | (40,000.00) | (40,000.00) |
| 09/14/17 | (180,000.00) | (180,000.00) |
| 09/18/17 | (110,000.00) | (110,000.00) |
| 09/21/17 | (140,000.00) | (140,000.00) |
| 09/25/17 | (80,000.00) | (80,000.00) |
| 09/28/17 | (200,000.00) | (200,000.00) |
| 10/05/17 | (225,000.00) | (225,000.00) |
| 10/10/17 | (100,000.00) | (100,000.00) |
| 10/12/17 | (180,000.00) | (180,000.00) |
| 10/16/17 | (80,000.00) | (80,000.00) |
| 10/19/17 | (170,000.00) | (170,000.00) |
| 10/23/17 | (125,000.00) | (125,000.00) |
| 10/26/17 | (120,000.00) | (120,000.00) |
| 11/06/17 | (100,000.00) | (100,000.00) |
| 11/09/17 | (60,000.00) | (60,000.00) |
| 11/13/17 | (90,000.00) | (90,000.00) |
| 11/16/17 | (85,000.00) | (85,000.00) |
| 11/20/17 | (50,000.00) | (50,000.00) |
| 11/22/17 | (100,000.00) | (100,000.00) |
| 12/08/17 | (75,000.00) | (75,000.00) |
| 12/11/17 | (50,000.00) | (50,000.00) |
| 12/21/17 | (50,000.00) | (50,000.00) |
| 01/25/18 | (100,000.00) | (100,000.00) |
| **Grand Total** | **$ (11,784,945.64)** | **$ (11,784,945.64)** |

**Bank Accounts**

| Date | DD_BoA_x5992 | Grand Total |
|---|---|---|
| **90-Day Total:** | $ - | $ - |
| **1-Year Total:** | $ - | $ - |
| **2-Year Total:** | $ (8,285,000.00) | $ (8,285,000.00) |
| **4-Year Total:** | $ (11,784,945.64) | $ (11,784,945.64) |
| **Post-Petition Total:** | $ - | $ - |

**Transfers to: Phonetime**

| | Bank Account: | |
| Date | DD_BoA_x5992 | Grand Total |
|---|---|---|
| 04/15/16 | (5,000.00) | (5,000.00) |
| 06/13/16 | (10,000.00) | (10,000.00) |
| 06/14/16 | (16,000.00) | (16,000.00) |
| 06/16/16 | (40,000.00) | (40,000.00) |
| 06/21/16 | (20,000.00) | (20,000.00) |
| 06/23/16 | (30,000.00) | (30,000.00) |
| 06/27/16 | (10,000.00) | (10,000.00) |
| 07/05/16 | (20,000.00) | (20,000.00) |
| 07/07/16 | (15,000.00) | (15,000.00) |
| 07/08/16 | (10,000.00) | (10,000.00) |
| 07/11/16 | (25,000.00) | (25,000.00) |
| 07/14/16 | (35,000.00) | (35,000.00) |
| 07/18/16 | (25,000.00) | (25,000.00) |
| 07/21/16 | (32,000.00) | (32,000.00) |
| 10/03/16 | (500,000.00) | (500,000.00) |
| 10/05/16 | (1,000,000.00) | (1,000,000.00) |
| 10/11/16 | (650,000.00) | (650,000.00) |
| 10/13/16 | (600,000.00) | (600,000.00) |
| 10/17/16 | (600,000.00) | (600,000.00) |
| 10/20/16 | (1,200,000.00) | (1,200,000.00) |
| 10/24/16 | (750,000.00) | (750,000.00) |
| 10/27/16 | (1,100,000.00) | (1,100,000.00) |
| 11/01/16 | (550,000.00) | (550,000.00) |
| 11/03/16 | (1,550,000.00) | (1,550,000.00) |
| 11/07/16 | (1,150,000.00) | (1,150,000.00) |
| 11/10/16 | (1,360,000.00) | (1,360,000.00) |
| 11/14/16 | (900,000.00) | (900,000.00) |
| 11/17/16 | (1,400,000.00) | (1,400,000.00) |
| 11/21/16 | (600,000.00) | (600,000.00) |
| 11/23/16 | (2,000,000.00) | (2,000,000.00) |
| 11/28/16 | (1,100,000.00) | (1,100,000.00) |
| 12/01/16 | (2,000,000.00) | (2,000,000.00) |
| 12/05/16 | (1,450,000.00) | (1,450,000.00) |
| 12/08/16 | (2,299,970.00) | (2,299,970.00) |
| 12/12/16 | (1,350,000.00) | (1,350,000.00) |
| 12/15/16 | (2,227,970.00) | (2,227,970.00) |
| 12/19/16 | (1,400,000.00) | (1,400,000.00) |
| 12/21/16 | (2,000,000.00) | (2,000,000.00) |
| 12/22/16 | (1,660,000.00) | (1,660,000.00) |
| 12/29/16 | (1,960,000.00) | (1,960,000.00) |
| 01/03/17 | (1,685,000.00) | (1,685,000.00) |
| 01/05/17 | (3,340,000.00) | (3,340,000.00) |
| 01/09/17 | (1,800,000.00) | (1,800,000.00) |
| 01/12/17 | (2,265,000.00) | (2,265,000.00) |
| 01/17/17 | (2,000,000.00) | (2,000,000.00) |
| 01/19/17 | (2,170,000.00) | (2,170,000.00) |
| 01/23/17 | (2,160,000.00) | (2,160,000.00) |
| 01/26/17 | (2,560,000.00) | (2,560,000.00) |

