**BAKER & HOSTETLER LLP**
David J. Richardson (SBN168592)
(drichardson@bakerlaw.com)
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509
Telephone: (310) 820-8800
Facsimile:  (310) 820-8859

and

Jorian L. Rose (*pro hac vice*)
(jrose@bakerlaw.com)
Jason I. Blanchard (*pro hac vice*)
(jblanchard@bakerlaw.com)
45 Rockefeller Plaza
New York, NY 90025-0509
Telephone: (212) 589-4200
Facsimile:  (212) 589-4201

*Counsel for Mark Proto, Youssef Rahman*
*aka Joe Rahman, Tarek Katit, Mudmonth, LLC,*
*Zoom Telecom, Inc., Tee Telecommunications Inc.,*
*2365 Azure LLC and Overseas Charters Inc.*

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| VOIP GUARDIAN PARTNERS I, LLC,<br><br>Debtor. | Case No.: 2:19-bk-12607-BR<br><br>Chapter 7 |
| TIMOTHY YOO, Chapter 7 Trustee,<br><br>Plaintiff,<br><br>v.<br><br>VOIP GUARDIAN LLC, *et al*.,<br><br>Defendants. | Adv. No. 2:21-ap-01044-BR<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Hearing Date: July 20, 2021<br>Time: 2:00 p.m.<br>Courtroom: 1668 |

**TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE, THE PLAINTIFF AND HIS COUNSEL, ALL NAMED DEFENDANTS AND THEIR COUNSEL, AND ALL PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE** that Mark Proto, Youssef Rahman aka Joe Rahman, Tarek Katit, Mudmonth, LLC, Zoom Telecom, Inc., Tee Telecommunications Inc., 2365 Azure LLC, and Overseas Charters, Inc. (collectively, the "Defendants"), all named as defendants in the *First Amended Complaint for: 1. Breach of Fiduciary Duty; 2. Aiding and Abetting Breach of Fiduciary Duty; 3. Avoidance of 2-Year Fraudulent Transfers (Actual Intent); 4. Avoidance of 2-Year Fraudulent Transfers (Constructive Fraud); 5. Avoidance of 4-Year Fraudulent Transfers (Actual Intent); 6. Avoidance of 4-Year Fraudulent Transfers (Constructive Fraud); 7. Avoidance of Preferential Transfers; 8. Avoidance of Postpetition Transfers; 9. Recovery of Avoided Transfers; 10. Breach of Contract; 11. Unjust Enrichment; and 12. Claim Disallowance* (the "FAC"), filed by the chapter 7 trustee Timothy Yoo (the "Trustee"), on March 31, 2021, hereby move by this motion (the "Motion") for entry of an order dismissing the FAC, and all claims therein pleaded against the Defendants, pursuant to Fed. R. Civ. P. 12(b)(6), applicable in bankruptcy adversary proceedings pursuant to Fed. R. Bank. P. 7012, on the grounds that the FAC fails to state a claim against any of the Defendants.

**PLEASE TAKE FURTHER NOTICE** that the Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities, and all documents in the record of the above-captioned adversary proceeding and chapter 7 bankruptcy case.

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Motion is scheduled to take place on July 20, 2021, at 2:00 p.m., in the United States Bankruptcy Court for the Central District of California, Los Angeles Division, Courtroom 1668, 255 East Temple St., Los Angeles, CA 90012.

**PLEASE TAKE FURTHER NOTICE** that, under current procedures, the hearing will be conducted remotely via videoconference through ZoomGov.  Further instructions regarding appearances via ZoomGov can be found on the Court's website at https://www.cacb.uscourts.gov/news/zoom-video-hearing-guide-and-training-participants.

**PLEASE TAKE FURTHER NOTICE** that pursuant to Local Bankruptcy Rule 9013-1, any opposition to the Motion must be filed with the Court and served no later than fourteen (14) days before the hearing date (i.e., July 6, 2021).

Dated:    May 17, 2021                    BAKER & HOSTETLER LLP

                                          By:    */s/ David J. Richardson*
                                                 David J. Richardson

                                          *Counsel for Mark Proto, Youssef Rahman aka Joe
                                          Rahman, Tarek Katit, Mudmonth, LLC, Zoom
                                          Telecom, Inc., Tee Telecommunications Inc., 2365
                                          Azure LLC, and Overseas Charters, Inc.*

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ...................................................................................... 1

II. FACTUAL BACKGROUND ....................................................................................... 2

    A.    Relevant Allegations from the FAC........................................................... 2

    B.    Moving Defendants and Related Allegations Pleaded in the FAC ...................... 4

III. LEGAL STANDARD .............................................................................................. 5

    1.    The Trustee's Claims for Relief Must Satisfy F.R.C.P. 8(a) and 9(b) ...................................................................................................... 5

    2.    Allegations of Information and Belief Pertaining to a Defendant's Control of a Corporation Are Insufficient to Create Liability ................... 6

    3.    Phrases that Merely Imply Material Allegations Are Insufficient to State a Claim ....................................................................................... 7

    4.    The Pleading Must Differentiate Between Multiple Defendants............... 8

IV. ARGUMENT ........................................................................................................ 9

    A.    Fiduciary Duty & Aiding and Abetting Fiduciary Duty Claims Should be Dismissed Because They Fail to Meet Pleading Standards Mandated by the Supreme Court and the Ninth Circuit................................................... 9

    1.    The "Who" Element Cannot Be Alleged On Information and Belief................................................................................................. 9

    2.    The "What" Element Requires Plausible Factual Allegations, Beyond Information and Belief.................................................................. 12

    3.    The Trustee's Claim for Aiding and Abetting Breach of Fiduciary Duty Cannot Survive a Motion to Dismiss ............................................... 15

    B.    The Trustee Fails to State Plausible Claims for the Avoidance and Recovery of Fraudulent Transfers or Preferences.................................... 18

    1.    The Trustee Does Not Sufficiently Allege Transfers of the Debtor's Property .......................................................................... 18

    2.    The Trustee's Allegations Fail to Apprise the Defendants of the Transfer-Related Claims Against Them .................................... 23

    3.    The Trustee Fails to Allege the Existence of a Triggering Creditor Under Section 544(b) of the Bankruptcy Code......................................... 26

    4.    The FAC's Section 549 Claim Fails on its Face to Allege a Transfer of Estate Property ........................................................ 26

5.    The Trustee Insufficiently Pleads Key Elements of his Claims to
      Avoid Preferential Transfers ..................................................................... 27

C.    The Newly Added Claims Against Overseas Charters Do Not Relate
      Back to the Original Complaint .............................................................. 29

1

2

## <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

4

**Cases**

5

*Acequia, Inc. v. Clinton (In re Acequia, Inc.),*
   34 F.3d 800 (9th Cir. 1994).................................................................................. 26

6

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009).................................................................................... 5, 7

7

8

*Barnett v. Martinez,*
   2010 U.S. Dist. LEXIS 60529, 2010 WL 2300984 (N.D. Cal. June 4, 2010) ......................... 7

9

10

*Begier v. IRS,*
   496 U.S. 53 (1990) ............................................................................................. 18

11

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007)........................................................................................... 7

12

13

*Binks v. DSL.net, Inc.,*
   2010 Del. Ch. LEXIS 98, 2010 WL 1713629 (Del. Ch. Apr. 29, 2010) ............................... 17

14

15

*Blantz v. Calif. Dep't of Corr. & Rehab.,*
   727 F.3d 917 (9th Cir. 2013).............................................................................. 7

16

17

*Bonded Fin. Servs., Inc. v. European Am. Bank,*
   838 F.2d 890 (7th Cir. 1988)............................................................................... 24

18

19

*Cede & Co. v. Technicolor,*
   634 A.2d 345 (Del. 1993) .................................................................................. 16

20

*Coles v. Bert Bell/Pete Rozelle NFL Player Ret. Plan,*
   2014 U.S. Dist. LEXIS 96017, 2014 WL 12617587 (M.D. Fla. June 18, 2014)..................... 8

21

22

*Collin v. First Am.,*
   2013 U.S. Dist. LEXIS 203600, 2013 WL 12419636 (C.D. Cal. Feb. 7, 2013)...................... 2

23

*Davidson v. Barstad (In re Barstad),*
   2019 Bankr. LEXIS 1803, 2019 WL 2479311 (Bankr. D. Mont. June 12, 2019) ................ 27

24

25

*Decker v. Advantage Fund Ltd.,*
   362 F.3d 593 (9th Cir. 2009)............................................................................. 20

26

*Fitzpatrick v. Allsup, Inc. (In re Stewart),*
   2014 Bankr. LEXIS 310, 2014 WL 294322 (Bankr. E.D. Tenn. Jan. 24, 2014) ................. 27

27

28

*Gerritsen v. Warner Bros. Entm't Inc.,*
   112 F. Supp. 3d 1011 (C.D. Cal. 2015) ................................................................ 24

*Globis Partners, L.P. v. Plumtree Software, Inc.*,
   2007 Del. Ch. LEXIS 169, 2007 WL 4292024 (Del. Ch. Nov. 30, 2007) ............................. 15

*Henry v. Official Comm. of Unsecured Creditors of Walldesign, Inc. (In re*
   *Walldesign, Inc.)*,
   872 F.3d 954 (9th Cir. 2017) .................................................................................... 24

*Hoffman v. Adelman (In re SCI Real Estate Invs., LLC)*,
   2013 Bankr. LEXIS 1780, 2013 WL 1829648 (Bankr. C.D. Cal. May 1, 2013) .............. 6, 25

*Husted v. Taggart (In re ECS Ref., Inc.)*,
   625 B.R. 425 (Bankr. E.D. Cal. 2020) ........................................................................ 29

*In re Bullion Res. of N. Am.*,
   922 F.2d 544 (9th Cir. 1991) ............................................................................... 24, 25

*In re Fedders N. Am., Inc.*,
   405 B.R. 527 (Bankr. D. Del. 2009) ............................................................................ 9

*In re NewStarcom Holdings, Inc.*,
   547 B.R. 106 (Bankr. D. Del. 2016) .......................................................................... 14

*In re PennySaver USA Publ'g, LLC*,
   587 B.R. 445 (Bankr. D. Del. 2018) ............................................................................ 9

*In re Teleglobe Commc'ns Corp.*,
   493 F.3d 345 (3d Cir. 2007) ...................................................................................... 9

*In re W.J. Bradley Mortg. Cap., LLC*,
   598 B.R. 150 (Bankr. D. Del. 2019) .......................................................................... 13

*J & J Sports Prods, Inc. v. Daley*,
   2007 U.S. Dist. LEXIS 49839, 2007 WL 7135707 (E.D.N.Y. Feb. 15, 2007) ..................... 10

*J & J Sports Prods., Inc. v. Mayreal II, LLC*,
   849 F. Supp. 2d 586 (D. Md. 2012) ............................................................................ 7

*Joe Hand Promotions, Inc. v. Md. Food & Entm't, LLC*,
   2012 U.S. Dist. LEXIS 165376, 2012 WL 5879127 (D. Md. Nov. 19, 2012) ..................... 10

*Krupski v. Costa Crociere S.p.A.*,
   560 U.S. 538 (2010) ................................................................................................ 30

*Leslie v. Bartamian (In re Mihranian)*,
   2017 Bankr. LEXIS 1802, 2017 WL 2775043 (9th Cir. BAP June 29, 2017) ............ 6, 19, 22

