**BAKER & HOSTETLER LLP**
David J. Richardson (SBN168592)
(drichardson@bakerlaw.com)
Lauren Attard (SBN 320898)
(lattard@bakerlaw.com)
Jack Koehn (SBN 358542)
(jkoehn@bakerlaw.com)
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067-4301
Telephone: (310) 820-8800
Facsimile: (310) 820-8859

and

Jorian L. Rose (*pro hac vice*)
(jrose@bakerlaw.com)
45 Rockefeller Plaza
New York, NY 10111-0100
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Counsel for Mark Proto, Youssef Rahman aka Joe Rahman, Tarek Katit, Mudmonth, LLC, Zoom Telecom, Inc., Tee Telecommunications Inc., 2365 Azure LLC and Overseas Charters Inc.*

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| | |
|---|---|
| VOIP GUARDIAN PARTNERS I, LLC,<br><br>Debtor. | Case No.: 2:19-bk-12607-BR<br><br>Chapter 7 |
| TIMOTHY YOO, Chapter 7 Trustee,<br><br>Plaintiff,<br><br>v.<br><br>VOIP GUARDIAN LLC, *et al.*,<br><br>Defendants. | Adv. No. 21-ap-01044-BR<br><br>**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND/OR SUMMARY ADJUDICATION ON THE TRUSTEE'S THIRD, FOURTH, FIFTH AND SIXTH CLAIMS FOR RELIEF**<br><br>Hearing Date: TBD<br>Time: TBD<br>Courtroom: TBD |

**TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE, THE PLAINTIFF AND HIS COUNSEL, ALL NAMED DEFENDANTS AND THEIR COUNSEL, AND ALL PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE** that Mark Proto, Youssef "Joseph" Rahman, Tarek Katit, Mudmonth, LLC, Zoom Telecom, Inc., Tee Telecommunications Inc., 2365 Azure LLC, and Overseas Charters, Inc. (collectively, the "Defendants"), all named as defendants in the *Second Amended Complaint for: 1. Breach of Fiduciary Duty; 2. Aiding and Abetting Breach of Fiduciary Duty; 3. Avoidance of 2-Year Fraudulent Transfers (Actual Intent); 4. Avoidance of 2-Year Fraudulent Transfers (Constructive Fraud); 5. Avoidance of 4-Year Fraudulent Transfers (Actual Intent); 6. Avoidance of 4-Year Fraudulent Transfers (Constructive Fraud); 7. Avoidance of Preferential Transfers; 8. Avoidance of Postpetition Transfers; 9. Recovery of Avoided Transfers; 10. Breach of Contract; 11. Unjust Enrichment; and 12. Claim Disallowance* (the "Complaint"), filed by the chapter 7 trustee Timothy Yoo (the "Trustee"), on August 17, 2021, hereby move by this motion (the "Motion") requesting that this Court: (i) enter judgment on the Trustee's Fourth and Sixth Claims for Relief in favor of defendants pursuant to Fed. R. Civ. P. 56, on the grounds that the Trustee's claims for avoidance of constructively fraudulent transfers fail as a matter of law on the grounds that the Debtor, VoIP Guardian Partners I, LLC (the "Debtor") did not receive less than reasonably equivalent value for all alleged transfers since none of the funds were property of the Debtor; and (ii) determine as a matter of law that the "reasonably equivalent value" badge of fraud for the Trustee's Third and Fifth Claims for Relief cannot be satisfied as a matter of law under the facts of this case.

**PLEASE TAKE FURTHER NOTICE** that the Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Omnibus Statement of Uncontroverted Facts, the Omnibus Declaration of David J. Richardson filed herewith, and all documents in the record of the above-captioned adversary proceeding and chapter 7 bankruptcy case.

**PLEASE TAKE FURTHER NOTICE** that no hearing has been set for this Motion, nor for a companion motion for summary judgment filed herewith, pursuant to the Court's local procedures for dispositive motions.

Dated: November 26, 2025

**BAKER & HOSTETLER LLP**

By: */s/ David J. Richardson*
David J. Richardson

*Counsel for Mark Proto, Youssef Rahman aka Joe Rahman, Tarek Katit, Mudmonth, LLC, Zoom Telecom, Inc., Tee Telecommunications Inc., 2365 Azure LLC, and Overseas Charters, Inc..*

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ..... 1

II. FACTUAL BACKGROUND ..... 2

A. The Debtor's Business and Operating Agreements ..... 2

B. DLI's Loan and Security Agreement ..... 2

C. DLI Controlled All Disbursements of DLI's Loan Advances ..... 3

D. The DLI Stipulation ..... 4

E. The Claims for Relief Pleaded in the Complaint ..... 5

III. LEGAL STANDARDS ..... 5

A. Jurisdictional Statement ..... 5

B. Standard for Summary Judgment ..... 6

IV. ARGUMENT ..... 6

A. Summary of Argument ..... 6

B. Claims Under Section 548(a)(1)(B) Fail as a Matter of Law as the Debtor Had No Property Interest to Transfer, and Did Not Receive Less Than "Reasonably Equivalent Value" ..... 7