**EXHIBIT 24**

3/26/2021; 10:54 AM; 1

| Date | Bank Account DD_BoA_x5992 | Grand Total |
|---|---|---|
| 01/30/17 | (1,260,000.00) | (1,260,000.00) |
| 02/02/17 | (400,000.00) | (400,000.00) |
| 02/06/17 | (1,200,000.00) | (1,200,000.00) |
| **Grand Total** | **$ (54,490,940.00)** | **$ (54,490,940.00)** |

| | | | |
|---|---|---|---|
| **90-Day Total:** | $ | - | $ | - |
| **1-Year Total:** | $ | - | $ | - |
| **2-Year Total:** | $ | - | $ | - |
| **4-Year Total:** | $ (54,490,940.00) | $ (54,490,940.00) |
| **Post-Petition Total:** | $ | - | $ | - |

3/26/2021; 10:54 AM; 2

**Transfers to: Callvox**

| Date | Bank Account: DD_BoA_x5992 | Bank Account: DD_Citi_x2588 | Bank Account: EUR_DD_FR_x2066 | Grand Total |
|---|---|---|---|---|
| 04/05/16 | (3,253.32) | - | - | (3,253.32) |
| 08/04/16 | (120,000.00) | - | - | (120,000.00) |
| 08/05/16 | (200,000.00) | - | - | (200,000.00) |
| 08/12/16 | (210,000.00) | - | - | (210,000.00) |
| 08/15/16 | (325,000.00) | - | - | (325,000.00) |
| 08/18/16 | (182,000.00) | - | - | (182,000.00) |
| 08/19/16 | (250,000.00) | - | - | (250,000.00) |
| 08/22/16 | (450,000.00) | - | - | (450,000.00) |
| 08/23/16 | (200,000.00) | - | - | (200,000.00) |
| 08/24/16 | (200,000.00) | - | - | (200,000.00) |
| 08/25/16 | (150,000.00) | - | - | (150,000.00) |
| 08/26/16 | (400,000.00) | - | - | (400,000.00) |
| 08/30/16 | (100,000.00) | - | - | (100,000.00) |
| 08/31/16 | (84,000.00) | - | - | (84,000.00) |
| 09/13/16 | (200,000.00) | - | - | (200,000.00) |
| 09/22/16 | (500,000.00) | - | - | (500,000.00) |
| 09/27/16 | (250,000.00) | - | - | (250,000.00) |
| 10/13/16 | (239,698.15) | - | - | (239,698.15) |
| 10/17/16 | (60,000.00) | - | - | (60,000.00) |
| 10/20/16 | (120,000.00) | - | - | (120,000.00) |
| 10/24/16 | (75,000.00) | - | - | (75,000.00) |
| 10/27/16 | (80,000.00) | - | - | (80,000.00) |
| 11/01/16 | (15,000.00) | - | - | (15,000.00) |
| 11/03/16 | (60,000.00) | - | - | (60,000.00) |
| 11/07/16 | (40,000.00) | - | - | (40,000.00) |
| 11/10/16 | (55,000.00) | - | - | (55,000.00) |
| 11/14/16 | (40,000.00) | - | - | (40,000.00) |
| 11/15/16 | (100,000.00) | - | - | (100,000.00) |
| 11/17/16 | (300,000.00) | - | - | (300,000.00) |
| 11/23/16 | (50,000.00) | - | - | (50,000.00) |
| 12/01/16 | (10,000.00) | - | - | (10,000.00) |
| 12/05/16 | (60,000.00) | - | - | (60,000.00) |
| 12/08/16 | (19,970.00) | - | - | (19,970.00) |
| 12/15/16 | (87,970.00) | - | - | (87,970.00) |
| 12/19/16 | (65,000.00) | - | - | (65,000.00) |
| 12/22/16 | (135,000.00) | - | - | (135,000.00) |
| 01/03/17 | (50,000.00) | - | - | (50,000.00) |
| 01/05/17 | (80,000.00) | - | - | (80,000.00) |
| 01/09/17 | (65,000.00) | - | - | (65,000.00) |
| 01/12/17 | (851,000.00) | - | - | (851,000.00) |
| 01/17/17 | (105,000.00) | - | - | (105,000.00) |
| 01/19/17 | (505,000.00) | - | - | (505,000.00) |
| 01/23/17 | (380,000.00) | - | - | (380,000.00) |
| 01/26/17 | (480,000.00) | - | - | (480,000.00) |
| 02/02/17 | (100,000.00) | - | - | (100,000.00) |
| 02/06/17 | (65,000.00) | - | - | (65,000.00) |
| 02/09/17 | (90,000.00) | - | - | (90,000.00) |
| 02/13/17 | (65,000.00) | - | - | (65,000.00) |
| 02/14/17 | (160,000.00) | - | - | (160,000.00) |
| 02/16/17 | (490,000.00) | - | - | (490,000.00) |
| 02/21/17 | (250,000.00) | - | - | (250,000.00) |
| 02/23/17 | (476,290.55) | - | - | (476,290.55) |
| 02/27/17 | (86,268.29) | - | - | (86,268.29) |
| 02/28/17 | (21,871.19) | - | - | (21,871.19) |