*Malpiede v. Townson*,
   780 A.2d 1075 (Del. 2001) ...................................................................................... 17

*Menzel v. Scholastic, Inc.*,
    2018 U.S. Dist. LEXIS 44833, 2018 WL 1400386 (N.D. Cal. Mar. 19, 2018)..................... 16

*Mitich v. Lehigh Valley Rest. Group, Inc.*,
    2012 U.S. Dist. LEXIS 176407, 2012 WL 6209952 (E.D. Pa. Dec. 12, 2012) ...................... 8

*Moore v. Kayport Package Express*,
    885 F.2d 531 (9th Cir. 1989)..................................................................................... 16

*Morgan v. Cash*,
    2010 Del. Ch. LEXIS 148, 2010 WL 2803746 (Del. Ch. July 16, 2010) ............................ 15

*Myoungchul Shin v. Uni-Caps, LLC*,
    2014 U.S. Dist. LEXIS 202049, 2014 WL 12853912 (C.D. Cal. Dec. 17, 2014) ................ 10

*Neilson v. Union Bank of California, N.A.*,
    290 F.Supp. 2d 1101 (C.D. Cal. 2003) ..........................................................*passim*

*Okla. Firefighters Pension & Ret. Sys. v. Corbat*,
    2017 Del. Ch. LEXIS 848, 2017 WL 6452240 (Del. Ch. Dec. 18, 2017) ........................... 16

*Oliver v. Boston Univ.*,
    2000 Del. Ch. LEXIS 104, 2000 WL 1091480 (Del. Ch. July 18, 2000) ............................ 17

*Puri v. Khalsa*,
    674 F. App'x 679 (9th Cir. 2017) ................................................................................. 17

*Rodriguez v. Cyr (In re Cyr)*,
    602 B.R. 315 (Bankr. W.D. Tex. 2019) ......................................................................... 8

*Screen Capital Int'l Corp. v. Library Asset Acquisition Co. (In re ThinkFilm, LLC)*,
    510 B.R. 266 (C.D. Cal. 2014)..................................................................................... 20

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    531 B.R. 439 (Bankr. S.D.N.Y. 2015) ..................................................................... 23, 24

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs.)*,
    379 B.R. 5 (Bankr. E.D.N.Y. 2007)................................................................................ 19

*Southmark Corp. v. Southmark Pers. Storage, Inc.*,
    138 B.R. 831 (Bankr. N.D. Tex. 1992) ......................................................................... 27

*Spice Jazz LLC v. Youngevity Int'l, Inc.*,
    2020 U.S. Dist. LEXIS 206327, 2020 WL 6484640 (S.D. Cal. Nov. 2, 2020) ..................... 17

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007)........................................................................................ 8

*Talece Inc. v. Zheng Zhang*,
   2020 U.S. Dist. LEXIS 196670, 2020 WL 6205241 (N.D. Cal. Oct. 22, 2020)...................... 5

*Uecker v. Wells Fargo Capital Fin. LLC (In re Mortg. Fund '08 LLC)*,
   2014 Bankr. LEXIS 562, 2014 WL 543685 (Bankr. N.D. Cal. Feb. 11, 2014)................. 6, 17

*Uecker v. Wells Fargo Capital Fin., LLC (In re Mortg. Fund '08 LLC)*,
   527 B.R. 351 (N.D. Cal. 2015) ........................................................................ 6, 17

*United States v. Corinthian Colleges*,
   655 F.3d 984 (9th Cir. 2011)............................................................................ 8, 14

*Vess v. Ciba–Geigy Corp.*,
   317 F.3d 1097 (9th Cir. 2003)................................................................... 5, 6, 9, 16

*Vivendi SA v. T-Mobile USA, Inc.*,
   586 F.3d 689 (9th Cir. 2009)............................................................................... 10

**Statutes**

11 U.S.C. § 101 ..................................................................................................... 28

11 U.S.C. § 101(5) ................................................................................................. 27

11 U.S.C. § 101(10) ............................................................................................... 27

11 U.S.C. § 502 ..................................................................................................... 26

11 U.S.C. § 544 ......................................................................................... 1, 18, 19

11 U.S.C. § 544(b) ............................................................................................ 18, 26

11 U.S.C. § 544(b)(1) ......................................................................................... 5, 18

11 U.S.C. § 546(a) ........................................................................................... 29, 30

11 U.S.C. § 547 ............................................................................................. *passim*

11 U.S.C. § 547(b) ................................................................................................. 29

11 U.S.C. § 547(b)(4)(A) ........................................................................................ 28

11 U.S.C. § 547(b)(4)(B) ........................................................................................ 28

11 U.S.C. § 547(c) ................................................................................................. 28

11 U.S.C. § 548 ........................................................................................... 1, 18

11 U.S.C. § 548(a)(1) ............................................................................................. 18

11 U.S.C. § 548(a)(1)(A) ..................................................................................... 5, 18

11 U.S.C. § 548(a)(1)(B) ......................................................................................... 5, 18

11 U.S.C. § 549 ................................................................................................... *passim*

11 U.S.C. § 549(a) ....................................................................................................... 18

11 U.S.C. § 550 ................................................................................................ 1, 18, 23

11 U.S.C. § 550(a) ....................................................................................................... 18

Small Business Reorganization Act of 2019, Pub. L. No. 116-54 § 3(a) ..................... 29

**Other Authorities**

Fed. R. Civ. P. 4(m) ..................................................................................................... 29

Fed. R. Civ. P. 8(a) ............................................................................................ 5, 6, 25

Fed. R. Civ. P. 8(a)(2) ................................................................................................... 7

Fed. R. Civ. P. 9 ........................................................................................................... 17

Fed. R. Civ. P. 9(b) ......................................................................................... 5, 6, 16, 17

Fed. R. Civ. P. 12(b) ............................................................................................... 5, 10

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 5, 6

Fed. R. Civ. P. 15 ......................................................................................................... 30

Fed. R. Civ. P. 15(c)(1)(C)(i)-(ii) ................................................................................. 30

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**PRELIMINARY STATEMENT**

The Trustee's FAC[1] weaves a lengthy tale about the Debtor's lost investments in the complex business of telecom factoring.  But the FAC's only means of connecting these Defendants to that tale is a series of conclusory allegations, stitched together on "information and belief," and frequently in conflict with the FAC's own Exhibits.  In fact, the Trustee seeks to avoid and recover from Defendants more than a hundred million dollars of transfers when the FAC's own Exhibits indicate these transfers did not come from the Debtor.

The Trustee has sued two of these Defendants for breach of fiduciary duties, yet pleads "on information and belief" that they are *either* officers or directors, *either* of the Debtor *and/or* its sole manager.  The most critical element of a claim for breach of fiduciary duty is a defendant who owes a fiduciary duty to the plaintiff, and yet the Trustee who has controlled this Debtor for two years is not able to confirm whether this Debtor even *has* a Board of Directors or that Defendants were officers.  In fact, the Debtor's chapter 7 petition shows the Defendants did not hold a director or officer role with the Debtor.  The breach of fiduciary duty claims fail to state claims for relief as all material allegations are either conclusory, alleged on information and belief, or merely suggested by defined terms that are meant to imply a factual allegation.

The Trustee's avoidance claims—brought under 11 U.S.C. §§ 544 (and state law), 547, 548, 549, and 550—fare no better against these Defendants.  The FAC repeatedly claims that the Defendants received the "Debtor's funds," as if use of a term carries legal significance.  But the Exhibits to the FAC, which list the challenged transfers, show that every transfer received by one of these Defendants came from a third-party bank account, or a source that the Trustee hasn't identified as the Debtor.  The Trustee retained forensic accountants to prepare litigation like the FAC, yet he is unable to allege with plausible facts the most material element of an avoidance claim—that the challenged transfers were the Debtor's property.  In fact, the Exhibits fail to show

---

[1]  Capitalized terms not defined in the Memo of P&As carry the meaning ascribed to them in the foregoing Motion.

- 1 -

that a single dollar was transferred either directly or indirectly to one of the Defendants from an account belonging to the Debtor.

The FAC's material flaws are not simply the result of a rushed effort to draft a complaint that meets complex pleading requirements. The FAC fails to state claims against these Defendants because it is based on a determination to sue individuals and entities who happen to be in the same industry as the Debtor, through their own, separate companies, and who happen to use some of the same intermediaries, such as the non-debtor entity whose accounts these challenged transfers flowed through. The Trustee's FAC does not state plausible claims with particularity, or even basic notice of the claims stated. It is a pleading based on "information and belief," conclusory statements, and character assassination in a deficient effort to state claims against these Defendants.

All claims for relief pleaded against these Defendants in the FAC should be dismissed.

## II.

## FACTUAL BACKGROUND[2]

### A.    Relevant Allegations from the FAC

This action arises from the bankruptcy of VoIP Guardian Partners I, LLC (the "Debtor"), a single-member limited liability company organized under Delaware law. ¶ 49. The Debtor's sole member, VoIP Guardian LLC ("Management Company"), is also a Delaware limited liability company, and a defendant in this action. ¶¶ 9, 147. The Debtor's chapter 7 petition explains that the Management Company is the Debtor's "Sole Member," and its respective Board of Managers also has a "sole manager."[3]    The Debtor's CEO and sole manager is Rodney Omanoff ("Omanoff").[4] ¶ 10.

---

[2] The facts set forth below are taken from the allegations in the First Amended Complaint ("FAC") and the documents attached to the FAC as exhibits, which the Defendants have accepted as true for the purpose of this motion. All "¶" citations are to paragraphs of the FAC.

[3] *See* Docket No. 1 in the Debtor's chapter 7 case, Case No.: 2:19-bk-12607-BR (the "Debtor's Main Case"), at p. 5. Movants request that this Court take judicial notice of the contents of the Debtor's petition, and all other cited entries on the docket of the Debtor's Main Case cited herein, which this Court may do under applicable law. *Collin v. First Am.*, 2013 U.S. Dist. LEXIS 203600, *3 n.3, 2013 WL 12419636, *1 n.3 (C.D. Cal. Feb. 7, 2013) (taking judicial notice of chapter 7 petition and bankruptcy court docket as "matters of public record, the accuracy of which cannot reasonably be questioned").

[4] *See* Debtor's chapter 7 petition at p. 5 (Debtor's Main Case, Docket No. 1).

The FAC does *not* allege that the Debtor actually *has* a Board of Directors, or any specific officers identified by duties or titles, other than Omanoff.

Before filing for bankruptcy, the Debtor operated a global, telecommunications factoring business. ¶ 50. It primarily purchased accounts receivable of small, regional telecommunications companies, referred to as Tier 3 providers, payable by major, nationally recognized telecommunication companies, referred to as Tier 1 providers. ¶¶ 50, 51. The Debtor would advance funds to the Tier 3 providers for an amount less than the face value of the receivables. ¶ 51. Upon collection of receivables from Tier 1 providers, the Debtor would profit on the difference. ¶ 54. The Debtor largely financed its factoring business with a revolving credit facility provided by Direct Lending Investments ("DLI"), collateralized by the accounts receivable the Debtor purchased.[5] Ultimately, the Debtor's downfall was caused primarily by an improvident business decision to finance two Tier 3 providers, namely Najd Technologies Limited ("Najd") and Telacme Limited ("Telacme"). *See* ¶¶ 65, 66, 67. The Trustee attributes that decision to Omanoff. *See* ¶ 65. Additionally, the Trustee speculates "*on information and belief*" (emphasis added) that (i) "Najd and Telacme were created by Omanoff, Proto, and/or Rahman with the assistance of others, they were not legitimate Tier 3 operating entities, and their purpose was to generate the appearance of profits and a return of investment to DLI in order to secure greater investment by DLI" and (ii) "Rahman used his Company Zoom-Tel to create the appearance of millions of minutes of calls that, in reality, did not exist." ¶ 89.