C. The Trustee's Claims for Actual Fraudulent Transfers Are Subject to Any Finding of this Court that the Debtor Did Not Receive Less Than Reasonably Equivalent Value in Exchange for Alleged Transfers that Were Not Property of the Debtor ..... 13

V. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Betancourt v. Ballmer (In re Betancourt)*,
BAP No. CC-17-1016-KuLTa, 2017 WL 3482035, 2017 Bankr. LEXIS 2276 (9th Cir. BAP Aug. 14, 2017), *aff'd*, 756 F. App'x 741 (9th Cir. 2019) ................................ 13

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ................................ 6

*In re Consolidated Pioneer Mortg. Entities*,
166 F.3d 342 (9th Cir. 1999) ................................ 12

*Donell v. Mojtahedian*,
976 F. Supp. 2d 1183 (C.D. Cal. 2013) ................................ 6

*In re Expert S. Tulsa, LLC*,
534 B.R. 400 (10th Cir. BAP 2015), *aff'd*, 842 F.3d 1293 (10th Cir. 2016) ................................ 9

*Fidelity National Title Insurance Co. v. Schroeder*,
179 Cal. App. 4th 834 (2009) ................................ 12

*Franco v. Real Portfolio 13, LLC (In re Franco)*,
2025 WL 884067, 2025 Bankr. LEXIS 648 (Bankr. D. N.J. March 17, 2025) ............... 11, 12

*Houghton v. South*,
965 F.2d 1532 (9th Cir. 1992) ................................ 6

*In re Jeffrey Bigelow Design Grp., Inc.*,
956 F.2d 479 (4th Cir. 1992) ................................ 8

*Luzinski v. Peabody & Arnold LLP (In re Gosman)*, 382 B.R. 826 (S.D. Fla. 2007) ................... 13

*Manchester v. Sharpton (In re All Phase Roofing & Constr., LLC)*,
2020 WL 374357, 2020 Bankr. LEXIS 178 (Bankr. W.D. Okla. Jan. 17, 2020), *aff'd*, 2020 WL 5512500, 2020 Bankr. LEXIS 2441 (B.A.P. 10th Cir. Sept. 14, 2020) ................................ 9, 10, 12

*Mehrtash v. Mehrtash*,
93 Cal.App.4th 75 (2001) ................................ 12

*In re Moodie*,
362 B.R. 562 (Bankr. S.D. Fla. 2007) ................................ 11

*In re Pioneer Liquidating Corp.*,
211 B.R. 704 (S.D. Cal. 1997) ................................ 12

*Rajala v. Gardner*,
661 F. App'x 512 (10th Cir. 2016) (unpublished) ........ 9

*Riley v. Countrywide Home Loans, Inc. (In re Duplication Mgmt, Inc.)*,
501 B.R. 462 (Bankr. D. Mass. 2013) ........ 8

*Sender v. Coney (In re Gibson)*,
2025 WL 2447944, 2025 Bankr. LEXIS 2063 (Bankr. D. Colo. Aug. 25, 2025) ........ 14

*Senior Transeastern Lenders v. Official Committee of Unsecured Creditors (In re TOUSA Inc.*),
680 F.3d 1298 (11th Cir. 2012) ........ 9

*Tolz v. Miller (In re Todd)*,
391 B.R. 504 (Bankr. S.D. Fla. 2008) ........ 11, 12

*Tzung v. State Farm Fire & Casualty Co.*,
873 F.2d 1338 (9th Cir. 1989) ........ 6

*Yip v. Connedx Corp. (In re Gomez)*,
560 B.R. 866 (Bankr. S.D. Fla. 2016) ........ 10, 12

**Statutes**

11 U.S.C.A. 548(a)(1)(B) ........ 7

11 U.S.C. § 544(b) ........ 5, 7, 13

11 U.S.C. § 547 ........ 5

11 U.S.C. § 548 ........ 5

11 U.S.C. § 548(a)(1)(A) ........ 5, 7, 13

11 U.S.C. § 548(a)(1)(B) ........ *passim*

11 U.S.C. § 548(a)(1)(B)(i) ........ 6

11 U.S.C. § 549 ........ 5

Cal. Civ. Code. § 3439.04(a)(1) ........ 5, 13

Cal. Civ. Code. §§ 3439.04(a)(1) and (b)(8). ........ 7

Cal. Civ. Code. § 3439.04(a)(2) ........ 5, 8

Cal. Civ. Code § 3439.04(a)(2) ........ 7

**Rules**

Fed. R. Civ. P. 56(a) ........ 6

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT

Defendants bring this Motion for summary judgment and summary adjudication with respect to the Trustee's claims to avoid allegedly fraudulent transfers, and requests herein: (i) entry of judgment in favor of Defendants on the Trustee's Fourth and Sixth Claims for Relief; and (ii) summary adjudication on the Trustee's Third and Fifth Claims for Relief.