# EXHIBIT 25

| | Bank Account: | Bank Account: | Bank Account: | |
| Date | DD_BoA_x5992 | DD_Citi_x2588 | EUR_DD_FR_x2066 | Grand Total |
|---|---|---|---|---|
| 03/01/17 | (13,550.48) | - | - | (13,550.48) |
| 03/02/17 | (19,379.35) | - | - | (19,379.35) |
| 03/03/17 | (127,000.00) | - | - | (127,000.00) |
| 03/06/17 | (116,059.35) | - | - | (116,059.35) |
| 03/13/17 | (158,673.81) | - | - | (158,673.81) |
| 03/20/17 | (21,256.07) | - | - | (21,256.07) |
| 03/27/17 | (24,156.91) | - | - | (24,156.91) |
| 04/03/17 | (23,883.97) | - | - | (23,883.97) |
| 04/10/17 | (55,329.28) | - | - | (55,329.28) |
| 04/17/17 | (58,143.82) | - | - | (58,143.82) |
| 04/24/17 | (33,572.46) | - | - | (33,572.46) |
| 05/01/17 | (24,896.57) | - | - | (24,896.57) |
| 05/08/17 | (38,865.73) | - | - | (38,865.73) |
| 05/15/17 | (87,764.83) | - | - | (87,764.83) |
| 05/22/17 | (25,046.29) | - | - | (25,046.29) |
| 08/03/17 | (60,000.00) | - | - | (60,000.00) |
| 08/07/17 | (20,000.00) | - | - | (20,000.00) |
| 10/02/17 | (150,000.00) | - | - | (150,000.00) |
| 10/10/17 | (160,000.00) | - | - | (160,000.00) |
| 10/12/17 | (150,000.00) | - | - | (150,000.00) |
| 11/03/17 | (15,000.00) | - | - | (15,000.00) |
| 11/09/17 | (90,000.00) | - | - | (90,000.00) |
| 11/13/17 | (50,000.00) | - | - | (50,000.00) |
| 11/16/17 | (40,000.00) | - | - | (40,000.00) |
| 11/17/17 | - | - | (560,025.00) | (560,025.00) |
| 11/20/17 | (50,000.00) | - | - | (50,000.00) |
| 11/24/17 | (20,000.00) | - | - | (20,000.00) |
| 12/04/17 | - | - | (711,960.00) | (711,960.00) |
| 12/06/17 | - | - | (471,840.00) | (471,840.00) |
| 12/08/17 | (75,000.00) | - | (706,380.00) | (781,380.00) |
| 12/11/17 | - | - | (706,140.00) | (706,140.00) |
| 12/13/17 | - | - | (709,560.00) | (709,560.00) |
| 12/18/17 | - | - | (765,830.00) | (765,830.00) |
| 12/21/17 | - | - | (712,440.00) | (712,440.00) |
| 12/26/17 | - | - | (711,480.00) | (711,480.00) |
| 12/28/17 | - | - | (716,580.00) | (716,580.00) |
| 01/02/18 | - | - | (602,950.00) | (602,950.00) |
| 01/08/18 | - | - | (359,010.00) | (359,010.00) |
| 01/11/18 | - | - | (421,120.00) | (421,120.00) |
| 01/17/18 | - | - | (456,975.00) | (456,975.00) |
| 01/18/18 | - | - | (1,101,420.00) | (1,101,420.00) |
| 01/19/18 | - | - | (232,218.00) | (232,218.00) |
| 01/24/18 | - | - | (465,300.00) | (465,300.00) |
| 01/25/18 | (180,000.00) | - | - | (180,000.00) |
| 01/30/18 | - | - | (1,116,180.00) | (1,116,180.00) |
| 02/01/18 | - | - | (281,475.00) | (281,475.00) |
| 02/05/18 | (100,000.00) | - | (45,295.37) | (145,295.37) |
| 02/12/18 | (100,000.00) | - | - | (100,000.00) |
| 02/15/18 | (50,000.00) | - | - | (50,000.00) |
| 02/20/18 | (100,000.00) | - | - | (100,000.00) |
| 02/26/18 | (100,000.00) | - | - | (100,000.00) |
| 03/08/18 | (100,000.00) | - | - | (100,000.00) |
| 03/13/18 | (100,000.00) | - | - | (100,000.00) |
| 03/14/18 | - | - | (61,895.00) | (61,895.00) |
| 03/15/18 | - | - | (215,442.50) | (215,442.50) |
| 03/20/18 | (100,000.00) | - | (330,804.00) | (430,804.00) |
| 03/22/18 | - | - | (184,935.00) | (184,935.00) |