Despite such allegations and some of the terminology used in the FAC, the Trustee has *not* sued any of the named Defendants for fraud. Instead, such allegations appear intended to support claims against Mark Proto ("Proto") and Youssef Rahman ("Rahman") for breach of fiduciary duties, or aiding and abetting thereof. However, despite having had two full years as Trustee to take discovery into such issues—and despite contrary evidence on the docket of this case—the Trustee's FAC alleges "*on information and belief*" (emphasis added) that Proto and Rahman were "directors" of a Board that isn't actually alleged to exist, "**or** officers" (emphasis added), of either

---

[5] *See* Debtor's chapter 7 petition at p. 23 (Debtor's Main Case, Docket No. 1); *Motion to Approve Second Stipulation Between Chapter 7 Trustee and Receiver for the Estate of Direct Lending Income Fund LP* at pp. 3-4 (Debtor's Main Case, Docket No. 114).

the Debtor "**and/or**" Management Company (emphasis added), without alleging any titles or duties. ¶¶ 18, 19, 49.

The Trustee further alleges in the FAC that Proto and Rahman both had extensive experience in the same industry as the Debtor.  ¶ 56.  Yet the FAC pleads fraudulent transfer and preference claims against both Proto and Rahman, and their respective companies, to funds that they received from certain accounts belonging to third-parties—not the Debtors' accounts—alleging only vaguely, and without factual support, that such funds were "Debtor funds."[6, 7]  *See, e.g.,* ¶¶ 118, 126, 133, 139.

## B.    Moving Defendants and Related Allegations Pleaded in the FAC

Mudmonth, LLC ("Mudmonth") is a Nevada limited liability company owned by Proto. ¶ 14.  Mudmonth holds a 40% membership interest in the Management Company.  *Id.*  Zoom Telecom, Inc. ("Zoom-Tel") is a Nevada corporation, which, according to the FAC, served as the "technology component" for the Debtor's operations, and enabled the Debtor to manage call traffic and vet the receivables the Debtor purchased.  ¶ 56.  Rahman is the President and a director of Zoom-Tel.  ¶ 20.  Tee Telecommunications Inc. ("Tee-Tel") is a New Jersey Corporation owned by Tarek Katit ("Katit").  ¶ 42.  Katit is also the sole member and manager of 2365 Azure LLC ("2365 Azure"), a Florida limited liability company, ¶¶ 43, 132, and the president, and a director and officer of Overseas Charters Inc. ("Overseas Charters"), a Florida corporation.  ¶¶ 44, 138. Proto, Rahman, Katit, Mudmonth, Zoom-Tel, Tee-Tel, 2365 Azure, and Overseas Charters are collectively referred to herein as the Defendants.  Arco Telecom Limited ("Arco Telecom")[8] is an entity domiciled in Gibraltar.  ¶ 41.  Neither the Defendants nor Arco Telecom are identified in the Trustee's FAC as Tier 1 or Tier 3 providers.

---

[6] *See* Exs. 11, 12, 14, , 17, 18, 19, 22 (identifying transfers allegedly made from three "DD" bank accounts, DD_BoA_x5992, DD_FR_x2496 and DD_Citi_x2588).

[7] *See* Exs. 12, 14, (identifying transfers allegedly made from a bank account labeled VG_FR_x6441).  The Debtor did not list an ownership interest in this account in its bankruptcy schedules.  *See* Debtor's chapter 7 petition at p. 15 (Debtor's Main Case, Docket No. 1).

[8] By the FAC, the Trustee seeks to hold Proto jointly and severally liable for all transfers to Arco Telecom. ¶¶ 127, 163.  This Motion is brought solely in response to the Trustee's claims against the Defendants, not Arco Telecom.

The Trustee asserts the following claims against the Defendants: (1) breach of fiduciary duty (Proto, Rahman); (2) aiding and abetting breach of fiduciary duty (Proto, Rahman, Zoom-Tel; (3) avoidance of actual-intent fraudulent transfers under 11 U.S.C. § 548(a)(1)(A) (Proto, Mudmonth, Zoom-Tel, Tee-Tel); (4) avoidance of constructively fraudulent transfers under 11 U.S.C. § 548(a)(1)(B) (Proto, Mudmonth, Zoom-Tel, Tee-Tel); (5) avoidance of actual-intent fraudulent transfers under 11 U.S.C. § 544(b)(1) and California law (Proto, Mudmonth, Zoom-Tel, Katit, Tee-Tel, 2365 Azure, Overseas Charters); (6) avoidance of constructively fraudulent transfers under 11 U.S.C. § 544(b)(1) and California law (Proto, Mudmonth, Zoom-Tel, Katit, Tee-Tel, 2365 Azure, Overseas Charters); (7) avoidance of preferential transfers under 11 U.S.C. § 547 (Proto, Mudmonth, Zoom-Tel); (8) avoidance of post-petition transfers under 11 U.S.C. § 549 (Proto, Tee-Tel); and (9) recovery of avoided transfers under the Bankruptcy Code and California law (Proto, Mudmonth, Zoom-Tel, Katit, Tee-Tel, 2365 Azure, Overseas Charters).

**III.**

**LEGAL STANDARD**

It is well-established that in order to survive a Rule 12(b) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  But the principle that allegations are "accepted as true" for purposes of a Rule 12(b)(6) motion has certain well-established boundaries— boundaries that the Trustee's FAC has crossed throughout its allegations.

**1.**  **The Trustee's Claims for Relief Must Satisfy F.R.C.P. 8(a) and 9(b)**

All of the Trustee's claims arise from allegations of fraudulent transfers or breaches of fiduciary duties, based on actual fraud or fraudulent conduct, which must be pleaded with specificity, whether under a notice standard of F.R.C.P. 8(a) that requires detailed allegations that the transferred property belonged to the Debtor, or the heightened particularity standard of F.R.C.P. 9(b). *Vess v. Ciba–Geigy Corp.*, 317 F.3d 1097, 1103-04 (9th Cir. 2003) (where a complaint pleads "a unified course of fraudulent conduct … the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)"); *Talece Inc. v. Zheng Zhang*, 2020 U.S. Dist. LEXIS

1  196670, *9-10, 2020 WL 6205241, *4 (N.D. Cal. Oct. 22, 2020) (breach of fiduciary duty claim

2  "sounding in fraud [] is subject to the heightened pleading standards.") (internal quotations

3  omitted); *Neilson v. Union Bank of California, N.A.*, 290 F.Supp. 2d 1101, 1119-20 (C.D. Cal.

4  2003) (applying Rule 9(b) to claim for aiding and abetting breach of fiduciary duty); *Hoffman v.*

5  *Adelman (In re SCI Real Estate Invs., LLC)*, 2013 Bankr. LEXIS 1780, *12-13, 2013 WL 1829648,

6  *3 (Bankr. C.D. Cal. May 1, 2013) (applying Rule 9(b) to fraudulent transfers claims); *Uecker v.*

7  *Wells Fargo Capital Fin. LLC (In re Mortg. Fund '08 LLC)*, 2014 Bankr. LEXIS 562, *34-37, 2014

8  WL 543685, *10 (Bankr. N.D. Cal. Feb. 11, 2014) (applying 9(b) to aiding and abetting breach of

9  fiduciary duty claim), *aff'd Uecker v. Wells Fargo Capital Fin., LLC (In re Mortg. Fund '08 LLC)*,

10  527 B.R. 351 (N.D. Cal. 2015).  To meet the Rule 9(b) pleading threshold, such claims must plead

11  "the who, what, when, where, and how of the misconduct charged." *Vess*, 317 F.3d at 1106.

12       As the Bankruptcy Appellate Panel for the Ninth Circuit has explained, avoidance claims

13  require a level of particularity—at least with respect to detailed and plausible allegations that the

14  transferred property was property of the debtor—whether the court finds that the applicable

15  standard arises under Rule 8(a) or Rule 9(b).  *See Leslie v. Bartamian (In re Mihranian)*, 2017

16  Bankr. LEXIS 1802, *18-19, 2017 WL 2775043, *8 (9th Cir. BAP June 29, 2017) (finding that

17  "what Civil Rule 8(a) requires and what Civil Rule 9(b) would require [for trustee's avoidance

18  claims] largely overlap").

19       As addressed below, the Trustee's FAC fails to plead the necessary elements of "who, what,

20  when, where, and how" with sufficient particularity and requisite plausibility to properly plead any

21  claims against these Defendants.

2. **Allegations of Information and Belief Pertaining to a Defendant's Control of
   a Corporation Are Insufficient to Create Liability**

24       The vast majority of the FAC's material allegations against these Defendants are made on

25  "information and belief."  In total, the FAC asserts allegations on "information and belief" eighty-

26  five (85) times, for critical allegations such as control and liability, while still more allegations are

27  pleaded with conclusory terms that are meant to imply certain facts.  For purposes of a Rule 12(b)(6)

28  motion, such conclusory allegations, and allegations made solely on "information and belief,"

1   cannot properly state the Complaint's causes of action without a statement of facts that support the

2   presumptions made on information and belief.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

3   551 (2007) (declining to take as true the conclusory allegation "upon information and belief" that

4   the companies had entered a conspiracy without enough facts to make that statement plausible); *see*

5   *also Blantz v. Calif. Dep't of Corr. & Rehab.*, 727 F.3d 917, 927 (9th Cir. 2013) (considering

6   unsupported allegations made on information and belief to be "naked" and "conclusory" and

7   patently insufficient to survive a motion to dismiss).

8       Allegations of corporate control, such as a defendant's alleged role as an officer, director,

9   or other control person, are insufficient where they are made on "information and belief." *J & J*

10  *Sports Prods., Inc. v. Mayreal II, LLC*, 849 F. Supp. 2d 586, 592 (D. Md. 2012) (applying *Iqbal*

11  and *Twombly, infra,* to dismiss complaint where it alleged on "information and belief" that

12  defendants were "officer[s], director[s], shareholder[s], employee[s], agent[s], and/or other

13  representative[s]" of corporate defendant).

14      These standards exist to protect defendants against complaints—like the Trustee's FAC—

15  that use speculation or conclusory allegations, rather than plausible facts.  *Twombly*, 500 U.S. at

16  555 ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely

17  creates a suspicion [of] a legally cognizable right of action").  "Threadbare recitals of the elements

18  of a cause of action, supported by mere conclusory statements" are therefore insufficient to

19  withstand a motion to dismiss.  *Iqbal*, 556 U.S. at 678; Fed. R. Civ. P. 8(a)(2) (requiring that

20  complaints contain a "short and plain statement of the claim showing that the pleader is entitled to

21  relief.").  The FAC's misuse of conclusory allegations made on "information and belief" to plead

22  material elements of claims does not satisfy this standard.