Fraudulent transfer statutes permit a chapter 7 trustee to recover value that could have been used to pay the claims of unsecured creditors, but instead was transferred out of the estate under circumstances that diminished the estate. But when the transferred assets had no value to the debtor and could not have been used to pay the claims of unsecured creditors – such as when the assets were fully encumbered by valid liens – then the transfer was not made for "less than reasonably equivalent value" (11 U.S.C. § 548(a)(1)(B)) and may not be recovered for the estate.

If the debtor transferred nothing of value, and received nothing of value, there is no claim that may be pursued by a trustee.

This Debtor never had any unencumbered assets to its name. Every "transfer" challenged by the Trustee in this litigation was made with funds that were fully encumbered by DLI's valid lien, thereby depriving the Debtor of nothing of value for purposes of the fraudulent transfer statutes. There is no issue of fact pertaining to this Motion. The Trustee's own sworn testimony filed in this Court before any litigation was commenced was that "[t]he Estate's assets are fully encumbered by DLI Fund's $203,459,871.69 secured claim." SUF ¶ 49.[1] Based on the Trustee's own testimony, he cannot pursue his claims to avoid constructively fraudulent transfers, and cannot use the "reasonably equivalent value" badge of fraud to attempt to prove his actually fraudulent transfer claims.

Wherefore, Defendants request judgment on the Trustee's Fourth and Sixth Claims for Relief, and summary adjudication on the Trustee's Third and Fifth Claims for Relief in accordance with the argument below.

[1] Evidentiary citations to "SUF" are to the Omnibus Statement of Uncontroverted Facts and Conclusions of Law filed herewith.

## II. FACTUAL BACKGROUND

### A. The Debtor's Business and Operating Agreements

On September 25, 2015, Rodney Omanoff caused the incorporation of VoIP Guardian, LLC. SUF ¶ 1. On October 9, 2015, Mr. Omanoff caused the incorporation of the Debtor as a subsidiary limited liability company of VoIP Guardian LLC and special purpose vehicle. SUF ¶ 2.

The Debtor served as the vehicle to "house" DLI's collateral in segregated accounts controlled by DLI for factoring investments made by DLI and VoIP Guardian LLC. SUF ¶¶ 28, 33, 54.

Through two of his entities, Mr. Omanoff owned a controlling voting interest in VoIP Guardian LLC: (i) Omanoff America Telecom LLC, which owned a 40% interest in VoIP Guardian LLC, and (ii) Omanoff America, LLC ("Omanoff America") which owned a 10.01% interest in VoIP Guardian LLC. SUF ¶¶ 8, 10-11. The Trustee also alleges that Mr. Omanoff controlled Contacts & Contracts, Inc., which owned a 4.99% interest in VoIP Guardian LLC, which Mr. Omanoff demonstrated by signing VoIP Guardian LLC's Operating Agreement on behalf of Contacts & Contracts. SUF ¶¶ 7 and 15.

VoIP Guardian LLC was the Sole Member of the Debtor. SUF ¶ 3. In turn, VoIP Guardian LLC's Board of Managers' sole manager was Omanoff America, while Rodney Omanoff is the sole manager of Omanoff America's own board of managers. SUF ¶¶ 4-5. The ownership structure of VoIP Guardian LLC provided Mr. Omanoff with complete control over VoIP Guardian LLC and the Debtor.

### B. DLI's Loan and Security Agreement

DLI's factoring investments were funded under a Loan and Security Agreement (the "Loan Agreement"), dated October 1, 2015, between Direct Lending Income Fund, LP, by and through Millenium Trust Company, LLC FBO Direct Lending Income Fund, LP (collectively, and with other affiliates, "DLI") as "Lender," and the Debtor as "Borrower," with initial available credit of $20,000,000 (the "Maximum Facility Amount"). SUF ¶¶ 24-25. The Loan Agreement authorized the Debtor to use the DLI funds for only two purposes: (i) to engage in the VoIP factoring business by purchasing "Eligible Collateral Assets," or (ii) to repay DLI's note. SUF ¶ 26. The Loan

Agreement was amended on five occasions, primarily to increase the Maximum Facility Amount in various stages to $250,000,000, and to revise various terms related to DLI's collateral and security interest. SUF ¶¶ 30-38.

By the Loan Agreement, and again in more detail by the Third Amendment to the Loan Agreement, dated April 1, 2017, the parties confirmed that all DLI funds would be held in segregated accounts, and would each be subject to a Deposit Account Control Agreement, defined as "an agreement providing the Lender with control over the Segregated Account within the meaning of Section 104(a)(2) of the UCC, in a form acceptable to the Account Bank, as applicable." SUF ¶¶ 28 and 34.

Pursuant to Section 4.01 of the Loan and Security Agreement, DLI was granted a security interest in substantially all of the Debtor's assets. SUF ¶ 39. DLI filed a UCC-1 Financing Statement on or about January 11, 2016, perfecting its security interest in its collateral. SUF ¶ 42.

**C. <u>DLI Controlled All Disbursements of DLI's Loan Advances</u>**

The funds that DLI deposited into the Debtor's DACA-controlled and segregated "Operations Account," ending in 9399 (the "<u>Operations Account</u>"), could not be used by the Debtor for any purpose of its own. The Debtor could not transfer the funds to a factoring client, could not transfer the funds between accounts, and could not withdraw any funds to purchase paper clips or pay an unsecured creditor. SUF ¶¶ 58-64.