| Date | Bank Account:<br>DD_BoA_x5992 | Bank Account:<br>DD_Citi_x2588 | Bank Account:<br>EUR_DD_FR_x2066 | Grand Total |
|---|---|---|---|---|
| 03/23/18 | - | - | (309,050.00) | (309,050.00) |
| 03/27/18 | - | - | (211,021.00) | (211,021.00) |
| 03/29/18 | - | - | (61,530.00) | (61,530.00) |
| 04/02/18 | - | - | (61,485.00) | (61,485.00) |
| 04/06/18 | - | - | (362,496.00) | (362,496.00) |
| 04/09/18 | - | - | (166,414.50) | (166,414.50) |
| 04/10/18 | (100,000.00) | - | (160,771.00) | (260,771.00) |
| 04/11/18 | - | - | (61,875.00) | (61,875.00) |
| 04/13/18 | - | - | (104,856.00) | (104,856.00) |
| 04/16/18 | (125,000.00) | - | - | (125,000.00) |
| 04/17/18 | - | - | (160,901.00) | (160,901.00) |
| 04/18/18 | - | - | (272,404.00) | (272,404.00) |
| 04/20/18 | (100,000.00) | - | - | (100,000.00) |
| 04/23/18 | - | - | (109,917.00) | (109,917.00) |
| 04/27/18 | (50,000.00) | - | (109,179.00) | (159,179.00) |
| 05/08/18 | - | - | (237,420.00) | (237,420.00) |
| 05/10/18 | (100,000.00) | - | - | (100,000.00) |
| 05/14/18 | (70,000.00) | - | - | (70,000.00) |
| 05/18/18 | (150,000.00) | - | (1,785,964.10) | (1,935,964.10) |
| 05/25/18 | - | - | (361,646.00) | (361,646.00) |
| 05/29/18 | (100,000.00) | - | - | (100,000.00) |
| 05/30/18 | (100,000.00) | - | - | (100,000.00) |
| 06/01/18 | - | - | (338,314.00) | (338,314.00) |
| 06/04/18 | - | - | (585,200.00) | (585,200.00) |
| 06/07/18 | - | - | (707,820.00) | (707,820.00) |
| 06/12/18 | - | - | (552,297.00) | (552,297.00) |
| 06/15/18 | - | - | (673,090.00) | (673,090.00) |
| 06/19/18 | - | - | (619,119.60) | (619,119.60) |
| 06/22/18 | - | - | (233,080.00) | (233,080.00) |
| 06/26/18 | - | - | (553,565.00) | (553,565.00) |
| 06/29/18 | - | - | (514,360.00) | (514,360.00) |
| 07/05/18 | - | - | (672,520.00) | (672,520.00) |
| 07/09/18 | - | - | (158,746.50) | (158,746.50) |
| 07/10/18 | - | - | (375,360.00) | (375,360.00) |
| 07/13/18 | - | - | (178,841.70) | (178,841.70) |
| 07/16/18 | - | - | (110,111.60) | (110,111.60) |
| 07/17/18 | - | - | (279,744.00) | (279,744.00) |
| 07/20/18 | - | - | (246,393.00) | (246,393.00) |
| 07/23/18 | - | - | (146,212.50) | (146,212.50) |
| 07/24/18 | - | - | (151,944.00) | (151,944.00) |
| 07/25/18 | - | - | (117,410.00) | (117,410.00) |
| 07/26/18 | - | - | (262,057.50) | (262,057.50) |
| 07/31/18 | - | - | (467,560.00) | (467,560.00) |
| 05/02/19 | - | (18,829.30) | - | (18,829.30) |
| 05/30/19 | - | (35,630.58) | - | (35,630.58) |
| 07/01/19 | - | (109,465.34) | - | (109,465.34) |
| **Grand Total** | **$ (13,289,900.42)** | **$ (163,925.22)** | **$ (25,127,930.87)** | **$ (38,581,756.51)** |