23      **3.    Phrases that Merely Imply Material Allegations Are Insufficient to State a
       Claim**

24

25      In addition to the insufficiency of conclusory allegations, or allegations made solely on

26  information and belief, a claim for relief cannot be stated where material allegations are alleged by

27  mere implication.  *Barnett v. Martinez*, 2010 U.S. Dist. LEXIS 60529, *9, 2010 WL 2300984, *3

28  (N.D. Cal. June 4, 2010) (dismissing claims against defendants by implication rather than specific

factual allegations, following *Iqbal* for principle that "[c]auses of action are not alleged by implication"); *see also Coles v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 2014 U.S. Dist. LEXIS 96017, *11, 2014 WL 12617587, *3 (M.D. Fla. June 18, 2014) (dismissing claim where plaintiff "implicitly claims" material allegation); *Mitich v. Lehigh Valley Rest. Group, Inc*., 2012 U.S. Dist. LEXIS 176407, *25, 2012 WL 6209952 (E.D. Pa. Dec. 12, 2012) (dismissing complaint where plaintiff "pled by implication" a "necessary allegation" rather than allege specific facts).[9]

For example, the necessary allegation for any avoidance claim that the transferred property be property of the debtor cannot be pleaded by use of a defined term such as "Debtor's funds," or mere suggestion in the complaint's language, but requires detailed allegations that satisfy the *Iqbal/Twombly* pleading standards. *See, e.g. Rodriguez v. Cyr (In re Cyr)*, 602 B.R. 315, 339-40 (Bankr. W.D. Tex. 2019) (dismissing trustee's 548 avoidance claims for failing to allege specific facts to show debtor's interest in transferred property).

### 4.    The Pleading Must Differentiate Between Multiple Defendants

Necessary pleading standards must be satisfied with respect to each defendant.  Where there are multiple defendants, the complaint must differentiate its allegations as to each.  *United States v. Corinthian Colleges*, 655 F.3d 984, 997-98 (9th Cir. 2011) ("'Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'") (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007)).  As explained below, the FAC does not meet this standard.

The FAC—which is mired in conclusory allegations, ambiguity, contradictory claims, and group pleading—does not satisfy any of the applicable pleading standards, to the point that it raises questions about whether it has been filed in good faith against these Defendants.  It lacks sufficient facts, it relies on "information and belief" allegations for material elements, and it lacks particularity as to each of the asserted claims.  The FAC is fatally deficient and should be dismissed.

---

[9] The Westlaw cite for this case only includes the court's Order, not its Opinion, which is part of the LEXIS cite.

# IV.

## ARGUMENT

**A.     Fiduciary Duty & Aiding and Abetting Fiduciary Duty Claims Should be Dismissed Because They Fail to Meet Pleading Standards Mandated by the Supreme Court and the Ninth Circuit**

To state a proper claim for breach of fiduciary duty, "the Trustee's FAC must plead sufficient facts to support a plausible claim of both (1) the existence of a fiduciary duty, and (2) that the fiduciary breached that duty." *In re PennySaver USA Publ'g, LLC*, 587 B.R. 445, 464 (Bankr. D. Del. 2018).[10]  Thus, with respect to the principle cited above requiring that a plaintiff plead "the who, what, when, where, and how of the misconduct charged," *Vess*, 317 F.3d at 1106, it is the "who" (does the defendant owe a fiduciary duty) and "what" (what did the defendant do to breach that duty) allegations that are most critical to the two required elements of a breach of fiduciary duty claim.  The Trustee's FAC fails to plead either in any manner other than conclusory allegations made on "information and belief."

### 1.     The "Who" Element Cannot Be Alleged On Information and Belief

The most critical element of a fiduciary duty claim is that the defendant is someone who actually owed a fiduciary duty to the plaintiff. *PennySaver*, 587 B.R. at 464.  Plausible allegations that meet this standard might cite to Board minutes or corporate records showing that the defendant was a Director, or had been appointed to serve as a particular officer—or even to show that the debtor actually *had* a Board of Directors.  But because all such records say otherwise in this case, the FAC has ignored all evidence to the contrary, and instead has taken the bold step of asserting a fiduciary duty claim against Proto and Rahman solely on "information and belief."

The FAC attempts to plead the material allegation that Proto and Rahman owed a fiduciary duty to the Debtor by alleging on "information and belief" that Proto and Rahman are each "a

---

[10] The Trustee's breach of fiduciary duty claim is governed by Delaware law. *See In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 386 (3d Cir. 2007) ("Under the internal affairs doctrine, anyone controlling a Delaware corporation is subject to Delaware law on fiduciary obligations to the corporation and other relevant stakeholders."); *In re Fedders N. Am., Inc.*, 405 B.R. 527, 539 (Bankr. D. Del. 2009) ("[F]ew, if any, claims are more central to a corporation's internal affairs than those relating to alleged breaches of fiduciary duties by a corporation's directors and officers.").

1    director or officer of the Debtor." ¶¶ 4, 18, 19 (emphasis added). [11]    The FAC later alleges that

2    these possible roles were either for the Debtor "and/or the Management Company."  *Id*. ¶ 49

3    (emphasis added).  Nowhere in the FAC does the Trustee ever support these conclusory allegations

4    with any detailed factual allegations that could state a proper fiduciary duty claim.

5         Conclusory allegations on "information and belief" of the existence of a fiduciary duty or

6    other basis for individual liability are insufficient to survive a Rule 12(b) motion.  *See Vivendi SA*

7    *v. T-Mobile USA, Inc.*, 586 F.3d 689, 694 (9th Cir. 2009) (following *Iqbal* and *Twombly*, allegations

8    made "on information and belief" that defendant "conducted business" at a company were

9    insufficient to survive a motion to dismiss in the absence of specific allegations of fact about the

10    individual's actions at the company); *Myoungchul Shin v. Uni-Caps, LLC*, 2014 U.S. Dist. LEXIS

11    202049, *8-9, 2014 WL 12853912, *2-3 (C.D. Cal. Dec. 17, 2014) (following *Vivendi*, granting

12    motion to dismiss where allegations on "information and belief" that individual defendants

13    "exercised control over" the entity's employment relationships were insufficient to properly plead

14    liability); *Joe Hand Promotions, Inc. v. Md. Food & Entm't, LLC*, 2012 U.S. Dist. LEXIS 165376,

15    *9-10, 2012 WL 5879127, *3 (D. Md. Nov. 19, 2012) (granting motion to dismiss claims where

16    defendants' individual liability was alleged on "information and belief" that they were "officer[s],

17    director[s], shareholder[s], employee[s], agent[s], and/or other representative[s]" of corporate

18    defendant); *see also J & J Sports Prods, Inc. v. Daley*,  2007 U.S. Dist. LEXIS 49839, *9-10, 2007

19    WL 7135707, *3-4 (E.D.N.Y. Feb. 15, 2007) (on default request, "generalized allegations" that an

20    individual defendant was an "officer, director, shareholder and/or principal" were insufficient

21    because "[t]he description is disjunctive, and there is nothing in the record to demonstrate which of

22    those various positions, if any, [the individual defendant] actually held.").

23         The FAC's allegations regarding Proto and Rahman are pleaded in the disjunctive, without

24    any suggestion as to what position they are alleged to have held, either for the Debtor or the

25    Management Company, when, or with what authority.  As briefed below, this isn't just fatal to

26    pleading the first element of the claim (who owed a fiduciary duty), but also is fatal to the second

27

28    _____
[11] Notably, in paragraphs 4, 18, and 19, the FAC makes the allegation "on information and belief"
but by paragraphs 49, 66, 116, and 166 this has morphed into a conclusory assertion of fact.

(was the duty breached).  Nowhere in the FAC does the Trustee allege any specific facts to support these baseless allegations—not a single Board meeting or minute, no Board authorization, and no letters or emails confirming the alleged status, let alone the actual *existence* of a Board of Directors.

The FAC is also completely deficient of any allegations to show that Proto or Rahman actually exercised any authority or control over the Debtor concerning purportedly poor business transactions with Tier 3 telecom companies, other than by a chain of "information and belief" allegations that attempt to characterize Proto and Rahman in a conclusory manner as "key players." ¶ 55.  The closest the Trustee comes to specific factual allegations against Proto and Rahman is the ridiculous claim that Proto and Rahman—who have <u>never</u> received any discovery demands or Rule 2004 exam order from the Trustee— "have provided no documentation" to explain an allegedly questionable business transaction of the Debtor that has no stated connection to either of them. ¶ 96.  This apparent attempt to suggest wrongdoing by implication fails to meet the most basic good faith pleading standard.

The Debtor's chapter 7 petition states on its face that the entity is managed by a "Sole Member," which in turn has a "sole manager," neither of which are Proto or Rahman.[12]  The Trustee has had two years to take discovery into the most basic issues of corporate governance, such as whether the Debtor *even had* a Board of Directors or officers, but has taken <u>none</u>.  Instead, he has seen fit to file a FAC that alleges director <u>or</u> officer status, for <u>either</u> the Debtor or its manager, solely on *information and belief*, contrary to the Debtors' own chapter 7 petition, and then attempts to excuse such insufficient allegations by blaming Proto and Rahman for not producing documents in response to non-existent discovery.  These are not the allegations of an outside third party that has no access to the Debtor's business records.  These are the Trustee's allegations after two years of being in charge of the Debtor's estate.

Proto and Rahman know that they were neither directors nor officers of the Debtor, yet they are having to respond to a FAC built on nothing more than information and belief, and implausible allegations that are contrary to all evidence admissible by judicial notice.  Proto and Rahman are entitled to proper and particular notice of how it could be that they held such positions, *which*

---

[12] *See* Debtor's chapter 7 petition at p. 5 (Debtor's Main Case, Docket No. 1).

positions they allegedly held and for which entities, *what* responsibilities they fulfilled in such positions, and *how* they were deemed to be operating in a fiduciary capacity.  The FAC makes no attempt to provide such notice, and must fail for that reason.[13]

### 2.    The "What" Element Requires Plausible Factual Allegations, Beyond Information and Belief

In addition to properly and plausibly alleging that Proto and Rahman owed the Debtor a fiduciary duty, the Trustee must plead <u>facts</u> that establish a plausible theory for violation of that duty by that *same* defendant.  *PennySaver*, 587 B.R. at 464.  But none of the allegations in the FAC describing supposed violations of fiduciary duties are connected to Proto or Rahman by any plausible or detailed facts.  Instead, there are only conclusory statements that are entirely lacking in requisite detail, or yet more allegations made on information and belief.

The FAC pleads a general theory of a failed business, propelled into bankruptcy by the insolvency of its own creditors, which by implication must be the fault of people like Proto and Rahman, who *might* have held some uncertain position of control over the Debtor because … well, there is no "because," as there are no plausible facts alleged in the FAC that further this line of allegation.  It is a crumbling foundation of implication, conclusory statements, and allegations made on information and belief.

For example, the FAC's 163 paragraphs of allegations preceding the Claims for Relief contain only twenty-one (21) paragraphs in which the Trustee makes any allegations that specifically name Proto.  Twelve (12) of those paragraphs are allegations made on "information and belief," going to an alleged D&O position (¶¶ 4, 18), ownership or creation of other entities (¶¶ 41, 89, 124, 125, 131), involvement in or receipt of transfers (¶ 4), vaguely being involved in "other business connections" affecting the Debtor's assets (¶ 145), and being "associate[ed]" with certain other defendants or individuals, or alleged alter egos (¶¶ 72, 79, 156, 157).