Under a procedure established with FRB, funds could only be transferred from the Operations Account, or transferred between FRB accounts, if DLI's Controller, Mandy Isaac (the "<u>DLI Controller</u>"), logged onto the FRB website, approved proposed transfers, and physically clicked the correct buttons to release the transfer, in the case of U.S. dollar transfers. SUF ¶¶ 58, 60-61. In the case of Euro transfers, FRB did not have the website availability for wire transfers, and so any transfers of Euros were approved by a telephone call or email between an FRB representative and the DLI Controller. SUF ¶ 59.

The DLI Controller, VoIP Guardian LLC's own Controller, and Rodney Omanoff, have all confirmed in depositions in this case that the Debtor had no dominion or control over DLI's funds. SUF ¶¶ 57-63. Mr. Omanoff confirmed that he could never have withdrawn one dollar of DLI's

loan proceeds to use for any discretionary purpose. SUF ¶ 64. Without the DLI Controller's physical release of the funds, no transfers or withdrawals of DLI's funds from any of the Debtor's FRB accounts could take place. SUF ¶¶ 58-64.

**D. <u>The DLI Stipulation</u>**

As of the Petition Date, every dollar that the Trustee could possibly recover in this chapter 7 case would have been the property of DLI, leaving nothing for unsecured creditors. This isn't argument. It is the Trustee's sworn testimony provided in support of the DLI Stipulation:

> Prior to agreeing to the terms of the Stipulation, my counsel and I conducted an independent investigation on the validity of the DLI Fund's claim against the Estate. My counsel ran a search for any and all UCC filings related to the Debtor and in so doing, confirmed that DLI Fund is the only creditor with a security interest in the Debtor's assets. My counsel also confirmed that the UCC's requirements for the creation and attachment of DLI Fund's security interest had been satisfied and that **DLI Fund's security interest was properly perfected**. …
>
> Indeed, **without the agreement with DLI** Fund and based upon the available assets in this Estate, **there is no avenue for the Estate's unsecured creditors to receive any distribution whatsoever** – let alone the 30% provided for under the Stipulation. **The Estate's assets are fully encumbered by DLI Fund's $203,459,871.69 secured claim**.

SUF ¶¶ 48-49 (the "<u>Yoo Declaration</u>") (emphasis added). The Trustee's counsel, Andy S. Kong, also submitted a declaration in support of the DLI Stipulation, testifying among other things that he and his associate had researched and confirmed that DLI's security interest was properly perfected. SUF ¶ 50.

DLI's perfected security interest is far-reaching. It covers "[a]ll assets of the Debtor," with specific reference to "accounts," "deposit accounts," "commercial tort claims," "cash proceeds," "accounts receivable," "rights to payment of any and every kind," and "other forms of obligations and receivables," among other categories. SUF ¶¶ 39-42. DLI filed its UCC-1 to perfect its security interest on or about January 11, 2016. SUF ¶ 42. And every alleged "transfer" the Trustee is

attempting to avoid occurred after DLI's lien was perfected. *See* Exhibit BB, MSJ 1438–1444, and MSJ 1447–1453.

The Bankruptcy Court's approval of the DLI Stipulation, and its agreed allowance of DLI's secured claim, served to allow DLI's secured claim in its full claimed amount of $203,459,871.69 plus interest. SUF ¶ 52.

**E. The Claims for Relief Pleaded in the Complaint**

The Trustee filed his operative Complaint on August 17, 2021. SUF ¶ 98(as corrected). The claims for relief stated in the Complaint that name one or more of these Defendants fall into two primary categories.

The Trustee has sued certain Defendants for a variety of avoidance claims under 11 U.S.C. §§ 544(b), 547, 548, and 549 (the "Avoidance Claims") (SUF ¶¶ 101-106), theorizing that funds going in and out of a third party's escrow account that serviced dozens of telecom companies from the same commingled account must have been the "Debtor's" funds at all times, even though all deposits from the Debtor's account were DLI's collateral, controlled and transferred by DLI.[2]

The Trustee's Fourth Claim for Relief asks the Court to avoid certain alleged transfers pursuant to 11 U.S.C. § 548(a)(1)(B), while the Trustee's Sixth Claim for Relief asks the Court to avoid the same alleged transfers pursuant to 11 U.S.C. § 544(b) and Cal. Civ. C. § 3439.04(a)(2) (collectively, the "Constructively Fraudulent Transfer Claims"). The Trustee's Third Claim for Relief asks the Court to avoid certain alleged transfers pursuant to 11 U.S.C. § 548(a)(1)(A), while the Trustee's Fifth Claim for Relief asks the Court to avoid the same alleged transfers pursuant to 11 U.S.C. § 544(b) and Cal. Civ. C. § 3439.04(a)(1) (collectively, the "Actually Fraudulent Transfer Claims").