| | | | | |
|---|---|---|---|---|
| **90-Day Total:** | $ - | $ - | $ - | $ - |
| **1-Year Total:** | $ (1,095,000.00) | $ - | $ (13,273,752.50) | $ (14,368,752.50) |
| **2-Year Total:** | $ (3,256,589.74) | $ - | $ (25,127,930.87) | $ (28,384,520.61) |
| **4-Year Total:** | $ (13,289,900.42) | $ - | $ (25,127,930.87) | $ (38,417,831.29) |
| **Post-Petition Total:** | $ - | $ (163,925.22) | $ - | $ (163,925.22) |

**Transfers to: Intelnetwork**

| | Bank Account: | |
|---|---|---|
| Date | DD_BoA_x5992 | Grand Total |
| 01/17/17 | (135,000.00) | (135,000.00) |
| 01/19/17 | (180,000.00) | (180,000.00) |
| 01/23/17 | (135,000.00) | (135,000.00) |
| 01/26/17 | (160,000.00) | (160,000.00) |
| 02/02/17 | (200,000.00) | (200,000.00) |
| 02/06/17 | (140,000.00) | (140,000.00) |
| 02/09/17 | (180,000.00) | (180,000.00) |
| 02/13/17 | (130,000.00) | (130,000.00) |
| 02/16/17 | (180,000.00) | (180,000.00) |
| 02/23/17 | (270,000.00) | (270,000.00) |
| 03/02/17 | (220,000.00) | (220,000.00) |
| 03/06/17 | (190,000.00) | (190,000.00) |
| 03/09/17 | (200,000.00) | (200,000.00) |
| 03/13/17 | (150,000.00) | (150,000.00) |
| 03/16/17 | (190,000.00) | (190,000.00) |
| 03/20/17 | (180,000.00) | (180,000.00) |
| 03/27/17 | (190,000.00) | (190,000.00) |
| 03/30/17 | (74,000.00) | (74,000.00) |
| 04/03/17 | (180,000.00) | (180,000.00) |
| 04/06/17 | (255,000.00) | (255,000.00) |
| 04/10/17 | (420,000.00) | (420,000.00) |
| 04/11/17 | (445,000.00) | (445,000.00) |
| 04/17/17 | (264,000.00) | (264,000.00) |
| 04/24/17 | (270,000.00) | (270,000.00) |
| 04/27/17 | (360,000.00) | (360,000.00) |
| 05/04/17 | (290,000.00) | (290,000.00) |
| 05/08/17 | (210,000.00) | (210,000.00) |
| 05/25/17 | (60,000.00) | (60,000.00) |
| 05/30/17 | (260,000.00) | (260,000.00) |
| 06/08/17 | (424,970.00) | (424,970.00) |
| 06/15/17 | (340,000.00) | (340,000.00) |
| 06/22/17 | (350,000.00) | (350,000.00) |
| 06/26/17 | (305,000.00) | (305,000.00) |
| 07/03/17 | (310,000.00) | (310,000.00) |
| 07/13/17 | (400,000.00) | (400,000.00) |
| 07/17/17 | (315,000.00) | (315,000.00) |
| 07/20/17 | (300,000.00) | (300,000.00) |
| 07/24/17 | (350,000.00) | (350,000.00) |
| 07/27/17 | (455,000.00) | (455,000.00) |
| 08/03/17 | (60,000.00) | (60,000.00) |
| 08/28/17 | (50,000.00) | (50,000.00) |
| 08/31/17 | (20,000.00) | (20,000.00) |
| 09/05/17 | (110,000.00) | (110,000.00) |
| 09/07/17 | (140,000.00) | (140,000.00) |
| 09/11/17 | (190,000.00) | (190,000.00) |
| 09/28/17 | (200,000.00) | (200,000.00) |
| 10/05/17 | (300,000.00) | (300,000.00) |
| 10/10/17 | (140,000.00) | (140,000.00) |
| 10/12/17 | (200,000.00) | (200,000.00) |
| 10/16/17 | (80,000.00) | (80,000.00) |
| 10/19/17 | (175,000.00) | (175,000.00) |
| 10/23/17 | (175,000.00) | (175,000.00) |
| 10/26/17 | (150,000.00) | (150,000.00) |
| 11/06/17 | (100,000.00) | (100,000.00) |