---

[13] The Trustee cannot fix these flaws by amendment, for the simple reason that Proto and Rahman were <u>not</u> officers or directors of the Debtor, or its management company, and did not operate in any capacity that could have created a fiduciary duty to the Debtor.  It is inconceivable that the Trustee does not have evidence of who occupied officer or director positions with the Debtor after two years of running this case, such that he could make proper allegations of liability with good faith.  His reliance on "information and belief" allegations for this material allegation within the Debtor's own knowledge and information is particularly troubling.

The other nine (9) paragraphs are allegations made without reference to the phrase "information and belief," but they are conclusory allegations that fail to state plausible facts going to "what" Proto is alleged to have done. One claims that he is a director or officer of the Debtor or its manager without an "information and belief" limitation (¶ 49). One alleges his ownership of Mudmonth (¶ 14). One describes his experience in the telecom industry (¶ 56). Some merely allege the element of a claim in a conclusory manner (¶¶ 126, 127, 154). Another complains that he hasn't produced documents (without mentioning that the Trustee never took discovery) (¶ 96). The rest are conclusory statements that he was a "key player" or committed "fraud" or "extreme negligence" by "taking no reasonable measures to secure" the Debtor's investments, without any factual allegations that support such conclusory statements (¶ 55, 66).

The allegations concerning Rahman are identical—indeed, most of the paragraphs cited above either make the same "information and belief" allegations against Rahman (¶¶ 4, 19, 72, 79, 89, 134, 156, 157), merely state the element of a claim (¶¶ 130, 154), or simply lump Proto and Rahman together in the same conclusory statements (¶¶ 49, 55, 56, 66, 96). The only difference is the identity of the companies that Rahman is alleged to own or be associated with (¶¶ 20, 128).

*Nowhere* in the FAC does the Trustee *ever* lay out specific and detailed allegations describing what it is that Proto or Rahman are supposed to have done to violate a fiduciary duty, or how it is that either of them even *had* a fiduciary duty to the Debtor. Did they approve a poor corporate strategy at a Board meeting? Did they implement a bad investment strategy in a specific officer/director capacity that the Trustee can allege with particularity? The FAC does not contain any specific allegations of this type for the simple reason that neither Proto nor Rahman held any position of authority of control with the Debtor, either as a director and/or officer, of either the Debtor and/or Management Company.

Under Delaware law, which applies to these claims, a claim for breach of duty of loyalty must allege acts of self-dealing or allegations of personal gain, but the Trustee has failed to allege any such facts against Proto or Rahman for the simple reason that he cannot. This omission alone is fatal to the claims. *In re W.J. Bradley Mortg. Cap., LLC*, 598 B.R. 150, 162–63 (Bankr. D. Del. 2019) ("A sufficiently pled claim for breach of the duty of loyalty requires plaintiff to allege facts

showing that a self-interested transaction occurred, and that the transaction was unfair to the plaintiffs.") (internal quotations omitted).

To the extent the Trustee is pleading claims for breach of the fiduciary duty of care, even assuming *arguendo* that he could plausibly allege that Rahman and Proto were officers of the Debtor—which they were not—the Trustee cannot plead a claim for breach of the duty of care because it hinges on specificity about each defendant's "sphere of authority."  A defendant can only be liable for a breach of duty of care for matters that fell within that defendant's "sphere of authority."  *In re NewStarcom Holdings, Inc.*, 547 B.R. 106 (Bankr. D. Del. 2016).  Thus, for example, "the Court may not hold an officer responsible for his firm's financial decisions when that officer had no hand in making those decisions." *Id*.  Here, in addition to being unable to decide whether he thinks Proto and Rahman were officers *or* directors, let alone of which entity, the Trustee has failed to even attempt to allege the nature of responsibilities that Proto or Rahman *would* have had *if* they had been officers of the Debtor.  Instead, he resorts to conclusory allegations that they were "key players," an allegation that is never backed up with a single, specific fact. ¶ 55.  The Trustee's inability to allege actual duties, or any "sphere of authority," of Proto and Rahman, who only held unspecified positions with the Debtor "on information and belief," is a fatal flaw to the FAC's fiduciary duty claim.

The FAC's reliance on conclusory phrases—such as calling Proto/Rahman "key players" in a lengthy list of defendants who allegedly had *something* to do with poor business decisions—does not meet the requisite pleading standards.  Group pleading, by simply lumping together Proto and Rahman's names with the names of a few other defendants, and alleging in a conclusory manner that they all must have made certain business decisions, is an improper pleading tactic *even if* the Trustee could have properly alleged that all such defendants actually held any particular positions of authority over the Debtor.  *Corinthian Colleges*, 655 F.3d at 997-98.

The FAC fails to plead a breach of fiduciary duty claim against Proto and Rahman, for multiple, fatal failures, and must be dismissed.

### 3.    The Trustee's Claim for Aiding and Abetting Breach of Fiduciary Duty Cannot Survive a Motion to Dismiss

Likely because he knows that he will never be able to properly allege that either Proto or Rahman owed any fiduciary duty to the Debtor, the FAC also pleads a claim against both defendants, and additional defendant Zoom-Tel, for aiding and abetting another's breach of their fiduciary duty.[14] This claim fares no better.

As with the primary claim, the FAC does not allege what actions Proto, Rahman, or Zoom-Tel are supposed to have carried out to aid or abet a breach of fiduciary duties, other than in a conclusory manner. In the case of Proto and Rahman, the claim is based primarily on the same deficient allegations described above, none of which allege with any specificity how Proto or Rahman aided or abetted the breach of fiduciary duties by another. Instead, the Trustee merely alleges that they were "acting in concert" with other individuals or entities (¶¶ 156, 157), or, on "information and belief," they might have been the people who formed certain corporations (¶ 89).

The Trustee pleads two paragraphs that are clearly intended to state an aiding and abetting claim. But both are merely conclusory in nature, and mistakenly state principles of Delaware law that _only_ apply to fiduciaries, not those alleged with aiding and abetting fiduciaries. In the first, the Trustee alleges that:

> Proto, Rahman, Zoom-Tel, Philipson, and each of them, provided material assistance and aided Omanoff in breaching his fiduciary duties by, among other things: (a) **[i]gnoring red flags** associated with Tier 1 and Tier 3 entities with whom the Debtor conducted business; [and] (b) **[c]reating situations where the aiders and abettors were on both sides of the transaction** having interests in or representing both the Debtor and/or the Tier I [sic] and Tier 3 partners, including providing Tier 3 partners to transact business with the Debtor and owning interests in some of these Tier 3 partners.

---

[14] To state a claim for aiding and abetting a breach of fiduciary duty, the Trustee must allege specific facts in a non-conclusory manner that, if true, would demonstrate "(1) the existence of a fiduciary relationship; (2) the fiduciary breached its duty; (3) a defendant, who is not a fiduciary, knowingly participated in a breach; and (4) damages to the plaintiff resulted from the concerted action of the fiduciary and the nonfiduciary." _Globis Partners, L.P. v. Plumtree Software, Inc.,_ 2007 Del. Ch. LEXIS 169, *55, 2007 WL 4292024, * 15 (Del. Ch. Nov. 30, 2007).; _see Morgan v. Cash,_ 2010 Del. Ch. LEXIS 148, *14, 2010 WL 2803746, *4 (Del. Ch. July 16, 2010) ("'[I]t is necessary that the plaintiffs make factual allegations from which knowing participation may be inferred in order to survive a motion to dismiss.'") (alteration in original) (citation omitted).

¶ 174 (emphasis added).  Aside from being conclusory, these are not aiding and abetting allegations.

Rather, the Trustee has stated elements of breach of fiduciary duty claims against directors for duty

of care, or duty of loyalty, under Delaware law.  *See, e.g., Okla. Firefighters Pension & Ret. Sys.*

*v. Corbat*, 2017 Del. Ch. LEXIS 848, *46-47, 2017 WL 6452240, *15 (Del. Ch. Dec. 18, 2017)

(citing cases discussing a director's breach of duties for failing to address "red flags"); *Cede & Co.*

*v. Technicolor*, 634 A.2d 345, 362 (Del. 1993) (explaining that Delaware law applies the "both

sides" of a transaction concept to directors or officers who owe a fiduciary duty, which is one of

the "classic examples of director self-interest" for breach of the duty of loyalty).  There is no

Delaware case law that applies either of these factors to an aiding and abetting claim, and this Court

should not be the first to extend Delaware law in that manner.

The Trustee's second attempt at pleading aiding-and-abetting allegations is specific to

Rahman and Zoom-Tel, in which the FAC alleges:

> On *information and belief*, Rahman and Zoom-Tel knowingly and
> intentionally helped, participated in, and provided substantial assistance to
> Omanoff in breaching his fiduciary duties to the Debtor by providing
> inflated call data and information and invoices for payment to the Tier 3
> companies, including Najd and Telacme.

FAC, ¶ 174 (emphasis added).  These are serious allegations suggesting fraudulent conduct, yet are

pleaded solely on "information and belief," without any supporting factual allegations that could

plausibly allege the cause of action, or the specificity that is required when alleging conduct based

on fraudulent conduct.  *See Vess*, 317 F.3d at 1106.  The Trustee has chosen not to label these

claims as claims for fraud, or aiding and abetting fraud, but has pleaded these allegations as a breach

of a "fiduciary duty."  But changing the label does not release the Trustee of his obligation to plead

fraudulent conduct with specificity, per the requirements of Rule 9(b), where the claims are based

on allegations that sound in fraud.  The Trustee will likely argue that the facts concerning these

allegations are solely within the possession of Defendants, thereby relaxing the pleading standard.

But this *only* applies if allegations pleaded on information and belief "are accompanied by a

statement of the facts on which the belief is founded."  *Moore v. Kayport Package Express*, 885

F.2d 531, 540 (9th Cir. 1989) (citations omitted); *Menzel v. Scholastic, Inc.*, 2018 U.S. Dist. LEXIS

44833, *5, 2018 WL 1400386, *2 (N.D. Cal. Mar. 19, 2018) (allegations pleaded on information

1  and belief must be "based on factual information that makes the inference of culpability plausible");

2  *see also Puri v. Khalsa*, 674 F. App'x 679, 688 (9th Cir. 2017) (affirming dismissal of claims based

3  on fraud, including aiding and abetting, where complaint made several allegations on information

4  and belief but did not allege facts to "explain[] the basis for the belief" as required under Rule 9(b));

5  *Spice Jazz LLC v. Youngevity Int'l, Inc.*, 2020 U.S. Dist. LEXIS 206327, *15-19, 2020 WL

6  6484640, *6-7 (S.D. Cal. Nov. 2, 2020) (dismissing aiding and abetting claims, including for aiding

7  and abetting breach of fiduciary duties, all pleaded on "information and belief").

8      The FAC doesn't include such a "statement of the facts."  Instead, the Trustee just pleads

9  further allegations on "information and belief."  *See, e.g.,* ¶ 89 ("*on information and belief* …

10 Rahman used his company Zoom-Tel to create the appearance of millions of minutes of calls that,

11 in reality, did not exist.") (emphasis added); and ¶ 156 (alleging on "information and belief" that

12 certain unidentified entities or persons, on a second qualifier of "information and belief, *may* have

13 acted in concert with Proto, Rahman *and/or* Omanoff … to create the fiction of legitimate

14 businesses") (emphasis added).