## III. LEGAL STANDARDS

**A. Jurisdictional Statement**

This Court has subject matter jurisdiction to rule on this Motion pursuant to Fed. R. Civ. P. 56, and 28 U.S.C. §§ 157(b)(2)(A), (F), (H) and (O), and 1334.

---

[2] The Trustee indicated in a recent filing that he will be dropping his Section 549 claim.

**B. Standard for Summary Judgment**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

To meet their burden for summary judgment, Defendants need to demonstrate that there is an absence of evidence to support a necessary element of the Trustee's claims, which shifts the burden to the Trustee to show that there is a "genuine issue for trial," or alternatively, movants may demonstrate that the Trustee's claims are not based on valid interpretations of applicable law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Tzung v. State Farm Fire & Casualty Co.*, 873 F.2d 1338, 1339-40 (9th Cir. 1989) (confirming whether district court "applied the relevant substantive law" to summary judgment motion); *Donell v. Mojtahedian*, 976 F. Supp. 2d 1183 (C.D. Cal. 2013) ("because Plaintiff bears the burden of proving a Ponzi scheme to be entitled to summary judgment he 'must come forward with evidence which would entitle [him] to a directed verdict if the evidence went uncontroverted at trial.'") (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).

## IV. ARGUMENT

**A. Summary of Argument**

When a debtor transfers property that has no value to the estate and could not have been used to provide unsecured creditors with any payment on their claims, the transfer is not avoidable as a constructively fraudulent transfer because the Debtor did not receive "less than a reasonably equivalent value." 11 U.S.C. § 548(a)(1)(B)(i). This includes any transfer of property that was fully encumbered by a valid lien at the time of transfer. California's fraudulent transfer laws are consistent.

Similarly, when a trustee seeks to avoid a transfer by a debtor on the grounds that such transfer was made with "actual intent" to defraud creditors, receipt of less than reasonably equivalent value is a material badge of fraud. But where the property had no value to the debtor and could not have been used to pay the claims of creditors – such as where the property was fully encumbered by valid liens – this badge of fraud cannot be satisfied.

By all evidence, including the Trustee's own sworn testimony and an order of this Court confirming that DLI's lien encumbers all of the Debtor's assets, the "transfers" challenged by the Trustee cannot be constructively fraudulent transfers because the Debtor did not receive less than reasonably equivalent value for such alleged transfers. The same evidence confirms that the alleged transfers cannot be deemed to have been made with "actual intent" to defraud by reason of the "reasonably equivalent value" badge of fraud, as the alleged transfers were transfers of DLI's collateral that could not have been used to pay any unsecured creditors.

Wherefore, Defendants request judgment overruling the Trustee's Fourth and Sixth Claims for Relief, and summary adjudication confirming that the Trustee cannot satisfy the "reasonably equivalent value" badge of fraud in connection with the "actual fraud" test under 11 U.S.C. § 548(a)(1)(A), Cal. Civ. C. §§ 3439.04(a)(1) and (b)(8).

### B. Claims Under Section 548(a)(1)(B) Fail as a Matter of Law as the Debtor Had No Property Interest to Transfer, and Did Not Receive Less Than "Reasonably Equivalent Value"

In order to avoid a constructively fraudulent transfer under 11 U.S.C. § 548(a)(1)(B) – the Trustee's Fourth Claim for Relief – the Trustee must demonstrate that the Debtor transferred an "interest of the debtor in property" and:

> (i) **received less than a reasonably equivalent value in exchange for such transfer or obligation**; and
>
> (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>
> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
>
> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
>
> (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C.A. 548(a)(1)(B) (emphasis added).

Similarly, in order to avoid a constructively fraudulent transfer under 11 U.S.C. § 544(b), pursuant to Cal. Civ. Code § 3439.04(a)(2) – the Trustee's Sixth Claim for Relief – the Trustee must demonstrate that the Debtor transferred an asset in which it had equity beyond valid liens encumbering such property:

> (2) **Without receiving a reasonably equivalent value in exchange for the transfer** or obligation, and the debtor either:
>
> (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.
>
> (B) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

Cal. Civ. C. § 3439.04(a)(2) (emphasis added) (the "California UVTA"); *see also* Section 3439.01(a)(1) (defining "Asset").

Defendants have separately addressed the Debtor's lack of an avoidable property interest in the fully encumbered DLI loan proceeds in a prior motion for summary judgment that remains pending, and in a separate motion to dismiss that has been denied but will be appealed once the order is final.

In this Motion, Defendants challenge the element of "reasonably equivalent value" on the grounds that a debtor that transfers property that has no value to the estate, in exchange for any consideration or no consideration, did not receive less than "reasonably equivalent value." The debtor has given away nothing that could have been used to pay the claims of unsecured creditors, and has received nothing in return. The estate has not been diminished, and therefore the avoidance of such a transfer is beyond the scope and purpose of the Bankruptcy Code's fraudulent transfer provisions or the California UVTA.

When evaluating an avoidable transfer claim under § 548(a)(1)(B), an analysis of "reasonably equivalent value" requires the court to "focus...on the consideration received by the debtor, not on the value given by the transferee." *In re Jeffrey Bigelow Design Grp., Inc.*, 956 F.2d 479, 484 (4th Cir. 1992) (quoting Jack F. Williams, *Revisiting the Proper Limits of Fraudulent Transfer Law*, 8 Bankr. Dev. J. 55, 80 (1991)).