**EXHIBIT 26**

85

3/26/2021; 10:54 AM; 6

| Date | Bank Account: DD_BoA_x5992 | Grand Total |
|------|------|------|
| 11/09/17 | (60,000.00) | (60,000.00) |
| 11/16/17 | (60,000.00) | (60,000.00) |
| 11/20/17 | (50,000.00) | (50,000.00) |
| 12/08/17 | (75,000.00) | (75,000.00) |
| 12/21/17 | (50,000.00) | (50,000.00) |
| 01/25/18 | (150,000.00) | (150,000.00) |
| **Grand Total** | **$ (12,202,970.00)** | **$ (12,202,970.00)** |

| | | |
|------|------|------|
| **90-Day Total:** | $           - | $           - |
| **1-Year Total:** | $           - | $           - |
| **2-Year Total:** | $   (9,882,970.00) | $   (9,882,970.00) |
| **4-Year Total:** | $ (12,202,970.00) | $ (12,202,970.00) |
| **Post-Petition Total:** | $           - | $           - |

3/26/2021; 10:54 AM; 7

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**21650 Oxnard Street, Suite 500, Woodland Hills, CA 91367**.

A true and correct copy of the foregoing document entitled: **FIRST AMENDED COMPLAINT FOR:  1.  BREACH OF FIDUCIARY DUTY; 2.  AIDING AND ABETTING BREACH OF FIDUCIARY DUTY; 3.  AVOIDANCE OF 2-YEAR FRAUDULENT TRANSFERS (ACTUAL INTENT); 4. AVOIDANCE OF 2-YEAR FRAUDULENT TRANSFERS (CONSTRUCTIVE FRAUD); 5.  AVOIDANCE OF 4-YEAR FRAUDULENT TRANSFERS (ACTUAL INTENT); 6. AVOIDANCE OF 4-YEAR FRAUDULENT TRANSFERS (CONSTRUCTIVE FRAUD); 7.  AVOIDANCE OF PREFERENTIAL TRANSFERS; 8.  AVOIDANCE OF POSTPETITION TRANSFERS; 9.  RECOVERY OF AVOIDED TRANSFERS; 10.  BREACH OF CONTRACT; 11.  UNJUST ENRICHMENT; and 12.  CLAIM DISALLOWANCE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document.  On **March 31, 2021,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Michael I. Gottfried**    mgottfried@elkinskalt.com
- **Steven T Gubner**    sgubner@bg.law, ecf@bg.law
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Timothy Yoo (TR)**    tjytrustee@lnbyb.com, tjy@trustesolutions.net

☐    Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On **March 31, 2021,** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows.  Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**\*\*JUDGE'S COPY OF DOCUMENT UNDER 25 PAGES IS TEMPORARILY SUSPENDED (GENERAL ORDER 20-12).**

Honorable Barry Russell
United States Bankruptcy Court
Los Angeles Division
255 E. Temple Street, Suite 1660
Los Angeles, CA  90012-3332

☐    Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 31, 2021 | MELA ZEPEDA | /s/ Mela Zepeda |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**