15     Further, the Trustee has failed to allege that Rahman, Proto, or Zoom-Tel acted with the

16 requisite scienter needed to sustain an aiding and abetting breach of fiduciary duty claim, much less

17 under the heightened pleading standards of Rule 9.  *Malpiede v. Townson,* 780 A.2d 1075, 1097

18 (Del. 2001) ("Knowing participation in a . . . fiduciary breach requires that the third party act with

19 the knowledge that the conduct advocated or assisted constitutes such a breach.").[15]  "The standard

20 . . . is a stringent one, one that turns on proof of scienter of the alleged abettor."  *Binks v. DSL.net,*

21 *Inc.,* 2010 Del. Ch. LEXIS 98, *37, 2010 WL 1713629, *10 (Del. Ch. Apr. 29, 2010).

22     Allegations of scienter that are pleaded in conclusory terms—as in the Trustee's FAC—fail

23 to state a claim for aiding and abetting another's fiduciary duties.  *Oliver v. Boston Univ.*, 2000

24 Del. Ch. LEXIS 104, *30-31, 2000 WL 1091480, *9 (Del. Ch. July 18, 2000) (dismissing claim for

25

26 [15] California law likewise contains this scienter requirement. *See, e.g., Uecker*, 2014 Bankr. LEXIS
562, *18, 2014 WL 543685, *6 ("In order to state a claim for aiding and abetting breach of fiduciary
27 duty, the Complaint must plausibly allege that [defendant] had actual knowledge of the specific
wrong being committed…."), *aff'd*, 527 B.R. at 362 (affirming dismissal of aiding and abetting
28 claim, as complaint did not "plausibly allege that Wells Fargo actually knew" of facts
demonstrating a breach of fiduciary duty).

aiding and abetting breach of fiduciary duties where the "knowingly participated" requirement was only alleged in "conclusory" terms); *Neilson v*, 290 F.Supp. 2d at 1119-20  (dismissing claims for aiding and abetting breach of fiduciary duty where knowledge requirement was pleaded with conclusory statements).

The standards for pleading an "aiding and abetting" claim are no less stringent than those required for the underlying "breach" claim, and the Trustee hasn't made a legitimate attempt to satisfy those standards.  The FAC's claim is merely a chain of "information and belief" allegations and conclusory statements that fail to state a claim for relief.

**B.      The Trustee Fails to State Plausible Claims for the Avoidance and Recovery of Fraudulent Transfers or Preferences**

The Trustee has pleaded seven claims for relief against these Defendants that arise under the Bankruptcy avoidance provisions: the Third (Section 548(a)(1)(A)), Fourth (Section 548(a)(1)(B)), Fifth (Section 544(b)(1) and California law), Sixth (Section 544(b)(1) and California law), Seventh (Section 547), Eighth (Section 549), and Ninth (Section 550 recovery) (collectively, the "Avoidance Claims").   None of the Avoidance Claims are pleaded in accordance with applicable standards.

**1.      <u>The Trustee Does Not Sufficiently Allege Transfers of the Debtor's Property</u>**

The most critical allegation for any avoidance claim (whether brought under §§ 544, 547, 548, or 549) is that the source of the transfer was the Debtor, as only property of the Debtor may be avoided or recovered in a fraudulent transfer or preference action.[16]  Allegations describing the source of the transfers are the starting point for any analysis of an avoidance claim, as allegations that identify "the source of the transfer(s) and the identity of the transferor(s) … provide facts from

---

[16] *See Begier v. IRS*, 496 U.S. 53, 58 (1990) (trustee's avoidance powers are limited to transfers of the debtor's property, which is "best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings."); 11 U.S.C. §§ 544(b) ("the trustee may avoid any transfer of an interest of the debtor in property…"); 547(b) ("the trustee may…avoid any transfer of an interest of the debtor in property…"); 548(a)(1) ("The trustee may avoid any transfer…of an interest of the debtor in property…"); 549(a) ("the trustee may avoid a transfer of property of the estate…"); 550(a) ("to the extent that a transfer is avoided under section 544, …547, 548, 549…of this title, the trustee may recover…the property transferred, or… the value of such property…").

1   which a court plausibly could infer whether the debtor held a property interest in funds before their

2   transfer." *In re Mihranian*, 2017 Bankr. LEXIS 1802, *20, 2017 WL 2775043, *8.

3       The FAC attempts to meet this "starting point" by merely describing the transfers with the

4   conclusory phrases "Debtor's funds" or "Debtor funds." *See, e.g.* ¶¶ 67, 103, 120, 126, 133, 137,

5   139 (describing "Debtor" or "Debtor's" funds).   The use of labels cannot establish plausible

6   allegations by implication when they are not supported by allegations of fact. *See In re Mihranian*,

7   2017 Bankr. LEXIS 1802, at *1-2, 2017 WL 2775043, at *1 (affirming dismissal of avoidance

8   claims where the "story" in the trustee's complaint "did not allege sufficient facts regarding [the

9   debtor's] interest in those funds"); *see also Silverman v. K.E.R.U. Realty Corp. (In re Allou*

10  *Distribs.)*, 379 B.R. 5, 31-32 (Bankr. E.D.N.Y. 2007) (dismissing the trustee's claims for failing to

11  allege the source of the transferred funds).

12      The material allegations that *are* made in the FAC are the Exhibits to the FAC, which

13  describe the challenged transfers by date and amount, and show on their face that <u>all</u> of the

14  challenged transfers were sourced from the accounts of non-debtor, third parties. *See* Exs. 11, 12,

15  14, 17, 18, 19, 22 (listing transfers from non-debtor accounts, described more fully, below).   The

16  Trustee fails to allege these funds were transferred from the Debtor to those third parties or when

17  such transfers occurred, other than in the most conclusory of language.

18      The FAC's Avoidance Claims against the Defendants, whether brought under §§ 544, 547,

19  548, or 549, challenge transfers that were made out of four different bank accounts.  Three of these

20  are described as accounts of co-defendant DealDefenders, LLC ("DealDefenders"). *See*, *e.g.* ¶ 137

21  (alleging the "Debtor's funds" were "transferred through DealDefenders accounts").   The Exhibits

22  to the FAC that list these "transfers" to the Defendants list these three DealDefenders accounts by

23  the names "DD_BoA_x5922," "DD_Citi_x2588," and "DD_FR_x2496." *See* Exs. 11, 12, 14, 17,

24  18, 19, 22.   The fourth account belongs to the Management Company, which is confirmed by

25  allegations in the FAC stating that certain transfers were made from the account of the Management

26  Company (¶¶ 152, 154, 155), and is identified as VG_FR_x6441.   *See* Ex. 20. There are no

27  allegations that the Debtor held legal title and actual control over the funds in the identified

28

- 19 -

1    accounts. Thus, the Trustee has not properly alleged that any funds that originated with the Debtor

2    were transferred to any of the Defendants.

3        Rather than make any specific allegations that show that the Debtor ever owned these funds,

4    or otherwise had a property interest in the funds, the Trustee has pleaded a case built on unstated

5    implications. He asks this Court to just <u>assume</u> by implication that DealDefenders only did business

6    with the Debtor, and no other entities, and therefore that <u>all</u> funds in any DealDefenders accounts

7    must have been property of the Debtor. The Trustee hasn't made any such *express* allegations to

8    claim that all funds in DealDefenders accounts were property of the Debtor because he cannot

9    plausibly state such an allegation.

10       Similarly, in the same FAC in which the Trustee has alleged that Proto and Rahman were

11   extensively involved in the telecom industry prior to, and during the Debtor's existence, through

12   their own companies (¶ 56), the Trustee nevertheless asks this Court to <u>assume</u> that all telecom

13   transactions they and their own companies conducted through any DealDefenders account could

14   only have been transfers of the Debtor's funds, not transfers related to other pre-existing businesses

15   not involving the Debtor. The Trustee hasn't made any such *express* allegations to claim that Proto

16   and Rahman did not conduct other business through DealDefenders, because he knows that he

17   can't. Indeed, he has already alleged in the FAC that they engaged in this industry involving other

18   companies (¶ 56).

19       Where transfers cannot be alleged in a plausible manner to be property of the debtor, the

20   claim must be dismissed. *See Decker v. Advantage Fund Ltd.*, 362 F.3d 593, 596 (9th Cir. 2009)

21   (affirming bankruptcy court's dismissal of fraudulent transfer claims because the transferred stock

22   was not "an interest of the debtor in property"); *Screen Capital Int'l Corp. v. Library Asset

23   Acquisition Co. (In re ThinkFilm, LLC)*, 510 B.R. 266, 275-77 (C.D. Cal. 2014) (affirming

24   dismissal of fraudulent transfer and preference claims for failing to allege what specific property

25   interests were transferred by the debtor).

26       The Trustee might point to Ex. 1, where the FAC alleges that the Debtor transferred $59

27   million to the Management Company, and argue that these prove that further transfers to the

28

Defendants would therefore be property of the Debtor.  But were he to do so, such a claim would fail for multiple reasons.

Such an argument would hinge on having to ask this Court to assume, by implication alone, that the Management Company had no business other than serving as the Debtor's manager, and therefore had no other sources of income.  This would be difficult to plausibly allege in the same chapter 7 case where the Trustee is already suing another entity managed by the Management Company—the consecutively named VoIP Guardian Partners II, LLC.  *See* Trustee's Complaint at ¶¶ 10-11, and p. 6, n. 1 (Debtor's Main Case, Docket No. 134).  It would also be difficult to allege because the Exhibits to the FAC show on their face that it would be false, as the math doesn't add up.

The only transfers of actual <u>Debtor</u> funds listed in the Exhibits to the FAC are the $59 million in prepetition transfers made from the Debtor's accounts to the Management Company's account listed in Ex. 1.[17]  Therefore, absent other material and plausible allegations that are not made in the FAC, $59 million is a ceiling for what the Trustee can recover.

It is unclear whether the Trustee could overcome this fatal flaw by alleging—with specificity—how all funds in the Management Company and DealDefenders accounts originated with the Debtor, and <u>only</u> the Debtor, and showing with specificity how all alleged voidable transfers were funded, and how these Defendants could be liable for them (on a basis other than "information and belief").  And it was within the Trustee's ability to plead these transfers with the requisite particularity (if they were true), given that he retained a forensic accountant to source and trace the money that left the Debtor's accounts.[18]  The Debtors' accounts were well known to the Trustee because they were included in the Debtor's chapter 7 petition.[19]  And, the Trustee was authorized to seek Rule 2004 discovery from numerous banking institutions through which the

---

[17]  The Debtor scheduled an ownership interest in the two accounts identified on Ex. 1, VG_FR_x6458 and VG_FR_x9399. *See* Debtor's chapter 7 petition at p. 15 (Debtor's Main Case, Docket No. 1).

[18]  *See Chapter 7 Trustee's Application for Authority to Employ Force 10 Partners as Financial Advisor Effective November 1, 2020* (Debtor's Main Case, Docket. No. 126); *Order Granting Chapter 7 Trustee's Application for Authority to Employ Force 10 Partners as Financial Advisor Effective November 1, 2020* (Debtor's Main Case, Docket. No. 129).

[19]  *See* Debtor's chapter 7 petition at p. 15 (Debtor's Main Case, Docket No. 1).