Reasonably equivalent value is not defined in the Bankruptcy Code but is intended "to protect creditors against the depletion of a bankruptcy estate." *Riley v. Countrywide Home Loans, Inc. (In re Duplication Mgmt, Inc.)*, 501 B.R. 462, 486 (Bankr. D. Mass. 2013) (quoting *Senior Transeastern Lenders v. Official Committee of Unsecured Creditors (In re TOUSA Inc.*), 680 F.3d 1298, 1311 (11th Cir. 2012)). For this reason, a "determination of whether a transfer involved the exchange of reasonably equivalent value requires consideration of whether or not the transferor's unsecured creditors were better off before or after the transfer." *Rajala v. Gardner*, 661 F. App'x 512, 516-17 (10th Cir. 2016) (unpublished) (quoting *In re Expert S. Tulsa, LLC*, 534 B.R. 400, 413 (10th Cir. BAP 2015), *aff'd*, 842 F.3d 1293 (10th Cir. 2016)).

A particularly relevant case for its lengthy analysis and fact pattern is *Manchester v. Sharpton (In re All Phase Roofing & Constr., LLC)*, 2020 WL 374357 *13, 2020 Bankr. LEXIS 178 (Bankr. W.D. Okla. Jan. 17, 2020), *aff'd*, 2020 WL 5512500, 2020 Bankr. LEXIS 2441 (B.A.P. 10th Cir. Sept. 14, 2020). In *All Phase Roofing*, after a trial on the trustee's avoidance claims, the court explained that:

> it is undisputed that All Phase LLC received nothing from Defendant in exchange for any of the transferred property. This is where Plaintiff would have the Court stop its analysis, and certainly the undisputed facts of the transfers themselves and the lack of consideration therefor make such an argument seemingly persuasive. But the reasonably equivalent value inquiry does not end there. Rather, a further step is mandated and requires the Court to measure the value of what All Phase LLC received, *i.e.* nothing, against the value of what All Phase LLC transferred. … This inquiry necessarily focuses on whether or not All Phase LLC's unsecured creditors were better off before or after the transfers, *i.e.* whether the transferred property actually had value that can be recovered for the benefit of the estate. At trial, however, Plaintiff failed to focus on whether the transferred assets had value that could be recovered for the benefit of the estate. Nevertheless, a brief review of All Phase LLC's Schedule D indicates that all of its assets were subject to liens of creditors as of the Petition Date.

*All Phase Roofing*, 2020 WL 374357 at *12 (internal citations omitted).

The court in *All Phase Roofing* went on to explain that, because the prepetition liens remained valid, "even if Plaintiff were to successfully avoid the alleged fraudulent transfers and recover the transferred property, it remains subject to the liens of All Phase LLC's secured creditors." *Id*., at *13. In this regard, the statements made by the court in *All Phase Roofing* were remarkably similar to the Trustee's testimony in this case, stating that all of the Debtor's assets

were subject to DLI's perfected security interests, and that there was "no avenue" for unsecured creditors to receive any recoveries in the chapter 7 case absent DLI's willingness to share its collateral. SUF ¶¶ 48-49.

The *All Phase Roofing* court went on to explain that the chapter 7 trustee, "who had the burden of proving that All Phase LLC transferred something of value for purposes of her Section 548 fraudulent transfer claim, presented absolutely no evidence at trial to suggest All Phase LLC's assets were less than fully encumbered and, therefore, had value to the estate." *Id.*, at *13.

The court then explained that the debtor lost nothing when it transferred fully encumbered assets that had no value for the estate's unsecured creditors:

> because the assets Plaintiff alleges were fraudulently transferred have no value in excess of the liens of the secured creditors, All Phase LLC's unsecured creditors are no worse off after the transfers than they were before the transfers. A bankruptcy estate cannot be depleted by the transfer of a valueless asset. In other words, it is not possible to receive less than reasonably equivalent value for an asset that has no value.

*All Phase Roofing*, 2020 WL 374357 at *13.

The *All Phase Roofing* court concluded that, since there was no evidence that the debtor had any equity in the transferred property, even though the property was transferred "for no consideration," the trustee had therefore failed to establish that the debtor had not received "reasonably equivalent value" for the transfers, and "the transfers cannot be constructively fraudulent." *Id.*, at *14.

While the *All Phrase Roofing* opinion is useful for a lengthy discussion because of the extensive analysis undertaken by the court, it is not alone, but is consistent with rulings wherever debtors are found to have had no equity in property or the transferred property was otherwise of no value to unsecured creditors.

In *Yip v. Connedx Corp. (In re Gomez)*, 560 B.R. 866, 873 (Bankr. S.D. Fla. 2016), the court addressed a transfer of valueless stock and explained that a "[t]ransfer of a valueless asset cannot hinder, delay or defraud any creditor of value as it is valueless. Further, it is impossible to receive less than reasonably equivalent value for an asset that has no value," and went on to hold

that any recovery from the defendant of funds to address the debtor's transfer of valueless stock "would be a gross injustice").