Debtor allegedly made transfers to third parties.[20]  It is inexcusable, given the professional time that went into the forensic accounting and drafting of the FAC, that all of the transfer allegations against the Defendants are made "upon information and belief," without any specificity as to source or the chain of transfers.  *See, e.g.*, ¶ 131 ("On information and belief, Tee received significant sums of money from the Debtor (via DealDefenders) relating to transactions with Arco Telecom, Proto's company); ¶ 135 ("On information and belief, bank records produced by DealDefenders reflect that, on December 12, 2016, 2365 Azure LLC received $695,000 from the Debtor (via DealDefenders)"); ¶ 177 ("Upon information and belief, during the two-year period immediately preceding the Petition Date, the Debtor made transfers of property…); ¶¶ 187, 197, 200, 204.

These pleading deficiencies are not only inexcusable, but fatal to the Trustee's avoidance claims.  If this Court is to permit the Trustee to amend his Avoidance Claims, he must return to this Court with a pleading that plausibly lays out how all of the funds he seeks to recover from the Defendants are property of the Debtor, alleged with particularity.

Indeed, the fact that the Trustee has alleged and acknowledged that Proto and Rahman have other business interests in the telecom industry coupled with the lack of sourcing of the transfers from the Debtor's bank underscores the *implausibility* of simply alleging by implication that all funds in non-debtor accounts that were transferred to Defendants can only have belonged to the Debtor.  *See In re Mihranian*, 2017 Bankr. LEXIS 1802, *5, 17, 2017 WL 2775043, *6 (affirming bankruptcy court's dismissal of avoidance claims where trustee's complaint alleged debtor's separate corporate medical practice, but failed to allege facts plausibly demonstrating that transfers were assets of the debtor, not the medical corporation).

The FAC fails to allege this most critical allegation for avoidance claims—that the transferred funds were property of the Debtor—and thus all avoidance claims must be dismissed.

---

[20] The Court granted the Trustee's motions for authority to seek Rule 2004 discovery from the following banking institutions: JP Morgan Chase Bank N.A. (Docket No. 88); HSBC Bank USA, N.A. (Docket No. 89); Barclays Bank Delaware (Docket No. 90); First Republic Bank (Docket No. 91); Bank of America N.A. (Docket No. 92); Wells Fargo Bank (Docket No. 101); Branch Banking and Trust Company (Docket No. 102); Suntrust Bank (Docket No. 103); and TD Bank, N.A. (Docket No. 104).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**2.**    **The Trustee's Allegations Fail to Apprise the Defendants of the Transfer-Related Claims Against Them**

Perhaps because he cannot plausibly allege the source of the transfers that are challenged in the FAC, the Trustee has chosen to assert conflicting allegations concerning whether the Defendants are initial transferees, subsequent transferees, beneficiaries of transfers, or alter egos of other Defendants, opting in some paragraphs to generally state that he seeks to hold a Defendant "jointly and severally liable for all transfers from the Debtor" to certain other Defendants. *See, e.g.*, ¶¶ 127, 130, 140.

For example, Defendants are sued as both initial <u>or</u> subsequent transferees in the same paragraph of allegations, without any breakdown of the transfers accorded to each status. *See* ¶ 177, n. 2 ("the Trustee seeks recovery from these defendants as subsequent transferees, <u>or</u> initial transferees …") (emphasis added), ¶ 187, n. 3 (same), ¶ 197, n. 4 (same); ¶ 200, n. 5 (same).  The Trustee also repeatedly alleges in a conclusory fashion that some Defendants "benefited" from a transfer made to another entity.  *See, e.g.*, ¶ 124 ("all monies paid to Arco Telecom ultimately benefited Proto"), ¶ 128 ("all monies paid to Zoom-Tel ultimately benefited Rahman"), ¶ 129 ("Go2Tel received significant transfers from the Debtor directly for the benefit of Zoom-Tel"), ¶ 133 ("transfers of Debtor funds to Tee, or for Tee's benefit, continued …").

The Trustee might believe that he is just keeping open all options, but this is an impermissible manner for pleading avoidance/recovery claims.  *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 531 B.R. 439, 474 (Bankr. S.D.N.Y. 2015) (in dismissing the trustee's subsequent transfer claims, the court stated that the "[t]he defendants are either transferees or persons for whose benefit the transfers were made; they can't be both.  Furthermore, they are either subsequent transferees or initial transferees.  The complaints do not allege facts showing that the transfers were made for the benefit of any defendant; instead, they allege the initial transfers and assert, in conclusory fashion, that the subsequent transferee defendants received subsequent transfers.").

In dismissing the trustee's claims in *Madoff*, the court based its ruling on the principle that Section 550 "separates initial transferees and beneficiaries, on the one hand, from 'immediate or

- 23 -

mediate transferee[s]', on the other. The implication is that the 'entity for whose benefit' is different from a transferee, 'immediate' or otherwise." *Id*. (*quoting Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 895 (7th Cir. 1988)).  The Ninth Circuit has echoed this principle, quoting the same language from *Bonded* as cited in *Madoff*, above.  *See In re Bullion Res. of N. Am.*, 922 F.2d 544, 548 (9th Cir. 1991) (*quoting*, and following, *Bonded*); *see also Henry v. Official Comm. of Unsecured Creditors of Walldesign, Inc. (In re Walldesign, Inc.)*, 872 F.3d 954, 963 (9th Cir. 2017) (reiterating Ninth Circuit approval of the "dominion" test formulated in *Bonded* for determining whether a transferee is an initial or subsequent transferee).

The Trustee is just as casual about his alter ego allegations.  But "[c]onclusory allegations of 'alter ego' status are insufficient to state a claim. Rather, a plaintiff must allege specific facts supporting both of the elements of alter ego liability." *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1042 (C.D. Cal. 2015); *Neilson*, 290 F.Supp. 2d at 1116 (same).

The FAC makes massively broad allegations of alter ego, without even specifying the entities or individuals covered by the doctrine, in the following paragraphs:

> 156.        … *certain* individuals and companies worked in concert to defraud and/or otherwise harm the Debtor. *On information and belief*, these entities and their control persons acted in concert (and, on *information and belief, may* have acted in concert with Proto, Rahman and/or Omanoff, as well) … and are equally liable for and chargeable with the conduct of the entities they controlled. …

> 162. Because these entities were engaged in defrauding the Debtor, the individuals that operated those business are not entitled to the benefits of any corporate or fiduciary shield and should be deemed the alter ego of those entities.

¶¶ 156 and 162 (emphasis added).  This generality is consistent with the allegations cited above where the Trustee seeks to hold Proto, Rahman, and Katit "jointly and severally liable" for any judgment against certain other Defendants. *Id*. ¶¶ 127, 130, 140, 163.

The FAC does not plausibly allege with any specific, non-conclusory allegations to explain how Proto, Rahman, or Katit were the alter egos of the entities identified by the Trustee, and therefore fails to state any claim that could be based on alter ego liability. *Gerritsen*, 112 F. Supp. 3d at 1042; *Neilson*, 290 F.Supp. 2d at 1116.

1    The Trustee's inability to plausibly allege the nature of each Defendant's liability

2    underscores the fact that he has filed the FAC without a clear understanding of how he plans to

3    prove (or plead) that the challenged transfers were actually the Debtor's property.  To the extent

4    the Trustee pleads in a conclusory manner that a Defendant "benefited" from a transfer in the hope

5    that he can preserve a future ability to argue that Defendants were beneficiaries of the transfers if

6    they aren't found to be transferees, he cannot simply preserve such rights through conclusory

7    allegations and labels, but must plead specific facts:

8    
9    
10    
11    

> [M]erely alleging that someone benefitted from a transaction is not enough to sustain an intended-beneficiary fraudulent transfer claim because 'the transfer must have been made for [the transferee's] benefit.' *In re Bullion Reserve*, 922 F.2d at 548. Similarly, the fact that Wells Fargo stood to gain from subsequent transfers made by R.E. Loans to Wells Fargo in the form of fees and interest charges does not support the inference that the initial transfers from MF08 to R.E. Loans were made for Wells Fargo's benefit.

12    *In re Mortg. Fund '08 LLC*, 527 B.R. at 360-61 (*following Bullion Reserve, supra*).

13    Whether the FAC's flaws are the Trustee's inability to plausibly allege the source of

14    "Debtor" funds, or an uncertain theory of *how* the transfers reached a particular Defendant, or in

15    what capacity they received it, the FAC fails to provide Defendants with the required notice of the

16    claims pleaded against them.  *Hoffman*, 2013 Bankr. LEXIS 1780, *11, 2013 WL 1829648, *3 ("In

17    the bankruptcy context, *Twombly* means that a plaintiff can no longer simply recite the statutory

18    language of the particular Code section under which a claim is brought and expect the complaint to

19    give sufficient notice to a defendant of the plaintiff's claim for relief.").

20    In order for the Trustee "[t]o pass muster under *Twombly*, [he] must state a plausible claim

21    for relief by identifying the specific facts upon which the plaintiff relies to support a finding on

22    each element of the plaintiff's claim. Only then will a defendant have sufficient notice of plaintiff's

23    claim under Rule 8(a)." *Id.*; *see Neilson*, 290 F. Supp. 2d at 1148 ("Rule 8(a) is designed to ensure

24    that a defendant has fair notice of the nature of the claim and of the facts on which it is based.").

25    Requiring that the Trustee satisfy the requirement to plead each Defendant's nature of

26    alleged liability with particularity wouldn't just provide Defendants with proper notice of the claims

27    asserted against them, but the process of investigating the nature of these alleged connections would

28

educate the Trustee about how tenuous some of them are, and how a particular Tier 3 entity's receipt of funds hasn't actually benefited any of the Defendants addressed in this Motion.

All of the FAC's avoidance claims are inadequately pleaded, and must be dismissed.

### 3.    The Trustee Fails to Allege the Existence of a Triggering Creditor Under Section 544(b) of the Bankruptcy Code

The Trustee's claims to avoid and recover 4-Year Transfers fail for the additional reason that the Trustee does not allege the existence of an unsecured creditor holding an allowable claim who could have avoided the transfers under California law.  A bankruptcy trustee's authority to assert fraudulent transfer claims under California law is found in section 544(b) of the Bankruptcy Code.  Unlike other avoidance powers in the Bankruptcy Code, a trustee may not invoke section 544(b) unless there is an unsecured creditor of the debtor who could have avoided the challenged transactions under applicable state fraudulent transfer law.  *See* 11 U.S.C. § 544(b) ("The trustee may avoid any transfer of an interest of the debtor in property … that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title …."); *Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 34 F.3d 800, 809 (9th Cir. 1994) ("the existence of a 'triggering creditor' under section 544(b) of the Bankruptcy Code gives the trustee [the] right to invoke state-law avoidance powers.").  At the pleading stage, the plaintiff must allege the *existence* of an actual creditor holding an allowable unsecured claim who could have avoided the transfers under applicable state law had the bankruptcy case not been filed.  *Neilson*, 290 F. Supp. 2d at 1144 (dismissing trustee's complaint for failure to identify triggering creditor by name).  Here, the Trustee does not identify any creditor, by name or otherwise, that could have brought the Section 544(b) fraudulent transfer claims on the petition date.  Because the FAC seeks to disallow the Management Company's claim (¶¶ 225-228), that claim cannot serve as the predicate "allowable claim."