Similarly, in *Tolz v. Miller (In re Todd)*, 391 B.R. 504 (Bankr. S.D. Fla. 2008), the defendant's parents had transferred title in a parcel of real property to the debtor for no consideration as part of a scheme to increase the debtor's "'loan to value' ratio … so that it would be acceptable to a lender in order to qualify for financing to purchase a check cashing business." 391 B.R. at 506. The debtor then, under the Millers' instructions, transferred title to their son, who was sued by the chapter 7 trustee in the debtor's eventual chapter 7 case. *Id*. The court first held that the debtor had never held more than "bare legal title" in the property. *Id.*, at 508. The court then went on to explain that the trustee's claims failed because a transfer of a valueless asset cannot serve as the basis for a constructive fraudulent transfer claim:

> Since the Debtor held only bare legal title to the Real Property, the value of that interest in the property was essentially zero. There was no consideration for the initial transfer between the Millers and the Debtor. Thus, the subsequent transfer from the Debtor to the Defendant, although no consideration was exchanged, constituted for the Debtor an economic status quo. A valueless asset transferred for no consideration neither hurts nor benefits the estate. See [*In re Moodie*, 362 B.R. 562 (Bankr. S.D. Fla. 2007)]. If no value was lost in the transfer between the Debtor and the Defendant, it is inherently the case that the Debtor did not receive less than equivalent value. *Id*. As a result, the section 548(a)(1)(B), Florida Statute section 725.106(1) and Florida Statute section 725.105(1)(b) claims fail as to the less than reasonably equivalent value element. Ergo, summary judgment as to Counts I, III, IV must be entered in favor of the Defendant.

*In re Todd*, 391 B.R. at 509.

In *Franco v. Real Portfolio 13, LLC (In re Franco)*, 2025 WL 884067, 2025 Bankr. LEXIS 648 (Bankr. D. N.J. March 17, 2025) the debtor filed an adversary proceeding to avoid her transfer of real property as a constructively fraudulent transfer. The court found that the property had been fully encumbered by liens at the time of the transfer, stating:

> With no equity in the Property, the transfer did not deplete the bankruptcy estate or adversely affect creditors. Estate preservation does not even come into play. The Debtor could not receive less than reasonable equivalent value as there was none to give. There is no voidable transfer.

*In re Franco*, 2025 WL 884067 at *9.

Case law is uniform on this issue. If a debtor does not have equity in property, or the property is otherwise valueless, then a transfer of the property even for no consideration does not deprive the estate and its unsecured creditors of any value that could have been used to satisfy their claims, and therefore did not deprive the debtor of "reasonably equivalent value." *All Phase Roofing*, 2020 WL 374357 at *12-13; *In re Gomez*, 560 B.R. at 873; *In re Todd*, 391 B.R. at 509; *In re Franco*, 2025 WL 884067 at *9.

Application of the California UVTA to similar circumstances where the transferred property was fully encumbered by valid liens, or otherwise without value to the debtor, is consistent with federal bankruptcy law. See *In re Pioneer Liquidating Corp.*, 211 B.R. 704, 713 (S.D. Cal. 1997) ("The California fraudulent conveyance statute provides that property encumbered by a valid security interest is not subject to recovery under the state fraudulent conveyance statute."), aff'd *In re Consolidated Pioneer Mortg. Entities*, 166 F.3d 342 (9th Cir. 1999); *Mehrtash v. Mehrtash*, 93 Cal.App.4th 75, 80 (2001) (granting judgment against plaintiff on fraudulent conveyance claim where transferred interest in home was fully encumbered by liens in excess of home value); *Fidelity National Title Insurance Co. v. Schroeder*, 179 Cal. App. 4th 834, 845 (2009) (following *Mehrtash*, dismissing avoidance claim where value of judgment lien exceeded value of transferred property).

Before any of this litigation was filed, the Trustee swore under penalty of perjury in the Yoo Declaration filed in this Court that "[t]he Estate's assets are fully encumbered by DLI Fund's $203,459,871.69 secured claim." SUF ¶ 49. And based on that testimony and documentary evidence, this Court approved the DLI Stipulation which allowed DLI's secured claim in full. SUF ¶¶ 51-52.

The Trustee's own sworn testimony confirming that DLI's perfected lien encumbered all of the Debtor's assets, and this Court's order approving the DLI Stipulation and allowing DLI's secured claim in full, confirm that any transfer of DLI's loan proceeds from the Debtor's accounts did not deprive the Debtor of any property of value that could have been used to satisfy the claims of unsecured creditors. SUF ¶¶ 48-49, 51-52. Indeed, the DLI Loan Agreement barred the Debtor from using DLI's loan proceeds for any purpose other than carrying out DLI-approved factoring transactions or making repayments to DLI. SUF ¶ 26.