### 4.    The FAC's Section 549 Claim Fails on its Face to Allege a Transfer of Estate Property

Perhaps the most egregious failure in the FAC's allegations is the Trustee's effort to state claims against Proto and Tee-Tel under Section 549 for avoidance of "post-petition" transfers.  The

1   "transfers" at issue are \$676,970 in transfers made to Proto, listed on Ex. 11 to the FAC, and

2   \$680,449 in transfers to Tee-Tel, listed on Ex. 18 to the FAC.  As each Exhibit shows on its face,

3   these transfers were made after the Petition Date, but they were transferred from a DealDefenders

4   account, *not* an account of the Debtor.  *See* Exs. 11, 18.  On its face, the FAC alleges Proto's and

5   Tee-Tel's receipt of post-petition funds from a <u>non</u>-debtor, and seeks to satisfy the pleading

6   requirements of Section 549 by adding the conclusory statement that these were "funds belonging

7   to the Debtor postpetition."  ¶ 210.  Such a conclusory statement, combined with Exhibits showing

8   the transfers from non-debtor accounts, cannot possibly satisfy the material pleading requirement

9   of Section 549 in good faith.

10      The Section 549 claim must be dismissed, and cannot be amended in good faith unless the

11   Trustee is able to demonstrate that he has the means to return to this Court with detailed, non-

12   conclusory allegations that demonstrate how the Debtor's estate could have a certain property

13   interest in the specific funds listed on Exs. 11 and 18, and held in DealDefenders' accounts.

14
        **5.**      <u>**The Trustee Insufficiently Pleads Key Elements of his Claims to Avoid**</u>
15      <u>**Preferential Transfers**</u>

16      In addition to all of the reasons argued above for dismissal of the FAC's Section 547 claim

17   (the "Preference Claim"), as one of the Avoidance Claims discussed in the prior sections, the FAC

18   also fails to properly allege the Preference Claim for the additional reason that it fails to allege the

19   requisite debtor-creditor relationship between the Debtor, and any of the three named Defendants—

20   Proto, Mudmonth, and Zoom-Tel.  *See, e.g., Davidson v. Barstad (In re Barstad)*, 2019 Bankr.

21   LEXIS 1803, *19-22, 2019 WL 2479311, *9 (Bankr. D. Mont. June 12, 2019) (granting motion to

22   dismiss preference claims for failing to sufficiently allege that defendant was a creditor of the

23   debtor); *Fitzpatrick v. Allsup, Inc. (In re Stewart)*, 2014 Bankr. LEXIS 310, *14-15, 2014 WL

24   294322, *5 (Bankr. E.D. Tenn. Jan. 24, 2014) (same); *Southmark Corp. v. Southmark Pers.*

25   *Storage, Inc.*, 138 B.R. 831, 835 (Bankr. N.D. Tex. 1992) (same).

26      The FAC does not allege a debtor-creditor relationship between Proto, Mudmonth, or

27   Zoom-Tel on the one hand, and the Debtor on the other.  *See* 11 U.S.C. § 101(5), (10).  The Debtor

28   did not list these Defendants as creditors in its bankruptcy schedules.  Nor did these Defendants

1    file proofs of claim.  Nor does the FAC allege any business relationship in which a debtor-creditor

2    relationship with the Debtor was created.

3        The FAC also fails to plausibly allege a basis for liability.  Section 547(b)(4)(A) authorizes

4    trustees to avoid preferences made "on or within 90 days before the date of the filing of the

5    petition."  11 U.S.C. § 547(b)(4)(B).  But the FAC shows by its Exhibits that <u>none</u> of the named

6    Defendants received any transfers from any listed account (Debtor or non-debtor account) within

7    90 days of the petition date.  *See* Exs. 11, 12, 14.

8        Presumably, therefore, the FAC's Preference Claim is brought under Section 547(b)(4)(B),

9    which authorizes trustees to avoid preferences made "between ninety days and one year before the

10   date of the filing of the petition, if such creditor at the time of such transfer was an insider."  11

11   U.S.C. § 547(b)(4)(B).  Yet the Trustee has not made any effort to plausibly allege that Proto,

12   Mudmonth, or Zoom-Tel were insiders of the Debtor.  The FAC contains his failed and conclusory

13   allegations on "information and belief" that Proto was "a director <u>or</u> officer of the Debtor," or that

14   he might have been a director or officers for the Debtor "<u>and/or</u> the Management Company."  ¶¶ 4,

15   18, 19, 49 (emphasis added).  And the Preference Claim itself includes a conclusory statement—

16   made on "information and belief," of course, without any factual allegations—that <u>all</u> of the

17   fourteen named defendants to the Preference Claim "qualifies an [sic] 'insider' of the Debtor as

18   that term is used in 11 U.S.C. §§ 101 and 547."  ¶ 205.  But this is yet another improper example

19   of group pleading, on information and belief, that merely states an element of a claim without

20   making the slightest effort to plead the element with particularity or plausible facts.

21       For all of the reasons argued above, and the authority addressed therein holding that a claim

22   should be dismissed for failure to plead a claim with greater particularity than a conclusory

23   recitation of the claim's elements, the Preference Claim should be dismissed.

24       Finally, should this Court grant the Trustee leave to amend, it should be noted that the

25   Bankruptcy Code, as recently amended, places a duty on all trustees to investigate certain claims

26   before bringing them.  With respect to a claim under Section 547, before a trustee may bring a

27   preference claim, he must take "into account a party's known or reasonably knowable affirmative

28   defenses under subsection (c)," which must be "based on reasonable due diligence in the

circumstances of the case." 11 U.S.C. § 547(b).  This language was added to Section 547 of the Bankruptcy Code through enactment of the Small Business Reorganization Act of 2019, Pub. L. No. 116-54 § 3(a), which became effective on February 19, 2020.  Courts have interpreted this statutory language to require the trustee to undertake the following steps before asserting preference claims: (1) conduct reasonable due diligence under "the circumstances of the case;" (2) consider whether a prima facie case for a preference action may even be stated; and (3) review the known or "reasonably knowable" affirmative defenses that the prospective defendant may assert.  *Husted v. Taggart (In re ECS Ref., Inc.)*, 625 B.R. 425, 454 (Bankr. E.D. Cal. 2020).  Because the statutory language treats the trustee's obligation "as an element of the prima facie case, rather than an affirmative defense, it must be plead." *Id.* at 457.  The FAC does not recite the efforts the Trustee took to satisfy these requirements before filing the lawsuit.  His complete failure to allege factual support for key elements of the preference statute strongly suggests that no steps were taken.

## C.    The Newly Added Claims Against Overseas Charters Do Not Relate Back to the Original Complaint

The FAC adds Overseas Charters as a new defendant to multiple Avoidance Claims.  They are claims that cannot stand under 11 U.S.C. § 546(a).

The Debtor's case was filed on March 11, 2019.  *See* Debtor's chapter 7 petition at p. 1 (Debtor's Main Case, Docket No. 1).  The Trustee filed his original Complaint initiating this action on March 10, 2021, squeaking in under the two-year statute of limitations imposed by Section 546(a) for avoidance actions.

Overseas Charters was not a party listed in the original Complaint.  *See* Trustee's Complaint (Debtor's Main Case, Docket No. 132).  Instead, the Trustee added Overseas Charters as a defendant in the FAC, filed on March 31, 2021, more than two weeks *after* the two-year deadline had expired.  But the Trustee can only add a new party after the two-year deadline if he can benefit from the "relation back" doctrine.  And claims against a new defendant only relate back if the new defendant received "notice" of the action within the time for serving the summons and complaint under Rule 4(m), and the new defendant "knew or should have known that the action would have

1    been brought against it, but for a mistake concerning the proper party's identity."  Fed. R. Civ. P.

2    15(c)(1)(C)(i)—(ii).

3        The Trustee hasn't even pleaded conclusory allegations to explain how he could meet the

4    test of Rule 15, or even acknowledge that he needs to do so.  He has simply ignored the fact that

5    Overseas Charters has been improperly joined in this action without a prior motion for leave to

6    amend.  Nothing on the face of the original Complaint suggests that Overseas Charters knew it

7    would have been sued "but for a mistake concerning the proper party's identity."  *Id*.  Such a

8    showing of "mistake" is the key inquiry to permitting the addition of a new party after the expiration

9    of the statute of limitations, and the type of "mistake" that satisfies the rule is precisely the type

10   suggested by the rule's wording—it might be clear that the new defendant was the intended

11   defendant but for a mistake.  *See Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 540 (2010) (new

12   defendant, Costa Crociere, which had notice of complaint, should have known that it was the

13   intended defendant, not "Costa Cruise Lines").

14       The Trustee did not previously sue any entity with a name similar to Overseas Charters, or

15   plead his original Complaint in any manner that could have put Overseas Charters on notice—

16   assuming it received notice—that it would have been sued in a timely manner "but for a mistake

17   concerning the proper party's identity."  Fed. R. Civ. P. 15(c)(1)(C)(i)—(ii).

18       The Trustee did not seek leave to amend his complaint to add Overseas Charters, and has

19   made no allegations in the FAC to justify his naming of Overseas Charters after expiration of the

20   two-year deadline under Section 546(a).  All claims against Overseas Charters should be dismissed.

21

22   Dated:    May 17, 2021                    BAKER & HOSTETLER LLP

23

24                                            By:    */s/ David J. Richardson*
                                                    David J. Richardson

25                                            *Counsel for Mark Proto, Youssef Rahman aka Joe*
                                             *Rahman, Tarek Katit, Mudmonth, LLC, Zoom*
26                                           *Telecom, Inc., Tee Telecommunications Inc., 2365*
                                             *Azure LLC, and Overseas Charters, Inc.*

27

28

- 30 -

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
11601 Wilshire Boulevard, Suite 1400, Los Angeles, California 90025.

A true and correct copy of the foregoing document entitled (specify): **NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) May 17, 2021, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Jessica L Bagdanov on behalf of Plaintiff Timothy Yoo, Chapter 7 Trustee - jbagdanov@bg.law, ecf@bg.law
- Michael F Chekian on behalf of Defendants Philipson International LLC, a Delaware limited liability company, Adela Philipson, John O Philipson - mike@cheklaw.com, chekianmr84018@notify.bestcase.com
- Michael I. Gottfried on behalf of Defendant DealDefenders LLC, a Delaware limited liability company - mgottfried@elkinskalt.com
- Steven T Gubner on behalf of Plaintiff Timothy Yoo, Chapter 7 Trustee - sgubner@bg.law, ecf@bg.law
- David J Richardson on behalf of Defendants 2365 Azure LLC, a Florida limited liability company, Mudmonth, LLC, a Nevada limited liability company, Overseas Charters Inc., TEE Telecommunications Inc., a New Jersey corporation, Zoom Telecom, Inc., a Nevada corporation, Joseph Rahman, Mark Proto, Tarek Katit - drichardson@bakerlaw.com, aagonzalez@bakerlaw.com
- United States Trustee (LA) - ustpregion16.la.ecf@usdoj.gov
- Timothy Yoo (TR) - tjytrustee@lnbyb.com, tjy@trustesolutions.net
- Roye Zur on behalf of Defendant DealDefenders LLC, a Delaware limited liability company - rzur@elkinskalt.com, aaburto@elkinskalt.com;myuen@elkinskalt.com

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) May 17, 2021, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Honorable Barry Russell – **VIA PERSONAL DELIVERY**
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1660 / Courtroom 1668
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| May 17, 2021 | Andrea Gonzalez | */s/ Andrea Gonzalez* |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.