The Trustee has frequently argued in this case that, despite the Yoo Declaration and the allowed DLI secured claim, there are assets of the estate that are not encumbered by DLI's lien that somehow undercut Defendants' arguments. There are two serious problems with this position, in addition to it being legally and factually incorrect as it pertains to the Debtor's prepetition property interests. The first is that the Trustee is judicially estopped from changing his testimony after obtaining entry of the order approving the DLI Stipulation based on his testimony. *Luzinski v. Peabody & Arnold LLP (In re Gosman)*, 382 B.R. 826, 842-43 (S.D. Fla. 2007) (chapter 7 trustee judicially estopped from taking position in litigation that was inconsistent with prior positions in avoidance action). Moreover, it is a position that suggests that the Trustee breached his duties to unsecured creditors (or relied on poor legal advice) when he agreed in the DLI Stipulation to give DLI 70% of recoveries that the Trustee now claims are property of the estate, taking that cash out of the pockets of unsecured creditors and handing it to the secured creditor. The Trustee's original position, sworn under penalty of perjury, is the correct one.

Transfers of DLI loan proceeds from the Debtor's accounts (which were carried out by DLI, not the Debtor) did not deprive the Debtor of "reasonably equivalent value" for such transfers, and therefore the transfers cannot be avoided pursuant to 11 U.S.C. §§ 544(b) or 548(a)(1)(B). Judgment on the Trustee's Fourth and Sixth Claims for Relief should be entered in favor of Defendants.

### C. The Trustee's Claims for Actual Fraudulent Transfers Are Subject to Any Finding of this Court that the Debtor Did Not Receive Less Than Reasonably Equivalent Value in Exchange for Alleged Transfers that Were Not Property of the Debtor

The Trustee's Third and Fifth Claims for Relief seek to recover allegedly fraudulent transfers made with an intent to defraud, the former under 11 U.S.C. § 548(a)(1)(A), and the latter under Cal. Civ. C. § 3439.04(a)(1).

The question of whether a debtor received "reasonably equivalent" value for a transfer is not a specific element of a claim to avoid an actually fraudulent transfer, but it is a factor that may demonstrate the "actual intent" of the transferor to fraudulent transfer the subject asset. *See Betancourt v. Ballmer (In re Betancourt)*, BAP No. CC-17-1016-KuLTa, 2017 WL 3482035, at *6,

2017 Bankr. LEXIS 2276 (9th Cir. BAP Aug. 14, 2017), *aff'd*, 756 F. App'x 741 (9th Cir. 2019) ("the presence or absence of reasonably equivalent value is just one of several factors courts typically consider when assessing whether the debtor had the requisite state of mind to commit an actual fraudulent transfer"); *see also* Section 3439.04(b)(8) (including "[w]hether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred" as a potential indicator of actual intent).

Whether a debtor received reasonably equivalent value for an alleged transfer "is perhaps the most important factor in evaluating whether the transfer was fraudulent" for a claim under Section 548(a)(1)(A). *Sender v. Coney (In re Gibson)*, 2025 WL 2447944, 2025 Bankr. LEXIS 2063 *58 (Bankr. D. Colo. Aug. 25, 2025).

The analysis of "reasonably equivalent" value in the preceding Section of this Motion applies equally to the Trustee's Third and Fifth Claims for Relief.

Before any of this litigation was filed, the Trustee swore under penalty of perjury in the Yoo Declaration filed in this Court that "[t]he Estate's assets are fully encumbered by DLI Fund's $203,459,871.69 secured claim." SUF ¶ 49. And based on that testimony and documentary evidence, this Court approved the DLI Stipulation which allowed DLI's secured claim in full. SUF ¶¶ 51-52.

The Trustee's own sworn testimony confirming that DLI's perfected lien encumbered all of the Debtor's assets, and this Court's order approving the DLI Stipulation and allowing DLI's secured claim in full, confirm that any transfer of DLI's loan proceeds from the Debtor's accounts did not deprive the Debtor of any property of value that could have been used to satisfy the claims of unsecured creditors. SUF ¶¶ 48-49, 51-52. Indeed, the DLI Loan Agreement barred the Debtor from using DLI's loan proceeds for any purpose other than carrying out DLI-approved factoring transactions or making repayments to DLI. SUF ¶ 26.

To whatever extent the Trustee intends to attempt to prove "actual intent" by such badges of fraud, Defendants are entitled to summary adjudication confirming that the Debtor did not receive less than "reasonably equivalent" value for the alleged transfers, as the Debtor had no interest of value in DLI's fully encumbered collateral.

## V. CONCLUSION

WHEREFORE, for the reasons and applicable law briefed herein, Defendants respectfully request that this Court enter judgment dismissing the Trustee's Fourth and Sixth Claims for Relief, and enter summary adjudication on the Third and Fifth Claims for Relief in accordance with the relief requested herein.

Dated: November 26, 2025 **BAKER & HOSTETLER LLP**

By: */s/ David J. Richardson*
David J. Richardson

*Counsel for Mark Proto, Youssef Rahman aka Joe Rahman, Tarek Katit, Mudmonth, LLC, Zoom Telecom, Inc., Tee Telecommunications Inc., 2365 Azure LLC, and Overseas Charters, Inc..*